JOSEPH H. HUNT
Assistant Attorney General
U.S. Department of Justice
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
JEFFREY S. ROBINS
Deputy Director
LINDSAY M. VICK (MA 685569)
450 5th Street, N.W., Rm 5223
Washington, D.C. 20530
Telephone: (202) 532-4023
Facsimile: (202) 305-7000
lindsay.vick@usdoj.gov
Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, *et al.*,<br><br>    *Plaintiffs*,<br><br>        v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>    *Defendants*. | Case No. 5:19-CV-01546 JGB (SHKx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO SEVER AND DISMISS PLAINTIFFS' CLAIMS, ALTERNATIVELY TRANSFER ACTIONS, AND MOTION TO STRIKE PORTIONS OF THE COMPLAINT**<br><br>**Before The Honorable Jesus G. Bernal**<br>**Hearing Date:** February 24, 2020<br>**Hearing Time:** 9:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

ARGUMENT............................................................................................................1

I.    Plaintiffs' Claims Are Not Properly Joined And Should Be Severed Or Alternatively Transferred To The Appropriate Jurisdiction ...................... 1

II.   Plaintiffs' Claims Concerning Constitutionally Inadequate Medical And Mental Healthcare And Punitive Conditions of Confinement Must Be Dismissed ................................................................................................. 6

III.  Plaintiffs Have Failed To Demonstrate That Defendants Deny Detainees With Disabilities Meaningful Access To Benefits Under the Rehabilitation Act ..................................................................................... 11

IV.  Plaintiffs Fail To Demonstrate That The Organizational Plaintiffs Have Standing And State A Claim For Relief .................................................. 13

V.   Plaintiffs' Irrelevant And Immaterial Allegations Should Be Stricken As Unduly Prejudicial ................................................................................... 14

VI.  Claims Made By Plaintiffs Who Are Released Or Removed Are Moot . 16

i

# TABLE OF AUTHORITIES

## Federal Cases

*Almont Ambulatory Surgery Ctr., LLC v. United Health Group, Inc.*,
    99 F. Supp 3d 1110 (C.D. Cal. 2015) ................................................................ 4

*Bell v. Wolfish*,
    441 U.S. 520 (1979) ........................................................................................... 9

*Coughlin v. Rogers*,
    130 F.3d 1348 (9th Cir. 1997) ........................................................................... 1

*Fabricant v. Paymentclub Inc.*,
    No. 219CV02451ODWASX, 2019 WL 5784174 (C.D. Cal. Nov. 6, 2019) ........ 7

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) ......................................................................... 15

*Gordon v. Cty. of Orange*,
    888 F.3d 1118 (9th Cir. 2018) ...................................................................... 1, 7

*Gray v. County of Riverside*,
    No. 13-00444, 2014 WL 5304915 (C.D. Cal. Sept. 2, 2014) ......................... 8, 9

*Griggs v. Holt*,
    No. 1:17-CV-00089, 2018 WL 5283448 (S.D. Ga. Oct. 24, 2018) ................... 5

*H.M. v. United States*,
    No. 17-00786-SJO, 2017 WL 10562558 (C.D. Cal. Aug. 21, 2017) ................. 3

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) ......................................................................... 15

*Houghton v. South*,
    965 F.2d 1532 (9th Cir. 1992) ........................................................................... 7

*In re "Agent Orange" Product Liab. Litig.*,
    475 F. Supp. 928 (E.D.N.Y. 1979) ................................................................... 16

*Jones v. Blanas*,
    393 F.3d 918 (9th Cir. 2004) ...................................................................... 10, 11

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ......................................................................... 13

*Mark H. v. Hamamoto*,
    620 F.3d 1090 (9th Cir. 2010) ......................................................................... 12

*Matherly v. Andrews*,
    859 F.3d 264 (4th Cir. 2017) ........................................................................... 11

*Mitchell v. Dupnik*,
   75 F.3d 517 (9th Cir. 1996) ..................................................... 10, 11

*Nelson v. Heiss*,
   271 F.3d 891 (9th Cir. 2001) .......................................................... 16

*Nielsen v. Preap*,
   139 S. Ct. 954 (2019) ...................................................................... 16

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) ........................................................ 18

*Requena v. Roberts*,
   893 F.3d 1195 (10th Cir. 2018) ........................................................ 1

*Revilla v. Glanz*,
   7 F. Supp. 3d 1207 (N.D. Okla. 2014) ........................................ 5, 18

*S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.*,
   No. 18-760, 2019 WL 2077120 (D.D.C. May 10, 2019) ..................... 4

*Shook v. Bd. of Cty. Comm'r's of Cty. of El Paso*,
   543 F.3d 597 (10th Cir. 2008) ..................................................... 2, 8

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................ 7

*Thompson v. N. Am. Stainless, LP*,
   562 U.S. 170 (2011) ....................................................................... 14

*Thompson v. Paul*,
   657 F. Supp. 2d 1113 (D. Ariz. 2009) ............................................ 15

*Torres v. United States Dep't of Homeland Sec.*,
   411 F. Supp. 3d 1036 (C.D. Cal. 2019) ................................... 3, 11, 13

*Trazo v. Nestle USA, Inc.*,
   No. 5:12-CV-02272-PSG, 2013 WL 12214042 (N.D. Cal. Dec. 4, 2013) .......... 3

*Verfuerth v. Orion Energy Systems, Inc.*,
   65 F. Supp. 3d 640 (E.D. Wis. 2014) ........................................ 15, 16

*Waddell v. Lloyd*,
   Case No. 16-14078, 2019 WL 1354253 (E.D. Mich. Mar. 26, 2019) .................. 1

*Wal-Mart Stores, Inc., v. Dukes*,
   564 U.S. 338 (2011) ....................................................................... 17

## <u>Federal Statutes</u>

8 U.S.C. § 1225(b) .............................................................................. 10

8 U.S.C. § 1226(c) .............................................................................. 11

iii

8 U.S.C. § 1231(a)(2) ......................................................................... 11

42 U.S.C. § 1983.................................................................................. 18

### **Rules**

Fed. R. Civ. P. 21............................................................................... 3

Fed. R. Civ. P. 23............................................................................. 18

Fed. R. Civ. P. 23(b)(2) ................................................................... 17

Fed. R. Civ. P. 23(b)(3) ................................................................... 17

### **Websites**

Immigration and Customs Enforcement, Detention Standards,
https://www.ice.gov/detention-standards/2019 (last visited Feb. 7, 2020) . 12, 13, 18

Immigration Customs and Enforcement, *National Detention Standards For Non-Dedicated Facilities* (rev. 2019),
https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf ...................... 12

Immigration Customs and Enforcement, *Performance-Based National Detention Standards 2011* (rev. 2016),
https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf ......... 12

## ARGUMENT

**I.    Plaintiffs' Claims Are Not Properly Joined And Should Be Severed Or Alternatively Transferred To The Appropriate Jurisdiction**

First, all 15 individual Plaintiffs' claims should be severed because their claims do not arise from the same transaction or occurrence and their claims do not involve common questions of law or fact. Instead, Plaintiffs' claims involve a wide variety of medical and mental health issues, disability issues, and administrative segregation issues, and ultimately lack factual overlap. For example, detainees with hearing, vision, or back conditions display different symptoms and require different accommodations, and Defendants' efforts to treat or accommodate each detainee necessarily diverges from case to case. Further, Plaintiffs' segregation claims reflect the fact that detainees may be placed in administrative segregation for different reasons. Ultimately, Plaintiffs allege a different factual basis for how Defendants' actions affected each of them. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (severing claims that presented different factual situations).

Plaintiffs' claims also lack common questions of law or fact because the legal standard for deliberate indifference claims varies across the judicial circuits. Depending upon the judicial circuit in which a plaintiff is detained, a different Due Process and deliberate indifference standard for detainee medical care claims will apply. *See Waddell v. Lloyd*, Case No. 16-14078, 2019 WL 1354253, *4 (E.D. Mich. Mar. 26, 2019) (noting the circuit split concerning the deliberate indifference standard applicable to medical care claims by pretrial detainees and identifying the Fifth and Eleventh Circuits as applying a different standard from the Ninth Circuit); *see also Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (adopting an "objective deliberate indifference standard"); *but cf. Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) ("To state a denial of medical care claim, a plaintiff must satisfy both an objective and a subjective

1

component." (internal quotation marks omitted)). Plaintiffs have cited no cases that involve detainees in custody in different judicial circuits with deliberate indifference medical care claims. Nor have Plaintiffs explained why detainees in custody in one judicial circuit should be subject to the applicable legal standard in a different judicial circuit. Furthermore, an independent factual inquiry would be required to determine whether Defendants violated any particular Plaintiff's right to due process regarding their medical care.

Ultimately, the Complaint in this case truly is one that formulates its claims for declaratory and injunctive relief "at a stratospheric level of abstraction." *Shook v. Bd. of Cty. Comm'r's of Cty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008). Plaintiffs have failed to challenge specific policies and procedures that would have an actual effect on Plaintiffs' claimed substantial risk of harm. Instead, they challenge policies and procedures that are many steps removed from the claimed risk, and they have not demonstrated that Defendants' response to any challenged risk would necessarily mitigate any named Plaintiffs' claimed substantial risk of harm. Plaintiffs propose a class of all immigration detainees yet they challenge policies and procedures that do not necessarily apply to all immigration detainees and that require the application of separate legal standards for different groups of Plaintiffs. Indeed, to get around this, Plaintiffs' raise allegations regarding ICE's monitoring and oversight at a nationwide level. These allegations are too far removed from Plaintiffs' operational concerns to demonstrate that the operational allegations that Plaintiffs raise on the individual and systemic levels would be redressable by the relief requested of ICE because compliance issues may still result at the operational level. *See, e.g.*, Compl. ¶¶ 457, 471, 545 (Plaintiffs allege very broadly that Defendants fail to monitor and oversee segregation practices and Plaintiff Montoya Amaya alleges that his purported disciplinary segregation was a result of a miscommunication; such an allegation does not demonstrate systemic

2

failure). Moreover, not every named Plaintiff represents each claim. *See* Compl. ¶¶ 4, 32-35, 528, 557-58, 578, 589, 598 (Plaintiff Chavez does not make any allegations concerning emergency care); ¶¶ 16, 57-60, 527, 560, 599 (Plaintiff Jose Baca Hernandez does not make any allegations concerning emergency care).

Also because Plaintiffs' claims do not arise from the same transaction or involve similar questions of law or fact, litigating the claims together would not promote judicial economy. This action would require 15 separate mini-trials for each named Plaintiff and two additional mini-trials for each organizational Plaintiff because Plaintiffs' voluminous and unwieldy Complaint involves discrete, individualized interactions with Defendants depending upon whether the claim arises under Due Process or the Rehabilitation Act and involves facilities in several states across judicial circuits. Further, adjudicating each claim would require the presentation of different evidence from multiple judicial circuits. *See* Fed. R. Civ. P. 21; *see also H.M. v. United States*, No. 17-00786-SJO, 2017 WL 10562558, *15 (C.D. Cal. Aug. 21, 2017) (severing plaintiffs' mandamus claims in the interests of justice and judicial economy and finding that each case involved distinct factual and legal issues) (citing *Trazo v. Nestle USA, Inc.*, No. 5:12-CV-02272-PSG, 2013 WL 12214042, at *2 (N.D. Cal. Dec. 4, 2013)).

A comparison of the claims and prayer for relief in this case with the claims and requested relief in *Torres v. United States Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036 (C.D. Cal. 2019) (Bernal, J.), illustrates the impermissibly broad nature of Plaintiffs' Complaint and why joinder is inappropriate in this case. In *Torres*, the plaintiffs challenged specific conditions of confinement related to lack of telephone access, barriers to legal visits, and interference with legal mail—all of which are factual allegations that apply equally to each individual in detention. *See* 411 F. Supp. 3d at 1057-64. In addition, the plaintiffs in *Torres* limited their challenge to the conditions in facilities in a particular region in one judicial circuit

3

and facilities run by one contractor. *See id.* at 1044. Here, Plaintiffs allege factual circumstances that are unique to each individual Plaintiff and not necessarily experienced by each detainee in Defendants' custody. *See* Compl. ¶¶ 133 (indicating that different ICE facilities are run by different entities and different types of contracts); *see also* Immigration and Customs Enforcement, Detention Standards, https://www.ice.gov/detention-standards/2019 (last visited Feb. 7, 2020). Thus, an adequate response to Plaintiffs' claims necessarily requires witnesses from multiple states, documents concerning varied policies and procedures across contract and non-contract facilities under Defendants' control, varied policies and procedures by each contractor depending upon location, as well as the application of different legal standards across judicial circuits.

Further, Plaintiffs' cases cited in support of their argument that they have satisfied the requirements for permissive joinder are inapposite. In *Almont Ambulatory Surgery Ctr., LLC v. United Health Group, Inc.*, while plaintiffs brought suit against 800 defendants concerning the denial of health care benefit claims, the court found that each claim involved the same "claim lines" and plan terms such that joinder was appropriate. *See* 99 F. Supp. 3d 1110, 1187-8 (C.D. Cal. 2015). That case also involved only ERISA as the sole, legal basis for relief. *See id.* Here, each Plaintiffs' allegation that Defendants violated their rights results from a different set of facts and in many cases involves different legal standards depending upon whether the claim concerns constitutionally inadequate medical care, punitive conditions of confinement, or violation of the Rehabilitation Act.

Plaintiffs' citation to *S. Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.* is similarly distinguishable. *See* No. 18-760, 2019 WL 2077120, *2-3 (D.D.C. May 10, 2019). That case involves immigrants' access to counsel at certain detention facilities limited to a particular region within the same judicial circuit. The court denied defendants' motion to sever and transfer venue because resolution of the

4

legal and factual issues turned on the same legal standards. Here, Plaintiffs bring systemic challenges to a variety of policies and procedures applicable to different groups of immigrant detainees in immigration detention centers nationwide. For example, they challenge policies and procedures related to timely receipt of medical and mental health care, Compl. ¶¶ 209-236; timely receipt of medically necessary specialty and chronic care, Compl. ¶¶ 237-280; care provided by trained and qualified personnel, Compl. ¶¶ 281-306; timely emergency health care, Compl. ¶¶ 307-335; adequate physical and mental health intake screening, Compl. ¶¶ 336-356; adequate staffing of medical and mental health care; adequate mental health care, Compl. ¶¶ 357-413; adequacy of medical records and documentation, Compl. ¶¶ 414-429; monitoring and overseeing segregation practices, Compl. ¶¶ 430-501; access to ICE programs and services for individuals with disabilities, Compl. ¶¶ 502-521; adequate screening to identify, track, and accommodate detained individuals with disabilities, Compl. ¶¶ 522-537; use of segregation for individuals with disabilities, Compl. ¶¶ 538-548; providing individuals with disabilities reasonable accommodations, auxiliary aids, and effective communication, Compl. ¶¶ 549-579; ensuring contractors do not subject detained individuals with disabilities to discrimination, Compl. ¶¶ 580-592.

Moreover, Plaintiffs cite *Revilla v. Glanz*, 7 F. Supp. 3d 1207, 1213-14 (N.D. Okla. 2014) and *Griggs v. Holt*, No. 1:17-CV-00089, 2018 WL 5283448, *11 (S.D. Ga. Oct. 24, 2018), as support for their contention that courts have found that cases involving detention conditions share common questions of law and fact. However, these cases actually illustrate why Plaintiffs' case is distinct from these actions and should be severed. In *Revilla*, four pretrial detainees brought a civil rights action concerning conditions at one facility, and in *Griggs*, all inmates at one facility brought an action under the Eighth and Fourteenth Amendments concerning excessive force at that one facility. Those cases involved common

5

questions of law and fact among the individual plaintiffs because they were limited to factual circumstances and legal bases that applied equally to each plaintiff, unlike the factual circumstances and legal bases that do not apply to each Plaintiff here.

Finally, if Plaintiffs' claims are not severed and dismissed, then transfer is appropriate here where five Plaintiffs could have filed in another venue and the location of evidence is speculative. Plaintiffs' Complaint presents an amorphous, excessively broad systemic challenge to the United States immigration detention system that operates in multiple judicial circuits and does not satisfy the requirements under the Federal Rules for permissive joinder. The Court should sever and dismiss each individual Plaintiff's claims in this case or, alternatively transfer their claims to the appropriate venue.

## II. Plaintiffs' Claims Concerning Constitutionally Inadequate Medical And Mental Healthcare And Punitive Conditions of Confinement Must Be Dismissed

Plaintiffs fail to sufficiently allege that Defendants acted with deliberate indifference toward any individual Plaintiff's medical or mental health condition. Instead, each Plaintiff's allegations concerning delayed or denied care demonstrate a disagreement with the professional judgment of Defendants' employees and the care received. *See* Compl. ¶ 24 (where Plaintiff Fraihat alleges he was recommended for eye surgery by one doctor in April 2019 and then not recommended for surgery two months later by a different doctor); ¶¶ 63, 251 (where, at his request, Plaintiff Garcia Guerrero saw an outside specialist, had reconstructive knee surgery, received vision testing, and was evaluated by an optometrist); ¶¶ 248 (where Plaintiff Segovia Benitez saw a doctor and a cardiologist for chest pain); ¶ 267 (where Plaintiff Soto alleges he was given two treatment plan options). Plaintiffs' vague assertion that "professional judgment is

not relevant" is unavailing. Plaintiffs simply have not rebutted the presumption that attaches to professional judgment; specifically, they have not shown that Defendants' medical personnel are unqualified or that any medical decision made with respect to an individual Plaintiff was grossly negligent. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (holding that "courts must restrict their inquiry to two questions: (1) whether the decisionmaker is a qualified professional entitled to deference, and (2) whether the decision reflects a conscious indifference amounting to gross negligence, so as to demonstrate that the decision was not based upon professional judgment.").

Contrary to Plaintiffs' contention, Defendants do not argue that actual harm is required, Pls.' Opp. 11, but Plaintiffs must still show a substantial risk of harm, which they have not done either. *See Gordon*, 888 F.3d at 1125. Determining whether there is substantial risk generally requires an analysis of the specific medical claim. Plaintiffs contend that they have adequately pled facts that demonstrate Defendants' deliberate indifference. But, they rely on numerous paragraphs of their Complaint, none of which involve the specific allegations of any individual Plaintiff and instead involve conclusory statements, memos, and reports by outside agencies and sources not parties to this action about individuals who are also not parties to this action. *See* Pls.' Opp. 9-10. "[A] court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences." *Fabricant v. Paymentclub Inc.*, No. 219CV02451ODWASX, 2019 WL 5784174, at *1 (C.D. Cal. Nov. 6, 2019) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Moreover, for similar reasons that Plaintiffs' claims should be severed and dismissed or transferred to the proper venue, Plaintiffs' systemic challenges are overbroad and conclusory such that they fail to state a claim. *See Shook*, 543 F.3d at 604. For example, Plaintiffs challenge policies and procedures related to

monitoring and overseeing different operations, such as medical and mental health care, segregation practices, and disability related practices. Compl. ¶¶ 281-306, 430-501, 522-537. While Plaintiffs attempt to link these very broad allegations to specific claims concerning the named Plaintiffs, they do so in a conclusory manner. *See, e.g.*, Compl. ¶ 290 (Plaintiff Sanchez Martinez alleges that he was "forced [] to choose between his back brace and hernia belt" and that the nurse was not qualified to discontinue use of either device); ¶ 291 (Plaintiff Salazar Artaga alleges that licensed practical nurses "ignored" his requests for prescription medication and a shower chair and that "such decisions are outside [their] scope of practice").

Additionally, Plaintiffs cite to *Gray v. County of Riverside*, No. 13-00444, 2014 WL 5304915 (C.D. Cal. Sept. 2, 2014) to support their contention that their systemic challenges to certain policies and procedures sufficiently allege deliberate indifference on the part of Defendants. However, that case is distinguishable, first, because the parties conducted extensive class discovery including expert declarations and reports. Any future discovery, if permitted to go forward in this case, may not result in evidence of recklessness and deliberate indifference because, at the individual level, the named Plaintiffs are receiving screening, diagnoses, and treatment. *See* Compl. ¶ 24 (Plaintiff Fraihat expresses disagreement with the treatment and recommendations he received from two doctors); ¶ 267 (Plaintiff Soto expresses disagreement with the treatment options provided by a neurologist); ¶¶ 54, 214-15, 337, 390 (Plaintiff Sudney discusses the various treatments he has received, including two surgeries). Second, the plaintiffs in *Gray* brought their systemic challenge concerning the provision of medical and mental health care against the municipality with direct control over the operations of the facilities, whereas here Plaintiffs have brought their claims against ICE which administers immigration detention nationwide and does not necessarily have

8

direct control over operations at all detention facilities. *See* 2014 WL 5304915, at *1; *see* Compl. ¶ 133 (indicating that different ICE facilities are run by different entities and different types of contracts). In other words, Plaintiffs in this case have not pled adequate causation in that they have not demonstrated that if ICE makes changes to certain policies and procedures then such changes would have a direct correlation to the risk of harm Plaintiffs allege. For example, Plaintiff Montoya Amaya alleges that he was placed in disciplinary segregation for eating an extra tray of food that he did not understand was not for him as a result of a miscommunication between him and the facility staff. Compl. ¶¶ 471, 545. If ICE improves or changes segregation procedures in response to allegations such as those of Plaintiff Montoya Amaya, miscommunications based on specific circumstances may still occur and facilities may still have compliance issues.

Further, Plaintiffs' systemic challenge that Defendants' management of administrative segregation results in punitive conditions of confinement lacks support in any of the specific allegations by the named Plaintiffs. Rather, the segregation claims by the named Plaintiffs indicate that they were segregated for medical reasons, reasons related to security and general management of the facility, or that they did not know why they were segregated. *See* Compl. ¶ 546 (Fraihat admits when he was in medical segregation he saw a nurse twice a day); ¶ 547 (Melvin Hernandez admits he was placed in segregation for his "severe allergies"); ¶ 471 ("Mr. Montoya Amaya was confused as to whether the segregation was disciplinary, or instead for his health or protection, as he was housed in medical isolation."); ¶¶ 391, 469 (Ali alleges that she was "effectively placed in segregation" and "housed in Aurora alone in a dormitory designed for dozens of people"); *see also Bell v. Wolfish*, 441 U.S. 520, 539-40 (1979) (noting that the government has legitimate operational interests stemming from its management of a detention facility that may justify imposing conditions on an

individual without violating the Constitution). With respect to Plaintiff Ali, her allegations of "effective segregation" are conclusory and do not demonstrate that she was placed in segregation at all, let alone in segregation for punitive reasons. Compl. ¶ 447. That the facility housed her alone in a dorm designed for more people could have been for any number of operational reasons, including a lack of other female detainees. None of the named Plaintiffs sufficiently allege that they were placed in segregation for punitive reasons.

Plaintiffs' misapply the second prong of the *Jones v. Blanas* standard for a presumption of punitiveness, *see* 393 F.3d 918 (9th Cir. 2004), and they also inappropriately attempt to extend the requirement for a due process hearing in *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996) to non-disciplinary segregation. First, Plaintiffs' arguments concerning a presumption of punitiveness with respect to Defendants' use of segregation ignores the statutory and regulatory scheme for immigration detention because not everyone is subject to release. Whether less harsh or less restrictive alternatives to detention exist for an immigration detainee depends upon the detention authority governing that detainee's detention. *See, e.g.*, 8 U.S.C. § 1225(b) (requiring mandatory detention for aliens pending final determination in credible fear proceedings); § 1226(c) (requiring mandatory detention for aliens who have committed certain criminal offenses); § 1231(a)(2) (requiring mandatory detention during the 90-day removal period after a final order of removal is entered). Second, *Mitchell* involved due process concerns surrounding when a pretrial detainee may be subject to disciplinary segregation. The court held in *Mitchell* that "pretrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule." 75 F.3d at 524. Here, no Plaintiff has sufficiently alleged that his or her segregation occurred for disciplinary or punitive reasons, and therefore, Plaintiffs reliance on *Mitchell* is misplaced.

10

1    Plaintiffs cite *Torres*' holding that plaintiffs in that case demonstrated a
2    "presumption of punitiveness" with respect to conditions at certain immigration
3    detention facilities within the Central District of California that "are not 'more
4    considerate' than at criminal facilities." 411 F. Supp. 3d at 1064-65. However,
5    Plaintiffs have not demonstrated a basis for this Court to expand that finding to
6    facilities outside this judicial district where different legal standards for analyzing
7    conditions of confinement may apply. *See Matherly v. Andrews*, 859 F.3d 264,
8    275-76 (4th Cir. 2017) (declining to follow the Ninth Circuit's decision in *Jones*
9    concluding that "[*Jones*] places too great of a burden on prison administrators to
10   justify their every move" and "the Supreme Court has made clear that the judiciary
11   should not be in the business of administering institutions. But *Jones* does just that
12   [].").
13

### III.   Plaintiffs Have Failed To Demonstrate That Defendants Deny Detainees With Disabilities Meaningful Access To Benefits Under the Rehabilitation Act

16       Plaintiffs have failed to show that Defendants denied any named Plaintiff a
17   reasonable accommodation that he needed to receive meaningful access to services
18   at the pertinent detention facility, or that Defendants acted with deliberate
19   indifference. *See e.g.* Compl. ¶ 502 (where Plaintiff Segovia Benitez fails to show
20   that he needed an accommodation, that Defendants were on notice that he required
21   an accommodation but failed to provide one, and that the requested
22   accommodation would have been available and reasonable). Contrary to Plaintiffs'
23   argument, Defendants are not able to determine whether an individual has a
24   disability or requires an accommodation unless they have notice that the individual
25   has a disability or needs an accommodation. Under the detention standards that
26   apply to various immigration detention facilities, Defendants have screening
27   procedures to identify medical and mental health impairments and any requisite

reasonable accommodations that comply with federal law, including the Rehabilitation Act. *See* Immigration and Customs Enforcement, Detention Standards, https://www.ice.gov/detention-standards/2019 (last visited Feb. 7, 2020); *see, e.g.*, Immigration Customs and Enforcement, *Performance-Based National Detention Standards 2011* (rev. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.; *see also* Immigration Customs and Enforcement, *National Detention Standards For Non-Dedicated Facilities* (rev. 2019), https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf. To establish a plausible claim, Plaintiffs must allege a need for an accommodation because of their disability, that the government was on notice of such need for accommodations to obtain meaningful access but failed to provide them, and that the requisite accommodation was reasonable and available. *See Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010). Here, because Plaintiffs have not set forth such allegations in their Complaint, they have failed to state a claim under the Rehabilitation Act.

Further, Plaintiffs have not provided specific allegations relating to their claims that Defendants fail to identify, track, and accommodate the needs of individuals with disabilities. Specifically, Plaintiffs have not demonstrated that Defendants practices deviate from the publicly available detention standards and policies for disability identification, assessment, and accommodation. *See* Immigration and Customs Enforcement, Detention Standards, https://www.ice.gov/detention-standards/2019 (last visited Feb. 7, 2020) (providing information on the 2019 National Detention Standards for Non-Dedicated Facilities as well as other detention standards applicable to ICE facilities).

12

**IV.    Plaintiffs Fail To Demonstrate That The Organizational Plaintiffs Have Standing And State A Claim For Relief**

Organizational Plaintiffs ICIJ and AOL fail to show that generally advocating for individuals with disabilities in ICE custody gives rise to organizational standing in this case. Compl. ¶¶ 99-101, 115, 124-125. An organizational plaintiff must show that the claimed harm is "both a diversion of its resources *and* a frustration of its mission," and ICIJ and AOL have failed to show both elements of their claimed harm. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (emphasis added). Both organizational Plaintiffs fail to show a diversion of their resources because each organization claims that it already devotes resources to the representation of clients with disabilities, regardless of whether the individuals have been denied requested accommodations or specific medical treatment under the asserted claims. Compl. ¶ 101, 104-05, 112-25, 116. Neither ICIJ and AOL sufficiently demonstrate how they have had to divert resources away from each organization's core interests and mission. Furthermore, both organizations' claimed efforts to develop protocols and resources related to advocacy are not linked to any named Plaintiff, any specific detention facility, or any particular claim in this case, and thus are too broad to establish organizational standing. *See Torres v. United States Department of Homeland Security*, No. 18-2604, 2019 WL 5883685, at *23 (C. D. Cal. Oct. 24, 2019) (finding that development of practice resources was "too tenuously linked to [the specific detention facility at issue] to give rise to direct organizational standing.").

Furthermore, no motion for class certification has been filed yet in this case, and Plaintiffs have not sought class discovery. Therefore, at this stage of the proceedings, this case is about 15 individual Plaintiffs who allege medical and mental health issues, as well as disabilities, and who allege denial and delay in

receipt of accommodations or medical treatment. Both ICIJ and AOL have failed to demonstrate that they actually assist any of the individual Plaintiffs; thus, both organizations fail to demonstrate a frustration of their mission or a diversion of their resources under the asserted claims. *See* Compl. ¶ 118; *e.g.,* ¶¶ 124-125 (where AOL's alleged client with HIV is not a named Plaintiff in this case, has not established a right under any of the asserted claims, and fails to show that there was ever a denial of such right.).

Finally, neither organization falls within the zone of interests of the Rehabilitation Act because both organizations fail to establish a direct injury related to the statutory scheme of that Act. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011) (holding that the zone of interest for a statute with the term "any person aggrieved" should not be construed to protect anyone who may have been indirectly injured, but to protect only those whose injuries were directly related to the statutory prohibition). Here, ICIJ and AOL fail to establish that they specifically assist any of the named Plaintiffs protected under the Rehabilitation Act, or that their assistance of these individuals has resulted in direct injury when their claimed missions involve assisting detained immigrants, including those with disabilities. Therefore, their claims should be dismissed for failure to state a claim upon which relief can be granted.

## V.   Plaintiffs' Irrelevant And Immaterial Allegations Should Be Stricken As Unduly Prejudicial

To the extent that Plaintiffs' argument that their excessive and unwieldy Complaint illustrates a likelihood of future injury to unnamed class members, Plaintiffs' assertion fails for two reasons. First, since no class has been certified yet, this case is limited to the 15 named Plaintiffs and anything unrelated to the named Plaintiffs should be stricken. Here, more than one hundred paragraphs are unrelated to the named Plaintiffs or their claims in this action. Instead, these

14

paragraphs consist mostly of background facts and compile something more akin to a treatise on immigration detention rather than a complaint for declaratory and injunctive relief. *See* Compl. ¶¶ 139-202, 317-18, 343-49, 370-76, 442-43, 448-49, 452-54, 458, 480, 490, 494, 540 (discussing general history, statistics, letters, and reports unrelated to any of the named Plaintiffs in the present case); ¶¶ 226-36, 270-79, 296-305, 319-34, 350-55, 365-66, 378-86, 404-12, 426-28, 466, 473-78, 496-500 (describing the health issues and deaths of individuals not parties to this action); *see also Verfuerth v. Orion Energy Systems, Inc.*, 65 F. Supp. 3d 640, 652 (E.D. Wis. 2014) (where 73 of complaint's 96 pages contained only unnecessary background facts and motion was granted because requiring defendant to pay counsel to investigate and respond to such facts "definitely falls into the category of prejudice."). All of these paragraphs consisting of unrelated or even tangentially related information should be stricken.

"[S]ystem-wide injunctive relief is not available based on alleged injuries to unnamed members of a proposed class." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999). Any relief must be limited to the injury established by the named Plaintiffs. *Id.* Here, the named Plaintiffs fail to state a claim under any of the causes of action in this case, and Plaintiffs' cannot resolve the shortcomings of the pleading by incorporating numerous improper allegations about individuals not parties to this action. Insufficient allegations in a pleading that do not consist of an entire claim for relief may be challenged by a motion to strike. *See Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129-30 (D. Ariz. 2009); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Thus, Plaintiffs historical and background allegations unrelated to the named Plaintiffs in this action should be stricken.

Finally, the slew of allegations unrelated to the Plaintiffs and their claims in this case prejudice Defendants, and Plaintiffs' systemic allegations related to

15

specific claims for relief that the individual Plaintiffs do not themselves allege should also be stricken. Even if a class is certified, many of the allegations in the Complaint relate to detainees who died or committed suicide, and Plaintiffs do not list deceased individuals as members of the putative class. *See* Compl. ¶¶ 223-226, 228, 274, 276-78, 299-302, 319-20, 327, 329-34, 351-355, 365-66, 378-86, 404-412, 426, 473-78, 496-500 (discussing deaths of individuals not parties to this action and detainee death reviews from detention centers across the country that do not relate to any individual Plaintiff or their claims). Furthermore, the more than 100 allegations that consist of background information will be extremely burdensome and unnecessarily time consuming for Defendants to answer, and therefore should be stricken. *See In re "Agent Orange" Product Liab. Litig.*, 475 F. Supp. 928, 935 (E.D.N.Y. 1979); *see also Verfuerth*, 65 F. Supp. 3d at 65. Requiring Defendants to answer such tangential and ultimately irrelevant and immaterial allegations would unquestionably prejudice Defendants. The Complaint is overbroad, spanning the entire country and encompassing hundreds of paragraphs about historical background unrelated to individuals or facilities named in this action. Much of the Complaint is repetitive and littered with irrelevant material. Accordingly, all allegations in the Complaint that do not relate to the named Plaintiffs or issues raised in this action should be stricken.

**VI.    Claims Made By Plaintiffs Who Are Released Or Removed Are Moot**

  The claims of individual Plaintiffs in this case who have been released from detention or removed from the United States are moot because they are no longer detained. Generally, release from detention moots claims for injunctive relief relating to the detention facility's policies. *See Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001). While it is the general rule that putative class members may continue to assert claims on behalf of a class, even where their individual claims have become moot, *see Nielsen v. Preap*, 139 S. Ct. 954, 963 (2019), that general

16

rule should not apply here where 12 named Plaintiffs remain to represent the claims of the putative class if they themselves can state valid claims. Plaintiffs Sergio Salazar Artaga, Jose Segovia Benitez, and Edilberto Garcia Guerrero[1] were released from ICE custody prior to the filing of any motion for class certification in this case, and therefore, their claims are moot.

Furthermore, Plaintiffs contend that they qualify for an exception to mootness because they are a putative class challenging ongoing government policies and their claims are "inherently transitory." Pls.' Opp. to Defs.' Mot. to Sever and Dismiss, Transfer Actions, and Strike Portions of the Compl. ("Pls.' Opp.") 4-5, ECF No. 69. In other words, Plaintiffs seem to argue that the class claims challenging Defendants' ongoing policies predominate and that their declaratory and injunctive relief claims should survive, even though they are inherently transitory, because a class action in this context is a superior method to adjudicate their claims. *See* Fed. R. Civ. Pro. 23(b)(3); *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 360-67 (2011) (analyzing the differences between Federal Rule 23(b)(2) and 23(b)(3) class claims for declaratory and injunctive relief, and holding that claims for monetary relief may not be certified under Federal Rule 23(b)(2) where monetary relief is not incidental to declaratory and injunctive relief). However, because of their unique, factually dependent nature, inadequate medical care claims require an individualized analysis of each Plaintiff's eligibility for relief and of Defendants' defenses in relation to each allegation. The individualized analysis required here is even more evident in this case where Plaintiffs propose a nationwide class involving detainees held in facilities that are run under different contracts, policies, and procedures. *See* Compl. ¶¶ 133

---

[1] Plaintiff Edilberto Garcia Guerrero was medically cleared for departure and departed the United States on January 7, 2020. *See* Ex. 1, Declaration of Eric Ilarraza.

(indicating that different ICE facilities are run by different entities and different types of contracts); *see also* Immigration and Customs Enforcement, Detention Standards, https://www.ice.gov/detention-standards/2019 (last visited Feb. 7, 2020). Plaintiffs generally may seek other forms of individualized or monetary relief, such as claims under the Federal Tort Claims Act or a *Bivens* action. *See, e.g.*, *Revilla v. Glanz*, 7 F. Supp. 3d 1207, 1213-14 (N.D. Okla. 2014) (inadequate medical care claim brought as a civil rights action under 42 U.S.C. § 1983 by pretrial detainees against county sheriff).

Thus, the relation back doctrine should not apply to the claims of released or removed named Plaintiffs where Plaintiffs have not shown that their claims qualify for class certification under Federal Rule 23. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) ("Where the claims are 'inherently transitory' the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution."). To the extent the Court finds that claims by individual Plaintiffs Salazar Artaga, Segovia Benitez, and Garcia Guerrero are not moot, those Plaintiffs have nevertheless failed to state a claim for relief that can be granted. *See supra* Part II.


Dated: February 10, 2020                   Respectfully submitted,

                                           JOSEPH H. HUNT
                                           Assistant Attorney General

                                           WILLIAM C. PEACHEY
                                           Director

                                           JEFFREY S. ROBINS
                                           Deputy Director

                                           /s/ *Lindsay M. Vick*
                                           LINDSAY M. VICK

Trial Attorney
United States Department of Justice
Office of Immigration Litigation
District Court Section

*Attorneys for Defendants*