
Timothy P. Fox (CA Bar 157750)
*tfox@creeclaw.org*
Elizabeth Jordan*
*ejordan@creeclaw.org*
CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER
1245 E. Colfax Avenue, Suite 400
Denver, CO 80218
Tel: (303) 757-7901
Fax: (303) 872-9072

Lisa Graybill*
*lisa.graybill@splcenter.org*
Jared Davidson*
*jared.davidson@splcenter.org*
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Tel: (504) 486-8982
Fax: (504) 486-8947

Stuart Seaborn (CA Bar 198590)
*sseaborn@dralegal.org*
Melissa Riess (CA Bar 295959)
*mriess@dralegal.org*
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor
Berkeley, California 94704
Tel: (510) 665-8644
Fax: (510) 665-8511

Attorneys for Plaintiffs (continued on next page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION – RIVERSIDE**

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, <br><br>Defendants. | Case No.: 19-cv-01546-JGB(SHKx) <br><br>**Declaration of Keren Zwick in Support of Motion for Preliminary Injunction and Class Certification** <br><br>Date: March 24, 2020 |

William F. Alderman (CA Bar 47381)
*walderman@orrick.com*
Jake Routhier (CA Bar 324452)
*jrouthier@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700
Fax: (415) 773-5759

Michael W. Johnson**
*mjohnson1@willkie.com*
Dania Bardavid**
*dbardavid@willkie.com*
Jessica Blanton**
*jblanton@willkie.com*
Joseph Bretschneider**
*jbretschneider@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

Maia Fleischman*
*maia.fleischman@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
Tel: (786) 347-2056
Fax: (786) 237-2949

Christina Brandt-Young*
*cbrandt-young@dralegal.org*
DISABILITY RIGHTS
ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel: (212) 644-8644
Fax: (212) 644-8636

Mark Mermelstein (CA Bar 208005)
*mmermelstein@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020
Fax: (213) 612-2499

Leigh Coutoumanos**
*lcoutoumanos@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
1875 K Street NW, Suite 100
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000

Shalini Goel Agarwal
(CA Bar 254540)
*shalini.agarwal@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
106 East College Avenue
Suite 1010
Tallahassee, FL 32301
Tel: (850) 521-3024
Fax: (850) 521-3001

Maria del Pilar Gonzalez Morales
(CA Bar 308550)
*pgonzalez@creeclaw.org*
CIVIL RIGHTS EDUCATION
AND ENFORCEMENT CENTER
1825 N. Vermont Avenue, #27916
Los Angeles, CA 90027
Tel: (805) 813-8896
Fax: (303) 872-9072

Attorneys for Plaintiffs (continued from previous page)
*Admitted Pro Hac Vice
**Pro Hac Vice Application Forthcoming

# DECLARATION OF KEREN ZWICK

I, Keren Zwick, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. My name is Keren Zwick and I serve as the Director of Litigation at the National Immigrant Justice Center (NIJC). I have been an attorney at NIJC for nearly nine years, working as a litigator and direct service provider, focusing largely on asylum and protection-based claims for individuals in immigration detention.

2. I have knowledge of the following information relating to the conditions facing migrants in immigration detention centers, and I can testify to it if needed.

3. NIJC operates numerous programs providing legal services to individuals in Immigration and Customs Enforcement (ICE) custody. Our Adult Detention Project provides direct legal representation and know-your-rights programming to immigrants in detention at the following facilities: the McHenry County Jail in Woodstock, Illinois; the Jerome Combs Detention Center in Kankakee, Illinois; the Boone County Jail in Burlington, Kentucky; the Clay County Detention Center in Brazil, Indiana; the Kenosha County Detention Center in Kenosha, Wisconsin; the Pulaski County Detention Center in Ullin, Illinois; and the Dodge County Detention Center in Juneau, Wisconsin.

4. In addition to the work of NIJC's Adult Detention Program other programs within NIJC serve detained individuals in other regions. For example, our LGBT Immigrant Rights Initiative provides direct representation services to immigrants who identify as LGBTQI throughout the country. Through this work, NIJC has routinely represented individuals in the Otay Mesa Detention Center in San Diego California, in the Cibola County Correctional Center in Milan, New Mexico, and in the South Texas Detention Complex in Pearsall, Texas. Several of NIJC's clients were transferred from Cibola to the Aurora Contract Detention Facility in Aurora, Colorado, when ICE unilaterally transferred the transgender detained population from Cibola.

5. Through a cooperative initiative with the San Diego Federal Defenders, NIJC staff routinely serve individuals in criminal custody and in their transition to immigration custody following a criminal prosecution. Those individuals are generally housed in the Otay Mesa Detention Center in San Diego, California, and in the Imperial Regional Detention Facility in Calexico, California.

6. Finally, NIJC's Federal Litigation Project represents a significant number of detained individuals both in petitions for review before the federal courts and in habeas litigation to challenge their prolonged detention.

7. As the COVID-19 pandemic progresses, NIJC attorneys continue to work zealously to represent our clients who remain in ICE custody. Our attorneys and legal assistants are in regular touch with clients, generally via phone. In light of the pandemic, I and my colleagues directing NIJC's Detention Project and LGBT Immigrant Rights Initiative have instructed NIJC staff that works with individuals in detention to speak to their clients about their current detention conditions and the possible vulnerabilities they face

8. Across the board, NIJC clients express a palpable fear at the vulnerability they face while remaining in detention during the COVID-19 pandemic. They are worried not only for themselves but for their families with whom they have difficulty communicating outside the detention centers. This fear is exacerbated by a universal perception that little to nothing has changed in the operation of the detention centers where they are housed since the onset of the pandemic. Our clients also universally report that neither ICE nor facility staff have provided them with meaningful information or education about the pandemic, leaving them to manage their anxieties—and medical issues—with little or no reliable information about what precautionary measures they could be taking.

## Failure To Provide Information About COVID-19

9. Not one NIJC client in detention reports receiving reliable information or training about what COVID-19 is and precautionary measures that might be taken to halt its spread. Most clients reported that they received no information whatsoever from ICE or facility staff, much less medical staff, about the virus, and were learning what they knew almost exclusively from watching television.

10. Two clients detained at the Jerome Combs and another client detained at the Aurora Contract Facility reported that no one at the facility had communicated directly with them about the virus, but that they learned about the virus from the news.

11. Another client detained at McHenry reported that he knew about the virus because visitation was cancelled, and an official told him that if one person in detention got in contact with coronavirus, then everyone might be "down for a minute," but if the detainees got sick, they wouldn't let them go to the doctor. Other clients at McHenry confirmed that they learned of the virus only through the television, one noting he was concerned by news reports that people who are incarcerated are at greater risk.

12. One NIJC client at Pulaski did report that an ICE officer told them about the virus, but this notification appeared to go no further than explaining that detainees are at risk of getting the virus, and that there was a risk that they had already gotten it. The officer, our client reported, told them not to panic.

13. Two clients in Dodge similarly reported receiving no information about the virus other than through posted signs or what they see on the news.

14. Learning of the pandemic through the television and correspondence with family and friends on the outside, but without reliable information or training on precautionary measures from staff, leaves our clients in detention with more questions than answers as to how to protect themselves and others. One of the men detained at the Jerome Combs who learned of the virus through the news explained that "everyone is anxious" because they have been watching the news and seeing recommendations that people not cluster in groups of 10 or more people, which is impossible at that facility because it houses 48 people per block.

**Failure To Provide Necessary Supplies**

15. NIJC clients all report that little to nothing has changed since the onset of the COVID-19 pandemic with regard to their access to supplies that would allow them to take precautionary measures to protect their health and the health of others detained with them, such as soap, hand sanitizer, or other cleaning supplies.

16. One NIJC client at Jerome Combs meets the CDC definition of a person of higher risk for COVID-19 because he suffers from diabetes and high blood pressure. Yet he reports that the facility has not "done much of anything" in response to COVID-19. As far as he has observed, there is no additional presence of medical personnel at the facility, and the staff has not asked him about symptoms at all. He additionally noted that he and other immigrants in detention do not have access to any extra cleaning supplies to keep their living areas sanitized.

17. Across all facilities where NIJC clients are detained, our clients report that they lack ready access to soap and hand sanitizer. Two NIJC clients at McHenry report that they and others in detention do not have access to hand sanitizer or cleaning supplies and can only access soap through the commissary, which is unavailable for those lacking funds.

18. Another NIJC client at Otay Mesa, noted that while he and other immigrants in detention have access to soap they do not always have access to clean water, and have no access to disinfectant or other cleaning supplies, even though their living spaces are very dirty.

19. An NIJC client at Dodge echoed similar concerns, noting that she and others have no access to hand sanitizer (even though it is provided for jail officials) or cleaning supplies.

20. In Aurora, an NIJC client reported that the immigrants in detention must ask officers for soap and it is only sometimes provided; the only guaranteed way to get bar soap is to buy it for approximately $3 at the commissary.

21. A person detained at the Winn Correctional Center in Louisiana noted similarly that neither soap nor hand sanitizer is available.

22. And an NIJC client recently transferred to the Eden Detention Center in Texas explained that he had been given shampoo, a toothbrush and toothpaste, but no hand soap, despite having asked multiple times.

23. Others noted particular concern with the lack of precautions taken by ICE and facility staff in the kitchen, where many immigrants provide labor. Two NIJC clients detained at the McHenry expressed concern that although they continue working in the kitchen through the pandemic, they have not been given any new safety supplies.

24. In Aurora, an NIJC client reports that immigrants in detention also continue to bear responsibility for daily cleaning the bathrooms and floors. They are not provided with masks or other safety supplies, and only sometimes get gloves.

25. A person detained in Otay Mesa reported to us that some officials appear to be coming to work at the detention center with the flu or another illness, and that there are rumors that

some people may be infected or will be transferred. This conduct continues with no announcements from ICE or the facility officials about how to prepare for the virus.

### Uncertainty Regarding Quarantine or Isolation Practices

26. NIJC clients and the immigrants detained with them observe what appears to be random practices with regard to the use of quarantine. In Aurora one individual reported that there are approximately ten people in quarantine, but no officials have explained why. This person is afraid that the others might be quarantined because of exposure to the COVID-19 virus, and is therefore afraid for everyone's health.

27. At the Winn Correctional Center, an individual has observed that more than 35 new individuals arrived at the facility last week, and are being kept separate from the rest of the population. This person sees that the jail officials are not using gloves or masks and is concerned that people coming into the facility could be bringing the virus in.

### Dangerous Transfer Practices

28. Over the past week, one NIJC client was transferred out of the Otay Mesa and then back again, and reports that he is gravely concerned that during his transfer he may have been exposed to COVID-19. Our client was called out of his room and told he was being transferred last Friday; at Otay, he was taken from booking and then put into a room with eight other people. He describes the room where they were held as small, hot and stuffy, with two people in the room coughing and visibly ill. Our client and the other seven people were left in the room all night, sleeping next to each other for lack of space, with no access to soap.

29. The next morning, our client was transported on a bus with about thirty people, including the two people who were visibly ill, to the Adelanto ICE Processing Center in Adelanto, California. At Adelanto, our client was held in a large room, now separated from the two people who had appeared ill. Our client is now back at the Otay Mesa Detention Center, but being held in quarantine with others. He is very scared regarding his own exposure and vulnerabilities, and those around him. The client reported no temperature checks or other screening during these transfers.

30. Similarly, all individuals at the facility that NIJC serves in Kenosha, Wisconsin, were abruptly transferred out of the facility. Those individuals, were transported to other facilities, some in Illinois but others as far off as Eden, Texas. Individuals who were transferred in this process received no testing or separation on either end of their journeys. Of the people we have spoken to as part of this transfer, we are aware of no temperature checks or other screening.

31. NIJC has tried to raise these issues in a variety of manners. With the jails that detain individuals in the Chicago Area of Responsibility—NIJC's primary service area—we have contacted the jails directly by mail and in some cases email or phone. We have not received responses to our queries about what they intend to do to safeguard our clients.

32. We also sent a letter to the ICE Field Office Director for the Chicago Area of Responsibility inquiring about ICE's protocols and raising concern about the health and safety of our clients, but we have not received a response.

33. In the case of one of our clients facing prolonged detention in Aurora we amended a pending request for release to ask that COVID-19 be taken into consideration in the request for release for our client. We pointed out that ICE has the authority to release such individuals and cited notice from ICE stating that it would adjust detention practices as to new enforcement efforts. We got an immediate rejection notice to this request.

34. Additionally concerning, the ICE Field Office in Chicago indicated that it was closed, leaving us with little hope that requests pertaining to individual clients in our area will receive a response.

I declare under penalty of perjury and under the laws of the United States, pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, memory, and belief.

Executed on the 21st day of March, in the year 2020, in the city of Chicago, Illinois.

*[signature]*

Keren Zwick
National Immigrant Justice Center
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
T: 312.660.1364
F: 312.660.1505
KZwick@heartlandalliance.org