Timothy P. Fox (CA Bar 157750)
*tfox@creeclaw.org*
Elizabeth Jordan*
*ejordan@creeclaw.org*
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
1245 E. Colfax Avenue, Suite 400
Denver, CO 80218
Tel: (303) 757-7901
Fax: (303) 872-9072

Lisa Graybill*
*lisa.graybill@splcenter.org*
Jared Davidson*
*jared.davidson@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Tel: (504) 486-8982
Fax: (504) 486-8947

Stuart Seaborn (CA Bar 198590)
*sseaborn@dralegal.org*
Melissa Riess (CA Bar 295959)
*mriess@dralegal.org*
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor
Berkeley, California 94704
Tel: (510) 665-8644
Fax: (510) 665-8511

Attorneys for Plaintiffs (continued on next page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION – RIVERSIDE**

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, <br><br> Defendants. | Case No.: 19-cv-01546-JGB(SHKx) <br><br> **Declaration of Anne Rios in Support of Motion for Preliminary Injunction and Class Certification** <br><br> Date: March 24, 2020 |

William F. Alderman (CA Bar 47381)
*walderman@orrick.com*
Jake Routhier (CA Bar 324452)
*jrouthier@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700
Fax: (415) 773-5759

Michael W. Johnson**
*mjohnson1@willkie.com*
Dania Bardavid**
*dbardavid@willkie.com*
Jessica Blanton**
*jblanton@willkie.com*
Joseph Bretschneider**
*jbretschneider@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

Maia Fleischman*
*maia.fleischman@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
Tel: (786) 347-2056
Fax: (786) 237-2949

Christina Brandt-Young*
*cbrandt-young@dralegal.org*
DISABILITY RIGHTS
ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel: (212) 644-8644
Fax: (212) 644-8636

Mark Mermelstein (CA Bar 208005)
*mmermelstein@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020
Fax: (213) 612-2499

Leigh Coutoumanos**
*lcoutoumanos@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
1875 K Street NW, Suite 100
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000

Shalini Goel Agarwal
(CA Bar 254540)
*shalini.agarwal@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
106 East College Avenue
Suite 1010
Tallahassee, FL 32301
Tel: (850) 521-3024
Fax: (850) 521-3001

Maria del Pilar Gonzalez Morales
(CA Bar 308550)
*pgonzalez@creeclaw.org*
CIVIL RIGHTS EDUCATION
AND ENFORCEMENT CENTER
1825 N. Vermont Avenue, #27916
Los Angeles, CA 90027
Tel: (805) 813-8896
Fax: (303) 872-9072

Attorneys for Plaintiffs (continued from previous page)
*Admitted Pro Hac Vice
**Pro Hac Vice Application Forthcoming

# **DECLARATION OF ANNE RIOS**

I, Anne Rios, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. My name is Anne Rios. I am a licensed attorney in good standing, in the state of California. I have been practicing law since 2009. I am a supervising attorney with the nonprofit organization Al Otro Lado (AOL). I have represented over 75 detainees in release efforts; approximately 35% of those detainees are medically vulnerable.

2. AOL is a legal services organization that serves indigent migrants, refugees, deportees, and their families, and operates primarily in Los Angeles, California; San Diego, California; and Tijuana, Mexico; although it provides referrals and assistance to indigent migrants and refugees across the United States.

3. AOL's mission is to coordinate and provide screening, advocacy, and legal representation for individuals in immigration proceedings; to seek redress for civil rights violations, including disability rights violations; and to provide assistance with other legal and social service needs.

4. Specifically, AOL represents detained migrants in their removal proceedings; this includes representing individuals detained at the Otay Mesa Detention Facility and the Adelanto Detention Facility in Southern California.

## **OTAY MESA DETENTION CENTER**
**AOL Staff Unable to Schedule Bond Hearings After COVID 19 Outbreak**

5. From March 13, 2020 until March 17, 2020, AOL was unable to schedule bond hearings for our clients detained at Otay Mesa Detention Center ("OMDC") who are eligible for release. Repeatedly, AOL was told that there were no dates available for bond because of the COVID 19 outbreak and that the court staff was determining how to proceed. AOL called the Otay Mesa Immigration Court no less than seven times to try and schedule bond hearings for clients in custody. Each time AOL was told that there were no hearings dates available to be scheduled. Because bond is a function solely under the

jurisdiction of the immigration judge, without a scheduled hearing, there is no way for someone who is medically vulnerable to be released during the COVID 19 epidemic.

6. The delay in scheduling bond hearings caused one of AOL's client to be transferred, without notice, to Houston Detention Facility.

**Lack of Preventative Measures at OMDC**

7. On March 20, 2020, AOL staff visited OMDC to conduct legal visitations with four AOL clients.

8. AOL staff entered OMDC without undergoing any screening process. AOL staff did not observe any preventive measures taking place to screen anyone entering OMDC. AOL staff did not have their temperature taken nor were they asked if they had any symptoms of COVID 19 such as a cough or shortness of breath.

9. At OMDC, AOL staff observed that OMDC employees were not practicing social distancing. AOL staff observed that OMDC employees were shaking hands, patting each other's shoulders, and working in close proximity to one another.

**AOL Staff's Legal Visit Was Via Video Teleconference**

10. Starting March 19, 2020, AOL was informed that OMDC had implemented a no contact policy and legal visits were only allowed via video teleconference calls. All video teleconference calls took place in a large room located in the main lobby that has about 15 VTC stations.

11. AOL staff met with four AOL clients via OMDC's video teleconference system and experienced significant difficulty in communicating with clients. During the first call, AOL staff could barely hear the client and had to ask for repetition due to the static nature of the call. During another video call, AOL staff had to request to be moved to a different video station on two different occasions because the client could not hear AOL staff. The telephones were not cleaned prior to beginning the visit.

2

12. Teleconferencing creates a challenge for AOL to advocate for its clients to protect them against COVID-19, especially medically vulnerable clients. For instance, there are no accommodations made for clients who are hearing impaired, who have mobility issues, or who speak rare languages.

**AOL Clients Expressed Increased Anxiety Due to the COVID-19 Pandemic**

13. AOL observed that clients have independently expressed increased anxiety and worry due to COVID-19. One client expressed that he was anxious and felt helpless because he felt like the detainees were all "sitting ducks" for an outbreak. Another client expressed that everyone within the detention center seemed tense. Another client who works cleaning pods expressed that he was working almost eight hours doing deep cleanings of the pods because the officers wanted things cleaned well.

14. The lack of information and communication given to detainees seemed to be heightening anxiety levels. None of AOL's clients stated that they were being briefed on how to lower the risk of catching the virus.

**AOL Clients Described the Lack of Protective Gear Given While Working Within OMDC**

15. AOL's clients told AOL staff they are working within the detention center. One of AOL's clients works by cleaning pods; another client works in the laundry room; and another client works in general cleaning. Two AOL clients told AOL staff that they were now being given gloves to clean, but no other protective gear.

16. When AOL staff was waiting in the lobby, AOL staff observed two detainees cleaning and disinfecting the lobby without any protective gear, except for gloves.

## ADELANTO

**AOL Clients in Quarantined Dorms**

17. Two of the dorms in Adelanto West building are in quarantine as of the night of March 18, 2020. On the morning of March 19, 2020, the East building also

3

was quarantined. Most of those who are quarantined are "low levels", meaning they are primarily arriving immigrants and other asylum seekers. AOL has yet to receive an update from ICE concerning the reason for the quarantine, however, detained clients have stated that they believe the quarantine is due to detainees who have COVID-19.

### Bond Hearings for AOL Clients Have Been Cancelled

18. Due to quarantine, on March 18, 2020, a bond hearing for an AOL client was canceled. AOL was not informed of the cancellation prior to the hearing and the clerks did not have any additional information. The bond hearing was not rescheduled. The cancellation of the hearing leaves the client without a feasible way to be released from detention.

### AOL Legal Visitation

19. All non-legal visitation has been stopped. AOL staff may still meet with non-quarantined clients for a non-contact visit. These visits require AOL staff to use a phone and speak with clients through a glass window. It is not clear how often the phones are cleaned, if at all.

20. AOL is not allowed to bring in cleaning supplies or hand sanitizer.

21. Three of AOL's clients were not available for legal visitation due to the quarantines. When AOL staff asked detention center staff about potential alternatives for legal visitation (e.g. phone or video), the GEO guard on duty explained the only way to communicate with our clients in quarantine is if the clients pay for a recorded call on the phone in their dormitory.

### Lack of Preventative Measures at Adelanto

22. Guards appear to enter the facility freely and do not appear to have any kind of temperature or other screening. Guards also do not practice social distancing with one another. Guards were observed standing in groups near the registration desk and engaging in conversation. They did not appear to make any effort to minimalize contact or maintain distance. AOL Clients report that guards don't wear gloves or masks when working with detainees.

4

23. It appears that the overall cleaning routine remains the same as it was prior to the pandemic. AOL Clients noted that guards sometimes sprayed a solution on door handles but other than that no additional cleaning or safety measures are in place. Detainees continue to be responsible for the majority of the cleaning in the facility and are not being provided with any additional safety equipment such as masks. Clients report that they are not being given extra soap or extra cleaning supplies.

24. AOL clients described the mood in the facility as tense, as detainees are aware of the ongoing situation yet they are not being provided with clear information concerning their personal risk of contracting COVID-19 and they are not being advised as to what they can do to prevent infection.

25. Humanitarian parole is a mechanism available to all individuals in ICE custody. ICE can grant humanitarian parole in its discretion. In fact, AOL has successfully had clients released by ICE, in the past, on their own recognizance under humanitarian parole—especially when they are medically vulnerable. Although this is a viable option for ICE, AOL has not seen an uptick in grants of humanitarian parole in light of COVID; instead, we have at least three parole requests awaiting a decision while our clients remain inside of detention.

I, Anne Rios, declare under penalty of perjury and under the laws of the United States, pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, memory, and belief.

Signed: March 22, 2020

Anne Rios