1  Timothy P. Fox (CA Bar 157750)
   *tfox@creeclaw.org*
2  Elizabeth Jordan*
   *ejordan@creeclaw.org*
3  CIVIL RIGHTS EDUCATION AND
   ENFORCEMENT CENTER
4  1245 E. Colfax Avenue, Suite 400
5  Denver, CO 80218
   Tel: (303) 757-7901
6  Fax: (303) 872-9072

7  Lisa Graybill*
   *lisa.graybill@splcenter.org*          Stuart Seaborn (CA Bar 198590)
8  Jared Davidson*                         *sseaborn@dralegal.org*
   *jared.davidson@splcenter.org*          Melissa Riess (CA Bar 295959)
9  SOUTHERN POVERTY LAW                    *mriess@dralegal.org*
   CENTER                                  DISABILITY RIGHTS ADVOCATES
10 201 St. Charles Avenue, Suite 2000      2001 Center Street, 4th Floor
11 New Orleans, Louisiana 70170            Berkeley, California 94704
   Tel: (504) 486-8982                     Tel: (510) 665-8644
12 Fax: (504) 486-8947                     Fax: (510) 665-8511

Attorneys for Plaintiffs (continued on next page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION – RIVERSIDE**

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, *et al.*, | Case No.: 19-cv-01546-JGB(SHKx) |
| Plaintiffs, | |
| v. | **Declaration of Andrew Lorenzen-Strait in Support of Motion for Preliminary Injunction and Class Certification** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | |
| Defendants. | Date: March 24, 2020 |

William F. Alderman (CA Bar 47381)
*walderman@orrick.com*
Jake Routhier (CA Bar 324452)
*jrouthier@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700
Fax: (415) 773-5759

Michael W. Johnson**
*mjohnson1@willkie.com*
Dania Bardavid**
*dbardavid@willkie.com*
Jessica Blanton**
*jblanton@willkie.com*
Joseph Bretschneider**
*jbretschneider@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

Maia Fleischman*
*maia.fleischman@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
Tel: (786) 347-2056
Fax: (786) 237-2949

Christina Brandt-Young*
*cbrandt-young@dralegal.org*
DISABILITY RIGHTS
ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel: (212) 644-8644
Fax: (212) 644-8636

Mark Mermelstein (CA Bar 208005)
*mmermelstein@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020
Fax: (213) 612-2499

Leigh Coutoumanos**
*lcoutoumanos@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
1875 K Street NW, Suite 100
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000

Shalini Goel Agarwal
(CA Bar 254540)
*shalini.agarwal@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
106 East College Avenue
Suite 1010
Tallahassee, FL 32301
Tel: (850) 521-3024
Fax: (850) 521-3001

Maria del Pilar Gonzalez Morales
(CA Bar 308550)
*pgonzalez@creeclaw.org*
CIVIL RIGHTS EDUCATION
AND ENFORCEMENT CENTER
1825 N. Vermont Avenue, #27916
Los Angeles, CA 90027
Tel: (805) 813-8896
Fax: (303) 872-9072

Attorneys for Plaintiffs (continued from previous page)
*Admitted Pro Hac Vice
**Pro Hac Vice Application Forthcoming

DocuSign Envelope ID: FFEA0937-3A53-428C-A50E-5A16FF632B68

## DECLARATION OF ANDREW LORENZEN-STRAIT

I, Andrew Lorenzen-Strait, hereby declare:

1. I am currently the Executive Director for Health and Wellness at Lutheran Social Services of the National Capital Area where I oversee migrant support services, including programming in behavioral health. Prior to that, from May 2019 to January 2020, I served as the Director of Children and Family Services at Lutheran Immigration and Refugee Services.

2. From 2008 to May 2019, I served in various roles at U.S. Immigration and Customs Enforcement ("ICE"). Most recently, I was the Deputy Assistant Director for Custody Programs in ICE, Office of Enforcement and Removal Operations ("ERO"). I served in this capacity for over six years, from April 2013 to May 2019, under both Democratic and Republican White House administrations. As Deputy Assistant Director, I oversaw health and welfare programs and services in immigration detention, including innovative programs to serve vulnerable populations. Among my relevant responsibilities included overseeing field level enforcement decisions in cases involving parents and primary caretakers, and monitoring compliance with ERO processes and standards. I also served in other capacities within ICE for over five years prior to that leadership position. Attached as Exhibit A is a copy of my curriculum vitae.

3. I submit this declaration to explain how ICE has exercised and still exercises discretion for purposes of releasing both individuals with serious medical conditions and individuals who are vulnerable to medical harm. Exercising prosecutorial discretion over detention was not only common, it was and continues to be an integral aspect of ICE's enforcement practices.

4. During my time at ICE, the agency's policy and practice was to limit the detention of noncitizens with special vulnerabilities.[1] This group includes individuals who are known to be suffering from serious physical or mental illness, who have disabilities, who are

---

[1] *See, e.g.*, U.S. Immigration and Customs Enforcement, "Detention Reform," (last updated July 24, 2018), https://www.ice.gov/detention-reform#tab1 (referencing use of risk classification assessment tools that "require[] ICE officers to determine whether there is any special vulnerability that may impact custody and classification determinations"); ICE Enforcement and Removal Operations, "Directive 11071.1: Assessment and Accommodations for Detainees with Disabilities" (Dec. 15, 2016), at 9 (providing for release as an option for detainees with disabilities); Doris Meissner, "Exercising Prosecutorial Discretion," Immigration and Naturalization Services (Nov. 17, 2000), at 11 (citing "aliens with a serious health concern" as a trigger for the favorable exercise of discretion); *see also Franco-Gonzalez v. Holder*, 767 F. Supp. 2d 1034, 1061 (C.D. Cal. 2010) (providing for release of individuals with severe mental illnesses unless government could show that ongoing detention is justified).

1

DocuSign Envelope ID: FFEA0937-3A53-428C-A50E-5A16FF632B68

elderly, pregnant, or nursing, who demonstrate that they are primary caretakers, who are LGBTI, or whose detention was not in the public interest.[2]

5. ICE exercises its release authority frequently for detainees with serious medical conditions. For instance, pregnant women never give birth in ICE custody because it is common for ICE to release them beforehand.

6. When I was at ICE, some of the medical conditions that constitute serious physical illness included any terminal illness, any condition that required imminent care to prevent deterioration, and any condition that precluded the individual from being housed, such as cancer requiring chemotherapy or leukemia.

7. In addition, under ICE policies, individuals who did not yet have a serious physical illness, but were *vulnerable* to medical harm were considered for release. When deciding whether to release medically-vulnerable detainees from custody, ICE's determinations considered whether they have any physical or mental condition would make them more susceptible to medical harm while in ICE custody. This could include individuals who were very old, toward the end of their life.

8. Under this rubric, ICE would have considered individuals at high risk of suffering complications and/or death if they were to contract a highly infectious and incurable disease such as COVID-19 to be detainees with special vulnerabilities, eligible for release from detention. When confronted with an infection disease, ICE would have consulted guidelines from the Center for Disease Control and other medical experts to identify individuals who are at high risk and should be considered for release.

9. Upon learning that a detainee had a special vulnerability, ICE was required to monitor the detainee's case and consider options as soon as practicable, including transfer to another detention facility with appropriate medical capabilities, or to an off-site treatment facility, or release where appropriate medical care was not available in custody.

10. ICE's policy and practice of releasing individuals with special vulnerabilities from immigration detention was authorized under a range of statutory and regulatory provisions, including INA §§ 212(d)(5), 235(b), 236, 241, and 8 C.F.R. §§ 1.1(q), 212.5, 235.3, 236.2(b).

11. Even individuals held under mandatory detention, pursuant to the Immigration and Nationality Act ("INA") § 236(c), were released pursuant to ICE's guidelines and policies, particularly where the nature of their illness could impose substantial health care

---

[2] Jeh Charles Johnson, "Policies for the Apprehension, Detention and Removal of Undocumented Immigrants," U.S. Department of Homeland Security (Nov. 20, 2014), *available at* https://www.dhs.gov/sites/default/files/publications/14_1120_memo_prosecutorial_discretion.pdf, at 5.

DocuSign Envelope ID: FFEA0937-3A53-428C-A50E-5A16FF632B68

      costs or the humanitarian equities mitigating against detention were particularly compelling.

12. ICE's policy and practice regarding individuals with special vulnerabilities was reflected in a memorandum from Jeh C. Johnson, Secretary of the Department of Homeland Security, in 2014 ("Johnson memo").[3] ICE has also issued other guidance for exercising prosecutorial discretion in detention decisions, including a memorandum issued by John P. Torres, Director of ICE, in 2006 regarding ICE's exercise of discretion in cases of extreme or severe medical concern ("Torres memo"),[4] and a memorandum from John Morton, Director of ICE, in 2011 ("Morton memo") regarding the exercise of prosecutorial discretion in ICE's enforcement priorities, including detention.[5] The Johnson memo is attached as Exhibit B, the Torres memo is attached as Exhibit C, and the Morton memo is attached as Exhibit D.

13. Although the Johnson, Torres and Morton memoranda have been rescinded by the current administration, the statutory and regulatory bases for the use of prosecutorial discretion in ICE's custodial determinations remains unchanged.

14. In fact, as stated above, ICE's enforcement priorities have always been shaped by the necessary use of prosecutorial discretion with respect to immigration detention.

15. Moreover, ICE has a range of highly effective tools at its disposal to ensure that individuals report for court hearings and other appointments, including conditions of supervision. For example, ICE's conditional supervision program, called ISAP (Intensive Supervision Appearance Program), relies on the use of electronic ankle monitors, biometric voice recognition software, unannounced home visits, employer verification, and in-person reporting to supervise participants. A government-contracted evaluation of this program reported a 99% attendance rate at all immigration court hearings and a 95% attendance rate at final hearings.[6]

---

[3] *See id.*

[4] John P. Torres, "Discretion in Cases of Extreme or Severe Medical Concern," U.S. Immigration & Customs Enforcement (Dec. 11, 2006), *available at* https://www.ice.gov/doclib/foia/dro_policy_memos/discretionincasesofextremeorseveremedicalconcerndec112006.pdf.

[5] John Morton, "Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens," U.S. Immigration and Customs Enforcement (June 17, 2011), *available at* https://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf.

[6] U.S. Gov't Accountability Office, GAO-15-26, *Alternatives to Detention: Improved Data Collection and Analyses Needed to Better Assess Program Effectiveness* 10-11 (Nov. 201.4), *available at* https://www.gao.gov/assets/670/666911.pdf.

DocuSign Envelope ID: FFEA0937-3A53-428C-A50E-5A16FF632B68

16. The COVID-19 virus represents an unprecedented risk to detainee health and safety that should prompt officials to examine the custodial status of all those most at risk. Such an examination would result in their immediate release.

I, Andrew Lorenzen-Strait, swear under the penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing declaration is true and correct to the best of my knowledge and belief.

Executed on this 23rd day in March, 2020 at Davidsonville, Maryland.

*Andrew Lorenzen-Strait*
Andrew Lorenzen-Strait

4