1  JOSEPH H. HUNT
2  Assistant Attorney General
   U.S. Department of Justice
3  Civil Division
   WILLIAM C. PEACHEY
4  Director
   Office of Immigration Litigation
5  District Court Section
   JEFFREY S. ROBINS
6  Deputy Director
   LINDSAY M. VICK (MA 685569)
7  ANNA L. DICHTER (NJ 304442019)
   450 5th Street, N.W., Rm 5223
8  Washington, D.C. 20530
   Telephone: (202) 532-4023
9  Facsimile: (202) 305-7000
   lindsay.vick@usdoj.gov
10 anna.l.dichter@usdoj.gov

11 *Attorneys for Defendants*

12

13           **UNITED STATES DISTRICT COURT**
14     **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15 FAOUR ABDALLAH          )    Case No. 5:17-cv-02048-PSG-SHK
16 FRAIHAT, *et al*.,      )
                           )    **DEFENDANTS' OPPOSITION**
17 *Plaintiffs*,           )    **TO PLAINTIFFS' MOTION FOR**
                           )    **CLASS CERTIFICATION**
18          v.             )
                           )    **Before The Honorable Jesus G.**
19                         )    **Bernal**
20 U.S. IMMIGRATION AND    )    **Hearing Date:** April 13, 2020
21 CUSTOMS ENFORCEMENT, *et al*., )  **Hearing Time:** 9:00 a.m.
                           )
22 *Defendants*.           )
                           )
23 _____ )
24

25

26

27

28

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................. **1**

**BACKGROUND** .................................................................................................... **1**

**I.**     **ICE COVID-19 Guidance** ............................................................................ **1**

**II.**    **The Named Plaintiffs** .................................................................................. **4**

    **A.**     **Faour Abdullah Fraihat** ............................................................. **5**

    **B.**     **Alex Hernandez** ........................................................................... **6**

    **C.**     **Aristoteles Sanchez Martinez** ................................................... **6**

    **D.**     **Jimmy Sudney** ............................................................................. **7**

    **E.**     **Martin Munoz** .............................................................................. **7**

**SUMMARY OF THE ARGUMENT** .................................................................... **8**

**ARGUMENT** ........................................................................................................ **9**

**I.**     **Standards for Class Certification** ............................................................. **9**

**II.**    **This Court should deny the motion for class certification because Plaintiffs fail to satisfy the requirements of Federal Rule of Civil Procedure 23(a) or (b)(2)** ............. **11**

    **A.**     **The Proposed Class Lacks Numerosity** .................................. **11**

    **B.**     **The Proposed Class Lacks Commonality** ............................... **13**

        **i.**     **Rule 23(b)(2)** ..................................................................... **13**

    **C.**     **The Proposed Class Lacks Typicality** .................................... **17**

    **D.**     **Plaintiffs are not Adequate Representatives** ......................... **20**

    **E.**     **If the Court certifies a class, it should revise the proposed class definition** ......................................................................... **22**

**CONCLUSION** .................................................................................................... **23**

i

# TABLE OF AUTHORITIES

## CASE LAW

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................17

*Bank Melli v. Pahlavi*,
   58 F. 3d 1406 (9th Cir. 1995) ...............................................................11

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ...................................................................9, 14, 18

*Franco-Gonzales v. Napolitano*,
   No. CV 10-02211 DMG DTBX, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011).........9

*Garcia v. Wal-Mart Stores, Inc.*,
   No. 16-CV-01645, 2018 WL 4959824 (C.D. Cal. Sept. 28, 2018)..............12

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982) ..............................................................................10

*Gordon v. Cty. of Orange*,
   888 F.3d 1118 (9th Cir. 2018) ..............................................................19

*H.M. v. United States*,
   No. 17-00786-SJO, 2017 WL 10562558 (C.D. Cal. Aug. 21, 2017)...........19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................11, 14, 20

*Hanon v. Dataproducts*,
   976 F.2d 497 (9th Cir. 1992) ................................................................17

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018)............................................................................13

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ...............................................................20

ii

*Munoz v. Wolf*,
No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020)......................................*passim*

*Nguyen Da Yen v. Kissinger*,
70 F.R.D. 656 (N.D. Cal. 1976) ............................................................ 14

*Officers for Justice v. Civil Service Comm'n*,
688 F.2d 615 (9th Cir. 1982) ............................................................... 12

*Penk v. Oregon State Bd. of Higher Educ.*
1984 WL 161492 (D.Or. Sep. 13, 1984) .............................................. 22

*Preap v. Johnson*,
303 F.R.D. 566 (N.D. Cal. 2014), *aff'd*, 831 F.3d 1193 (9th Cir. 2016) .................... 17

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ......................................................... 11

*Requena v. Roberts*,
893 F.3d 1195 (10th Cir. 2018) ........................................................... 19

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ............................................................... 9

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................... 20

*Rutledge v. Elec. Hose & Rubber Co.*,
511 F.2d 668 (9th Cir. 1975) ............................................................... 10

*Schwartz v. Harp*,
108 F.R.D. 279 (C.D. Cal. 1985)........................................................... 17

*Self-Insurance Inst. Of America, Inc. v. Software and Information Ind. Ass'n*,
208 F. Supp. 2d 1058 (C.D. Cal. 2000)................................................. 12

*Ticor Title Ins. Co. v. Brown*,
511 U.S. 117 (1994) ............................................................................. 20

iii

*Trazo v. Nestle USA, Inc.*,
  No. 5:12-CV-02272-PSG, 2013 WL 12214042 (N.D. Cal. Dec. 4, 2013) ............. 19, 20

*United States v. Mendoza*,
  464 U.S. 154 (1984) ................................................................................................ 9

*Waddell v. Lloyd*,
  Case No. 16-14078, 2019 WL 1354253 (E.D. Mich. Mar. 26, 2019) .......................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................*passim*

*Wang v. Chinese Daily News, Inc.*,
  231 F.R.D. 602 (C.D. Cal. 2005)........................................................................ 11

*Wells v. Jeffery*,
  No. 03-cv-228, 2006 WL 696057 n.7 (D.D.C. Mar. 20, 2006).................................... 12

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) ............................................................................ 11

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................................ 10

**FEDERAL STATUTES**

8 U.S.C. § 1182(d)(5)........................................................................................ 16

8 U.S.C. § 1225(b) ................................................................................. 16, 22

8 U.S.C. § 1225(c) ........................................................................................ 22

8 U.S.C. § 1231(a) .......................................................................................... 6

8 U.S.C. § 1231(a)(2)................................................................................. 16, 22

iv

# FEDERAL REGULATIONS

8 C.F.R. § 236.1(c)(8) ............................................................................. 16, 21

# FEDERAL RULES FOR CIVIL PROCEDURE

Fed. R. Civ. P. 21 ................................................................................... 19

Fed. R. Civ. P. 23(a) ................................................................... 8, 9, 12, 17

Fed. R. Civ. P. 23(a)(1) ............................................................................ 11

Fed. R. Civ. P. 23(a)(2) ............................................................................ 13

Fed. R. Civ. P. 23(b) ................................................................................ 17

Fed. R. Civ. P. 23(b)(2) ...................................................................... 10, 13

Fed. R. Civ. P. 56 .................................................................................... 11

# FEDERAL RULES OF EVIDENCE

Fed. R. Evid. 601–602 ............................................................................. 11

Fed. R. Evid. 701 ..................................................................................... 11

Fed. R. Evid. 801–802 ............................................................................. 11

# MISCELLANEOUS

Class Certification in the Age of Aggregate Proof,
    84 N.Y.U. L. Rev. 97 (2009) ........................................................... 13

*ICE Guidance on COVID-19, U.S. Immigration and Customs Enforcement,*
https://www.ice.gov/coronavirus, (last visited Apr. 3, 2020) ............................ 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*People who are at higher risk for severe illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html (last visited Apr. 3, 2020)...................................................................21

# INTRODUCTION

In their Motion for Class Certification, Plaintiffs propose two nationwide subclasses of individuals: 1) all people who are detained in U.S. Immigration and Customs Enforcement ("ICE") custody and have one of <u>the</u> defined Risk Factors that *Plaintiffs* propose, thereby purportedly placing them at heightened risk of contracting the COVID-19 virus; and 2) all people who are detained in ICE custody and have disabilities placing them at heightened risk upon contracting the COVID-19 virus.

This Court should deny Plaintiffs' motion for class certification for failure to meet the requirements of Federal Rules of Civil Procedure 23(a) and (b). Plaintiffs' request for a sweeping and indiscriminate order, based on five individuals at three facilities, and call for a blanket conclusion that ICE is deliberately indifferent at facilities across the country, is fundamentally incompatible with class-wide relief: The five Named Plaintiffs have significantly different medical conditions and are detained at three different detention facilities across the country, requiring individualized analysis and disqualifying their claims from class treatment. Their claims are in no way representative of the proposed class of individuals. Furthermore, because the deliberate indifference standard varies across judicial circuits, class treatment is plainly inappropriate. Finally, although Plaintiffs assert two subclasses, the first subclass necessarily encompasses all individuals who would make up the second subclass, and Plaintiffs fail to set forth an adequate justification for needing the second subclass at all.

# BACKGROUND

## I.   ICE COVID-19 Guidance

On a national level, ICE has issued guidance to all of its facilities run by ICE Health Service Corps ("IHSC"), state and local facilities holding ICE detainees pursuant to Inter-Governmental Services Agreements, and privately contracted facilities, which is then implement by the operators of each facility, as reflected in Defendants' declarations addressing conditions at the facilities housing the Named Plaintiffs. *See* Declaration of Dr. Ada Rivera ("Rivera Decl.") ¶¶ 8-17 (detailing measures to prevent the spread of COVID-

19, including suspending social visitation, assessing detainees for fever and respiratory illness, isolating detainees with COVID-19-compatible symptoms, and instructing detainees on hand washing and hygiene); *see generally* Declaration of Captain Jennifer Moon ("Moon Decl.") – Adelanto; Moon Decl. – Etowah; Moon Decl. – Stewart. Since the initial reports of COVID-19, ICE epidemiologists have been tracking the outbreak, regularly updating infection prevention and control protocols, and issuing guidance to IHSC staff for the screening and management of potential exposure among detainees. Declaration of Dr. Ada Rivera ("Rivera Decl.") ¶ 5. On a nationwide basis, ICE has maintained a pandemic workforce protection plan since February 2014. *Id.* ¶ 6. This plan provides specific guidance for biological threats such as COVID-19, and ICE instituted applicable parts of the plan in January 2020 upon the discovery of the potential threat of COVID-19. *Id.* IHSC has also been in contact with relevant offices within the Department of Homeland Security, and in January 2020, the DHS Workforce Safety and Health Division provided DHS components additional guidance to address assumed risks and interim workplace controls, including the use of N95 masks, available respirators, and additional personal protective equipment. *Id.* ¶ 7. As a precautionary measure, ICE has temporarily suspended social visitation in all detention facilities. *Id.* ¶ 8. In testing for COVID-19, IHSC is also following guidance issued by the Centers for Disease Control and Prevention ("CDC") to safeguard those in its custody and care. *Id.* ¶ 9; *see also ICE Guidance on COVID-19*. IHSC has shared its guidance and resources with medical leadership at all contract facilities and has issued recommendations to the field units at detention centers, which it updates and shares on a real-time basis. Rivera Decl. ¶¶ 10-11.

During intake medical screenings, routine comprehensive health assessments, or screenings occasioned by detainee complaints, detainees are assessed for fever and respiratory illness, are asked to confirm if they have had close contact with a person with confirmed COVID-19 in the past 14 days, and are asked whether they have traveled from or through areas with sustained community transmission in the past two weeks. *Id.* ¶ 12. The detainee's responses and the results of these assessments dictate whether to monitor

or isolate the detainee. *Id.* ¶ 13. Those detainees that present symptoms compatible with COVID-19 are placed in isolation, where they are tested. *Id.* If testing is positive, they will remain isolated and treated. *Id*. In case of any clinical decline, detainees will be referred to a local hospital. *Id.*

In cases of known exposure to a person with confirmed COVID-19, asymptomatic detainees are placed in cohorts with restricted movement for the duration of the most recent incubation period (14 days after most recent exposure to an ill detainee) and are monitored daily for fever and symptoms of respiratory illness. *Id.* ¶ 14. Those that show onset of fever and/or respiratory illness are referred to a medical provider for evaluation. *Id*. Cohorting is discontinued when the 14-day incubation period completes with no new cases. *Id.* In the case of exposure to a person with fever or symptoms being evaluated or under investigation for COVID-19 but not confirmed, the process is the same except that cohorting is discontinued if the index patient receives an alternate diagnosis excluding COVID-19. *Id.* ¶ 15. Field units have also been instructed to educate detainees to include the importance of hand washing and hand hygiene, covering coughs with the elbow instead of with hands, and requesting sick call if they feel ill. *Id.*

While ICE has taken a nationwide approach based on CDC recommendations, the type of constitutional claims that Plaintiffs bring here, challenging the provision of medical care, are dependent on how each facility implements medical care policies and the experiences of the individuals at each facility, which are run by various entities and governed by different agreement. For example, at Etowah, attorney visits have been limited to approval only on a case-by-case basis in an effort to reduce detainee exposure to COVID-19, while the Adelanto facility changed attorney visits to a non-contact setting. *See* Declaration of Captain Jennifer Moon – Adelanto ICE Processing Center ("Moon Decl. – Adelanto") ¶ 18; Declaration of Captain Jennifer Moon – Etowah County Detention Center ("Moon Decl. – Etowah") ¶ 19. Defendants contend that both Defendants' system-wide policies and the facility-level implementation of those policies are plainly sufficient,

3

that Plaintiffs' conditions-of-confinement claims lack merit – and that a global assessment of these policies and their implementation is not appropriate for class resolution.

## II.     The Named Plaintiffs

Plaintiffs' proposed class is represented by only five Named Plaintiffs at three facilities: Faour Abdallah Fraihat ("Fraihat"), Jimmy Sudney ("Sudney"), and Martin Munoz ("Munoz") are detained at the Adelanto ICE Processing Center ("Adelanto") in Adelanto, California[1]; Aristoteles Sanchez Martinez ("Martinez") is detained at the Stewart Detention Center ("Stewart") in Lumpkin, GA; and Alex Hernandez ("Hernandez") is detained at the Etowah County Detention Center ("Etowah") in Gadsden, Alabama. The Named Plaintiffs are middle-aged individuals and have various pre-existing medical conditions that they argue render them at higher risk of serious illness or death if they contract COVID-19. *See* Pls.' Class Certification Mot., ECF No. 83-7, Declaration of Alex Hernandez ("Hernandez Decl."); ECF No. 83-8, Declaration of Aristoteles Sanchez Martinez ("Martinez Decl."); ECF No. 83-9, Declaration of Faour Abdallah Fraihat ("Fraihat Decl."); ECF No. 83-10, Declaration of Jimmy Sudney ("Sudney Decl."); ECF No. 83-11, Declaration of Martin Munoz ("Munoz Decl."); *see also* Pls. Motion for Prelim. Inj. ("PI Motion"), ECF No. 81-11, Declaration of Homer Venters ("Venters Decl.") ¶ 21. Plaintiffs contend that ICE's COVID-19 precautionary measures fail to identify and provide increased protection for detainees with certain risk factors that render them more susceptible to serious illness or death due to COVID-19, and also fail to address shortages of medical and sanitary supplies, staffing shortages, and education of detained people and staff. *See generally* Hernandez Decl.; Martinez Decl.; Fraihat Decl.; Sudney Decl.; Munoz Decl. Plaintiffs also argue that their evidence demonstrates that ICE's detention facilities

---

[1]Mr. Fraihat was ordered released from detention on March 30, 2020, after the filing of the concurrently pending PI Motion, when the District Court granted his application for a temporary restraining order in a separate habeas corpus proceeding. *See Fraihat v. Wolf*, EDCV 20-00590 TJH (KSx) (C.D. Cal. Mar. 30, 2020). Mr. Munoz was ordered released from detention on April 2, 2020, after the filing of the instant PI Motion, when the District Court granted his application for a temporary restraining order in a separate habeas corpus proceeding. *Munoz v. Wolf*, No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020).

are not following ICE's COVID-19 guidance and that ICE's purportedly inadequate healthcare system exacerbates the risk posed by COVID-19. *Id.*

**A. Faour Abdullah Fraihat**

Mr. Fraihat is 58-year-old a citizen of Jordan with a claimed history of asthma and heart conditions. *See* Declaration of Edgar Duran ("Duran Decl.") ¶ 4; Fraihat Decl. ¶ 4. He has been in detention since December 19, 2016. Duran Decl. ¶ 10. In 1989, he was charged with lewd and lascivious acts with a child under 14, but convicted of simple battery and sentenced to 20 days in jail. *Id.* ¶ 5. Between 1994 and 1997, Mr. Fraihat served time in jail and prison for other criminal offenses. *Id.* On or about December 6, 1999, he was granted withholding of removal from Jordan. *Id.* ¶ 6.

In 2001, Mr. Fraihat was convicted under California Health and Safety Code ("CHSC") § 11379.6(a) for manufacturing methamphetamine, § 11366 for maintaining a place for selling or using controlled substances, and § 11378 for possession for sale of methamphetamine. *Id.* ¶ 7. For these offenses, Mr. Fraihat was sentenced to six years and eight months in prison. *Id.* In February 2012, Mr. Fraihat's removal proceedings were reopened. *Id.* ¶ 8. On April 16, 2013, he was convicted in violation of CHSC § 11379 for offering to transport a controlled substance for sale and sentenced to two years in prison. *Id.* ¶ 9. On or about December 19, 2016, ICE apprehended Mr. Fraihat and detained him at Adelanto. *Id.* ¶ 10. On October 30, 2017, an immigration judge ordered Mr. Fraihat removed to Jordan, and he appealed this decision to the Board of Immigration Appeals ("BIA"). *Id.* ¶ 12. On April 18, 2018, the BIA dismissed the appeal. Mr. Fraihat has filed four Petitions for Review ("PFR") with the Ninth Circuit. *Id.* ¶¶ 14-15. Three were dismissed and one remains pending, and a temporary stay remains in effect. *Id.* ¶ 15.

During the pendency of the instant litigation, Mr. Fraihat filed an individual habeas corpus petition. On March 30, 2020, after filing a temporary restraining order in the habeas proceedings requesting immediate release due to the risk of serious illness posed by COVID-19, Mr. Fraihat was released from detention. *See Fraihat v. Wolf*, EDCV 20-00590 TJH (KSx) (C.D. Cal. Mar. 30, 2020).

**B. Alex Hernandez**

Mr. Hernandez is a 49-year-old citizen of Honduras with claimed hypertension. *See* Declaration of Bryan S. Pitman ("Pitman Decl.") ¶¶ 6-12; Hernandez Decl. ¶ 2. Between March 16, 1989 and October 28, 1997, Mr. Hernandez was convicted, in separate proceedings, of Burglary, Vehicle Theft, Possession of a Controlled Substance, Robbery in the Second Degree, Receiving Stolen Property, Robbery in the Second Degree, and Possession of a Firearm by a Felon twice. Pitman Decl. ¶¶ 6-12.

On September 29, 2016, Mr. Hernandez was processed as an Administrative Removal under Section 238(b) of the Immigration and Nationality Act for having committed an aggravated felony under Section 237(a)(2)(A)(iii). *Id.* ¶ 13. He is subject to mandatory detention. *Id.* ¶ 14. On June 19, 2017, an immigration judge granted Mr. Hernandez relief from removal and the Department of Homeland Security ("DHS") appealed. *Id.* ¶¶ 15-16. On November 24, 2017, the BIA sustained the appeal of DHS and ordered Mr. Hernandez removed to Honduras. *Id.* ¶ 17.

On December 14, 2017, Mr. Hernandez filed a PFR with the Ninth Circuit Court of Appeals, resulting in a stay of removal. *Id.* ¶ 18. This case is currently pending. *Id.* He has filed two Petitions for Writ of Habeas Corpus. *Id.* ¶¶ 20-21. One was dismissed and one is still pending. *Id.*

**C. Aristoteles Sanchez Martinez**

Mr. Martinez is a 47-year-old citizen of Venezuela with claimed Type 2 diabetes and hypertension. Declaration of Sebastian Mason ("Mason Decl.") ¶ 3; Martinez Decl. ¶ 2. According to his declaration, he was detained at the Houston Contract Detention Facility in Houston, Texas until on or around March 23, 2020, when he was transferred to Stewart. *Id.* ¶ 1. He is currently detained at Stewart under 8 U.S.C. § 1231(a), because he has been issued a final removal order. Mason Decl. ¶ 3. On June 3, 2019, an immigration judge denied his applications for relief and he appealed. *Id.* ¶ 4. On November 21, 2019, the BIA dismissed the appeal and affirmed the decision of the immigration judge. *Id.* ¶ 5.

**D. Jimmy Sudney**

Mr. Sudney is a 29-year-old citizen of Haiti with claimed hypertension. Declaration of Michael Jimeno ("Jimeno Decl.") ¶ 3; Sudney Decl. ¶ 4. He is currently detained at Adelanto. Between September 18, 2013 and February 18, 2015, Mr. Sudney was convicted of driving under the influence of alcohol and two counts of aggravated assault. Jimeno Decl. ¶¶ 4-5. On December 7, 2016, he was taken into ICE custody under mandatory detention and charged as removable. *Id*. ¶ 6. On June 26, 2017, an immigration judge concluded that he was both a danger to the community based on his crimes and a flight risk. *Id*. ¶ 8.

On November 15, 2017, an immigration judge denied Mr. Sudney's relief applications and ordered him removed to Haiti. *Id*. ¶ 10. He filed a petition for review with the Ninth Circuit Court of Appeals and it was dismissed on January 14, 2020. *Id*. ¶ 16.

**E. Martin Munoz**

Mr. Munoz is a 60-year-old native and citizen of Mexico with claimed Type 2 diabetes, high cholesterol, high blood pressure, depression and anxiety. Declaration of Gil O. Montes ("Montes Decl.") ¶ 4; Munoz Decl. ¶ 2. He became a lawful permanent resident on September 15, 1989. Montes Decl. ¶ 4. He has been detained at Adelanto since July 17, 2017. *Id*. ¶ 12. During his time as a lawful permanent resident in the United States, Mr. Munoz was convicted of several criminal offenses, including more than four convictions for driving under the influence and driving with suspended license in violation of California law. *Id*. ¶¶ 5-11. Most recently, on September 27, 2016, he was convicted of: (1) driving under the influence of alcohol with a prior DUI; (2) felony assault with a deadly weapon; (3) felony hit and run – death or injury; and (4) driving under the influence causing injury. *Id*. ¶ 11. Mr. Munoz was sentenced to three years in state prison for these offenses. *Id*. On July 17, 2017, he was taken into ICE custody and placed in removal proceedings on the same date. *Id*. ¶ 12. On August 30, 2018, an immigration judge ordered Mr. Munoz removed, and he appealed that decision to the BIA, which dismissed his appeal. *Id*. ¶ 15. On May 13, 2019, Mr. Munoz filed a PFR and motion for stay of removal with the Ninth

7

Circuit. *Id*. ¶ 18. His removal is stayed pending further order of the Ninth Circuit. *See Munoz v. Barr*, No. 19-71164 (9th Cir.).

During the course of the instant litigation, Mr. Munoz filed an individual habeas corpus petition. On April 2, 2020, after filing a temporary restraining order in the habeas proceedings requesting immediate release due to the risk of serious illness posed by COVID-19, Mr. Munoz was released from detention. *Munoz v. Wolf*, No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020).

## SUMMARY OF THE ARGUMENT

As an initial matter, the Court should deny Plaintiffs' motion for class certification because all of the Named Plaintiff's injuries are speculative and so do not even rise to the level that would give jurisdiction over those claims at all. Two Named Plaintiff have already been released from detention and the rest are at facilities where no individual has tested positive for the COVID-19 virus. Additionally, the facilities where Named Plaintiffs are housed are taking clear steps in consideration of CDC guidance and to prevent COVID-19 infections.

Even if the Court believes that it would have jurisdiction over Plaintiffs' claims, it should deny the motion for class certification where Plaintiffs base their request on only five individuals at three facilities *and* fail to meet the requirements of Fed. R. Civ. P. 23(a) or (b)(2). Plaintiffs rely on an overbroad definition of their putative subclasses and fail to meet the numerosity, commonality, typicality, or adequacy of representation requirements of Fed. R. Civ. P. 23(a) or (b)(2). Lastly, Plaintiffs' request is fundamentally incompatible with class-wide relief because it calls for a blanket and unsupported conclusion that ICE is deliberately indifferent at facilities across the country. For these reasons, the Court should deny class certification. In the alternative, the Court should narrow and redefine the proposed subclasses to mitigate several defects.

**ARGUMENT**

**I.      Standards for Class Certification**

Courts should take great care in determining whether to certify a class, especially a nationwide class against the federal government. The Supreme Court has cautioned that "a federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano v. Yamasaki*, 442 U.S. 682, 702-03 (1979). The Court has further acknowledged "the force of the [government's] contentions that nationwide class actions may have a detrimental effect by foreclosing adjudication by a number of different courts and judges, and of increasing, in certain cases, the pressures on this Court's docket." *Id*. at 702; *see also United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari."). Other class challenges to immigration policies in this Court have decidedly not sought the certification of a nationwide class. *See, e.g.*, *Franco-Gonzales v. Napolitano*, No. CV 10-02211 DMG DTBX, 2011 WL 11705815, at *1 (C.D. Cal. Nov. 21, 2011); *Rodriguez v. Hayes*, 591 F.3d 1105, 1111 (9th Cir. 2010).

A party seeking certification of a proposed class must demonstrate the existence of the four required elements set forth in Rule 23(a) of the Federal Rules of Civil Procedure. Specifically, the moving party must show that:

(1) the class is so numerous that joinder of all members is impracticable ("numerosity");

(2) there are questions of law or fact common to the class ("commonality");

(3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality"); and

(4) the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation").

*See* Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) ("Class certification is governed by Federal Rule of Civil Procedure 23."). In addition to

9

meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *Dukes*, 564 U.S. at 345; *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Plaintiffs seek certification under Rule 23(b)(2). ECF No. 83-1 at 14-16. Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds that generally apply to the class." Fed. R. Civ. P. 23(b)(2). The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted).

The party seeking class certification bears the burden of demonstrating that it has met all four Rule 23(a) prerequisites and that the class lawsuit falls within one of the three types of actions permitted under Rule 23(b). *Zinser*, 253 F.3d at 1186. Moreover, the failure to meet "*any one* of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975) (emphasis added). The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982); *Zinser*, 253 F.3d at 350 (Rule 23 "does not set forth a mere pleading standard."). A court should only certify a class "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Zinser*, 253 F.3d at 350-51 (internal quotation omitted).

A district court, therefore, must conduct a rigorous analysis to determine that an action meets all the requirements of Rule 23. *Gen. Tel. Co.*, 457 U.S. at 161. Even if a court finds that an action meets all of Rule 23's requirements, that court retains "broad discretion" to determine whether it *should* certify the proposed class. *Zinser*, 253 F.3d at 1186. Toward that end, a court may "probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co.*, 457 U.S. at 160. This is because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal quotation omitted). Nonetheless, the ultimate decision regarding class certification must necessarily "involve[]

a significant element of discretion." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

**II.     This Court should deny the motion for class certification because Plaintiffs fail to satisfy the requirements of Federal Rule of Civil Procedure 23(a) or (b)(2).**

**A. The Proposed Class Lacks Numerosity.**

To satisfy the numerosity requirement, Plaintiffs must show "that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). Although "the number of class members is the most important factor, the ultimate question concerns the practicability of their joinder." S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary at 540 (2017). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).

Here, Plaintiffs fail to show that there are least 40 individuals with their defined high risk factors. As Plaintiffs admit, "[t]he exact number of people in ICE detention with disabilities or other Risk Factors is unknown." Pls.' Class Certification Mot. 6. They go on to blame Defendants for the fact that this number is unknown; however, Plaintiffs have not shown what statute, regulation, or rule requires Defendants to track the statistics concerning detainees with disabilities and their arbitrarily defined risk factors. To the extent that Plaintiffs contend that the declarations they submitted from lay witnesses support their numerosity claim, these declarations are largely, if not entirely, inadmissible or entitled to no weight because the declarants lack personal knowledge, fail to lay a proper foundation for an assertion, or provide statements based on hearsay.[2] *See* Fed. R. Civ. P. 56 (c)(4); Fed. R. Evid. 801–802; Fed. R. Evid. 601–602; Fed. R. Evid. 701; *see also Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 615 (C.D. Cal. 2005) (sustaining hearsay objection to declaration statement); *Bank Melli v. Pahlavi*, 58 F. 3d 1406, 1412 (9th Cir.

---

[2] *See* Defendants' Evidentiary Objections to the Declarations of Mikhail Solomonov, Linda Corchado, Laura G. Rivera, Keren Zwick, Elissa Steglich, Anne Rios, and Andrea Saenz filed concurrently with the instant Memorandum for specific statements and bases for objection.

11

1995) (a declaration not made on personal knowledge is entitled to no weight); *Self-Insurance Inst. Of America, Inc. v. Software and Information Ind. Ass'n*, 208 F. Supp. 2d 1058, 1063–64 (C.D. Cal. 2000) (affirming defendants' objections over (1) a declarant's statements about third persons being "confused" for lack of personal knowledge and (2) statements about "calls to myself and to my staff" from clients because the statements in these calls are inadmissible hearsay); *Wells v. Jeffery*, No. 03-cv-228, 2006 WL 696057, at \*3 n.7 (D.D.C. Mar. 20, 2006) ("The affidavit or declaration cannot contain hearsay evidence, as such evidence would not be admissible at trial."). Thus, the Court should accord little, if any, weight to Plaintiffs' declarations.

Moreover, even if the Court denied Defendants' pending Motion to Sever and Dismiss, alternatively Transfer Actions, and to Strike portions of Plaintiffs' Complaint based on the different legal authorities and means by which facilities are managed nationwide, and even if those separate categories of facilities and individuals could be conducive to consideration as a subclass, Plaintiffs have failed to establish numerosity for those potential subclasses, as is their burden. *Garcia v. Wal-Mart Stores, Inc.*, No. 16-CV-01645, 2018 WL 4959824, at \*1 (C.D. Cal. Sept. 28, 2018) ("To certify a class and its subclasses, [Plaintiff] bears the burden of establishing that the putative class action and the proposed subclasses satisfy all four threshold requirements of Fed. R. Civ. P. 23(a) . . . [including] Numerosity . . . ."); *See also Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982).

In terms of the impracticability of joinder, it is significant that two Named Plaintiffs in this case have already sought relief, in the form of release from detention, outside of the confines of this lawsuit and have successfully obtained such relief. *See Fraihat v. Wolf*, EDCV 20-00590 TJH (KSx) (C.D. Cal. Mar. 30, 2020); *Munoz v. Wolf*, No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020). Additionally, scores if not hundreds of other ICE detainees have sought release across the country. *See*, *e.g.*, *Dawson v. Asher*, No. C20-0409JLR-MAT (W. D. Wash. Mar. 19, 2020); *Francisco M. v. Decker*, No. 20-2176 (CCC) (D.N.J. Mar. 25, 2020); *Patel v. Barr*, No. C20-488-RSM-BAT (W.D. Wash. April 2,

2020). These facts cut against class certification. That numerous detainees nationwide are having their cases for release heard on an individualized basis, as the circumstances necessarily require, with some detainees obtaining release (although Defendants argue that such remedy is not appropriate in a conditions of confinement case) and others not, demonstrates that joinder would be impractical and certification of the putative subclasses is inappropriate. Finally, Plaintiffs fail to demonstrate which, and how many, high risk individuals have sought and been denied COVID-19 related accommodations under the Rehabilitation Act.

Accordingly, Plaintiffs have failed to satisfy the element of numerosity required for class certification.

**B. The Proposed Class Lacks Commonality.**

To obtain class certification, Petitioners must demonstrate that the proposed class is entitled to common relief as to each count on which certification is sought. *See* Fed. R. Civ. P. 23(a)(2), (b)(2). The Supreme Court has repeatedly held that "what matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)).

**i. Rule 23(b)(2)**

The commonality requirement is especially rigorous when applied to a class that seeks certification under Rule 23(b)(2). The Supreme Court recently noted in reviewing a Ninth Circuit immigration detention case, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (quoting *Dukes*, 564 U.S. at 360). The Supreme Court also questioned whether a Rule 23(b)(2) class action litigated on common facts is an appropriate way to resolve Due Process Clause claims. *Id.*

For certification under Rule 23(b)(2), Petitioners must show that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class

members or as to none of them." *Dukes*, 564 U.S. at 360. Accordingly, Petitioners bear the burden to demonstrate that the factual differences among the proposed class members are unlikely to affect their entitlement to relief. *See id.* If the factual differences have the likelihood of changing the outcome of the legal issue, then class certification is not appropriate. *Cf. Califano*, 442 U.S. at 701; *Dukes*, 564 U.S. at 348, 358. Class certification under Rule 23(a) and (b)(2), therefore, requires two steps: (1) the identification of a common legal problem, and (2) a showing that the common legal issue may be resolved as to all class members simply by virtue of their membership in the class. *Dukes*, 564 U.S. at 350 (concluding that the common legal problem "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke.*" *Id.* (emphasis added)).

Plaintiffs' proposed classes flunk the commonality requirement. Resolving whether each petitioner is high risk and receiving appropriate protection specific to their medical concerns involves "wide factual variation" and "[d]issimilarities within the proposed class" defeat commonality. *See Dukes*, 564 U.S. at 350. With such varied facts at issue, it is not sufficient for Petitioners to allege merely that all of the proposed class members have raised some "common questions." *Dukes*, 564 U.S. at 350 ("[The commonality] language is easy to misread, since any competently crafted class complaint literally raises common 'questions.'"). Thus, although "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to establish commonality]," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1996), commonality cannot be established where there is wide factual variation requiring individual adjudications of each class member's claims, *see Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 663-64 (N.D. Cal. 1976). Indeed, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (quotation omitted).

Here, Plaintiffs surely cannot claim to present common questions for a nationwide class based on five Named Plaintiffs in three facilities. Furthermore, Plaintiffs cannot show

14

that the proposed five Named Plaintiffs represent class members with a common contention, the resolution of which would, in "one stroke," resolve an issue "central to the validity of each" of their claims. *Id.* The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted).

Importantly, the Named Plaintiffs suffer from distinctly different medical conditions and are detained in three different facilities the country. *See generally* Hernandez Decl.; Martinez Decl.; Fraihat Decl.; Sudney Decl.; Munoz Decl. Their cases present different factual circumstances with respect to flight risk, danger to the community, and the likelihood of removal in the foreseeable future. *See generally* Duran Decl.; Pitman Decl.; Jimeno Decl.; Montes Decl.; Mason Decl. Named Plaintiffs' declarations also demonstrate how each detention facility must be analyzed separately to determine whether that particular detention facility has taken appropriate safety precautions in response to the COVID-19 virus. *See generally* Hernandez Decl.; Martinez Decl.; Fraihat Decl.; Sudney Decl.; Munoz Decl. For example, Named Plaintiff Hernandez at Etowah describes how individuals were promptly seen by medical staff and appropriately quarantined to their cell. Hernandez Decl. ¶ 6. Named Plaintiff Martinez documents that while at the Houston Detention Center, hand sanitizer was placed outside his cell and flyers about the COVID-19 virus were posted in English and Spanish. Martinez Decl. ¶¶ 7, 9. Named Plaintiffs Fraihat, Sudney, and Munoz, all detained at Adelanto, describe how newly detained individuals arrested at the border are now kept in quarantine for 14 days, older detained individuals are being transferred to a different unit, cleaning solutions are more potent, some guards are wearing masks and gloves, and flyers about handwashing and COVID-19 are posted inside the facility. Fraihat Decl. ¶¶ 8, 9; Sudney Decl. ¶ 10; Munoz Decl. ¶¶ 3, 6. Clearly, Defendants are considering CDC Guidance and implementing precautionary measures at each detention facility. *See* Rivera Decl. ¶¶ 5-17; *see also ICE Guidance on COVID-19*, U.S. Immigration and Customs Enforcement,

https://www.ice.gov/coronavirus, (last visited Apr. 3, 2020); Ex. 1, *Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1*, U.S. Immigration and Customs Enforcement (March 27, 2020) (hereinafter "COVID-19 Action Plan, Revision 1").

Additionally, the Court's analysis would be dependent on how each facility implements medical care policies and the experiences of the individuals at each facility, which are run by various entities and governed by different contracts. For example, at Etowah, attorney visits have been limited to approval only on a case-by-case basis in an effort to reduce detainee exposure to COVID-19, while the Adelanto facility changed attorney visits to a non-contact setting. *See* Declaration of Captain Jennifer Moon – Adelanto ICE Processing Center ("Moon Decl. – Adelanto") ¶ 18; Declaration of Captain Jennifer Moon – Etowah County Detention Center ("Moon Decl. – Etowah") ¶ 19.

If the Court intends to consider common relief for the class members, it will not be able to provide that relief—namely instituting nationwide preventative measures for protecting high-risk individuals from the COVID-19 virus or releasing all high-risk individuals from detention—without considering the totality of each individual's circumstances separately. Not only do each detainee's medical conditions differ, but also their experiences in detention facilities across the country differ, and detainees are detained under different statutory authority. *See, e.g.*, 8 U.S.C. § 1225(b) (requiring mandatory detention for aliens pending final determination in credible fear proceedings); § 1226(c) (requiring mandatory detention for aliens who have committed certain criminal offenses); § 1231(a)(2) (requiring mandatory detention during the 90-day removal period after a final order of removal is entered). Here, Mr. Munoz and Mr. Hernandez are mandatorily detained under § 1226(c) due to their respective criminal histories, while Mr. Sudney is detained under § 1226(a). Montes Decl. ¶ 12; Pitman Decl. ¶ 14; Jimeno Decl. ¶ 6. Even where a detainee is eligible for release, ICE must assess whether the detainee is a danger to the community or a flight risk. *See* 8 C.F.R. § 236.1(c)(8). In addition, 8 U.S.C. § 1182(d)(5) grants the Attorney General discretion to "parole [aliens] into the United

16

States temporarily under such conditions as he may prescribe." Plaintiffs cannot show that one common remedy is appropriate for everyone in the subclass, especially where release requires an assessment of dangerousness and flight risk within the impossible timeline of 24 hours proposed by Plaintiffs. *See generally* Duran Decl.; Pitman Decl.; Jimeno Decl.; Montes Decl.; Mason Decl.

Because Plaintiffs cannot meet their burden to show they have met the commonality requirement of Fed. R. Civ. P. 23(a) or (b), the Court must deny their motion to certify a class. *See Preap v. Johnson*, 303 F.R.D. 566, 584 (N.D. Cal. 2014), *aff'd*, 831 F.3d 1193 (9th Cir. 2016) (citing *Dukes*, 564 U.S. at 350*; Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

### C. The Proposed Class Lacks Typicality.

The proposed class fails to meet the typicality requirement for reasons similar to those that doom commonality. The commonality and typicality requirements of Rule 23(a) are interrelated and, in some instances, merge. *Dukes,* 564 U.S. at 350. "Both [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*. Because Petitioners' circumstances are too varied to satisfy the commonality requirement, Petitioners will be similarly unable to satisfy Rule 23(a)(3). *See id.* (where "individualized assessments are necessary" the class fails on typicality under Rule 23(a)(3)).

To establish typicality, Plaintiffs must show "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The typicality requirement is not met if the proposed class representatives are subject to unique defenses. *Id.*

17

Here, the Court cannot find typicality. The unique defenses required to respond to individual plaintiff's various allegations make class certification improper. The individual plaintiffs in both subclasses will assert different injuries and request different accommodations according to their individual medical conditions and disabilities. Furthermore, Defendants' specific practices and procedures may vary by detention facility depending upon whether the facility is staffed by ICE Health Service Corps or whether it is a contract facility operating under an intergovernmental service agreement. Such individual assessments are best presented for judicial review by individual actions challenging conditions of confinement. It is significant that two Named Plaintiffs in this case have already sought relief in the form of release from detention outside of the confines of this lawsuit and have successfully obtained such relief. *See Fraihat v. Wolf*, EDCV 20-00590 TJH (KSx) (C.D. Cal. Mar. 30, 2020); *Munoz v. Wolf*, No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020). These facts cut against class certification. The fact that numerous detainees nationwide, who are similarly situated to the putative subclasses here, are having their cases for release on the basis of due process heard on an individualized basis as the circumstances necessarily require, with some detainees meriting release and others not, demonstrates that certification of the putative subclasses is inappropriate. *See Fraihat*, EDCV 20-00590 TJH (KSx) (C.D. Cal. Mar. 30, 2020); *Munoz*, No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020) – some wins, some losses.

The many filed individual habeas petitions around the country reflect the wide array of factual circumstances and claims, and different results, supporting the conclusion that sweeping class-wide treatment is improper. Moreover, each of the requests for individual temporary restraining orders in habeas proceedings presents the individual detainee's allegations and requests for relief that do not necessarily coincide with the various allegations of the putative subclasses here. The Court should not certify a class where individual habeas petitions provide a better avenue for individualized analysis and relief.

Notably, certifying Plaintiffs' subclasses would improperly interfere with the litigation of similar issues in other judicial circuits. *See Califano*, 442 U.S. at 702-03. The

18

law governing deliberate indifference and constitutionally adequate medical care claims as well as the Rehabilitation Act vary by jurisdiction and Defendants' Motion to Sever and Dismiss, alternatively Transfer Actions, and to Strike portions of Plaintiffs' Complaint remains pending before this Court. *See* ECF No. 54. Depending upon the judicial circuit in which a plaintiff is detained, a different Due Process and deliberate indifference standard for detainee medical care claims will apply. *See Waddell v. Lloyd*, Case No. 16-14078, 2019 WL 1354253, *4 (E.D. Mich. Mar. 26, 2019) (noting the circuit split concerning the deliberate indifference standard applicable to medical care claims by pretrial detainees and identifying the Fifth and Eleventh Circuits as applying a different standard from the Ninth Circuit); *see also Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (adopting an "objective deliberate indifference standard"); *but cf. Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) ("To state a denial of medical care claim, a plaintiff must satisfy both an objective and a subjective component." (internal quotation marks omitted)). Further, adjudicating each claim would require the presentation of different evidence from multiple judicial circuits. *See* Fed. R. Civ. P. 21; *see also H.M. v. United States*, No. 17-00786-SJO, 2017 WL 10562558, *15 (C.D. Cal. Aug. 21, 2017) (severing plaintiffs' mandamus claims in the interests of justice and judicial economy and finding that each case involved distinct factual and legal issues) (citing *Trazo v. Nestle USA, Inc.*, No. 5:12-CV-02272-PSG, 2013 WL 12214042, at *2 (N.D. Cal. Dec. 4, 2013)). Because Defendants' Motion seeks to resolve many important issues in this case, including severing and dismissing several of Plaintiffs' claims due to differences in the circuit law, Defendants maintain that Plaintiffs' Motion for Class Certification is premature and any adjudication would improperly interfere with the litigation of similar issues across the country.

Finally, Plaintiffs seek to define a class based on detainees over the age of 50 years old; however, this age bears no relevance to either Plaintiffs' definition of risk factors that render a detainee more susceptible to illness as a result of COVID-19 or to the risk factors identified in the CDC guidelines. *See* Pls.' Class Certification Mot. at 2. Indeed, Plaintiffs' proposed class is broader than any class that could be defined under the CDC guidelines.

*Id.* In Plaintiffs' first subclass, the only characteristics that could designate a detainee as high risk are related to the individualized nature of their claims and different answers to those claims/questions. The Court should not certify a class where the class is defined by individual claims that must be analyzed independently. *See Dukes,* 564 U.S. at 350

Accordingly, where the five Named Plaintiffs' claims based on three immigration detention facilities are not typical, the putative class members cannot allege the same injuries by the same course of conduct, and the defenses to the various potential sources of the putative class's injuries are unique, the Court should find Plaintiffs' proposed class lacks typicality and deny Plaintiffs' motion for class certification.

**D. Plaintiffs are not Adequate Representatives.**

The named Plaintiffs are not adequate subclass representatives because their interests may conflict with the interests of other putative subclass members. The adequacy requirement serves to protect the due process rights of absent class members who will be bound by the judgment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). A determination of legal adequacy is based on two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* Indeed, "uncovering conflicts of interest between the named parties and the class they seek to represent is a critical purpose of the adequacy inquiry." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009). This notion is compounded by the nature of a class certified pursuant to Rule 23(b)(2), the members of which do not have a right to opt out of their class. *See Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003) (citing *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (per curiam)).

First, because the named Plaintiffs are detained across the country at three different detention facilities, it is impossible for them to adequately represent people with wholly different medical concerns or high-risk characteristics in separate parts of the country, at many different detention facilities. Second, none of the class representatives claim to be women, pregnant, have cancer, liver disease, kidney disease, or HIV/AIDS, which are

20

some of the risk factors identified by Plaintiffs and the CDC.[3] Even under Plaintiffs' overly broad high-risk categories, which are significantly more far-reaching than the CDC Guidelines, the Named Plaintiffs fail to represent the majority of the high-risk categories.[4] Lastly, two of the Named Plaintiffs, Fraihat and Munoz, are plainly not adequate class representatives for another reason:  they have been released. Neither will prosecute the action vigorously on behalf of the class because both have been released. *See Fraihat*, EDCV 20-00590 TJH (KSx) (C.D. Cal. Mar. 30, 2020); *Munoz*, No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020).

Additionally, the fact that the Named Plaintiffs are detained under different detention authorities underscores why they are inadequate class representatives and have conflicting interests. Even if a detainee is eligible for release as a result of their detention authority, release is dependent upon whether the detainee is a danger to the community or a flight risk. *See* 8 C.F.R. § 236.1(c)(8). Surely individuals detained under § 1226(c), like Named Plaintiffs Martinez and Munoz, will have different interests than subclass individuals who may not be mandatorily detained or in post-order detention. Indeed, to the extent that

---

[3] *People who are at higher risk for severe illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html (last visited Apr. 3, 2020).

[4] The CDC Guidelines define high risk as: "people who are age 65 or older; people who are pregnant; and people who have underlying chronic conditions," including "cardiovascular disease (congestive heart failure, history of myocardial infarction, history of cardiac surgery); high blood pressure; chronic respiratory disease (asthma, chronic obstructive pulmonary disease including chronic bronchitis or emphysema, or other pulmonary diseases); diabetes; cancer; liver disease; kidney disease; autoimmune diseases (psoriasis, rheumatoid arthritis, systemic lupus erythematosus); severe psychiatric illness; history of transplantation or HIV/AIDS" *People who are at higher risk for severe illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html (last visited Apr. 3, 2020).

Plaintiffs seek release from custody, ICE procedures and the implementation of those procedures to exercise discretion to permit release for some detainees, but potentially not for others, renders those putative class members who can potentially obtain release adverse to those putative class members from whom release by ICE is not possible, or less likely. Moreover, all detainees may not want release for various reasons – including the availability of no-cost medical care at detention facilities – and some detainees may not want pursue release if they do not have a safe place to go if the court ordered their release.

**E.      If the Court certifies a class, it should revise the proposed class definition.**

The relief that Plaintiffs seek calls for revision of ICE's policies nationally. Therefore, if the Court requires revision, Plaintiffs should have the burden of demonstrating why a modification comports with Rule 23 and Defendants should have the opportunity to respond. *Penk*, 1984 WL 161492, at *1 ("[P]laintiffs bear the burden of showing that each subclass meets the Rule 23(a) requirements of numerosity, commonality, typicality, and adequate representation before the subclasses may be certified.").

Alternatively, the Court should amend and narrow the proposed class definition to mitigate several defects. First, Defendants request that the Court exclude from the definition any proposed class member who has filed an individual habeas or temporary restraining order based on high risk of contracting the COVID-19 virus because the court is already considering individual cases specific to that individual. *See, e.g.*, Order Granting in Part Pet'r's Am. Mot. to Certify Class, *Hamama v. Adducci*, No. 17-cv-11910 (E.D. Mich. Jan. 2, 2018), ECF No. 191 ("The definitions specifically exclude from the subclasses those who have filed individual habeas petitions."). Defendants propose adding the phrase "and who do not have a separate action in habeas or otherwise that seeks release from detention as a result of COVID-19"

Second, Defendants request that the Court exclude from the definition any proposed class member who has been detained under 8 U.S.C. § 1225(b), § 1226(c), § 1231(a)(2), or has had a bond hearing. Third, Defendants request that the Court limit the class to the detention facilities where the Named Plaintiffs are detained because the Named Plaintiffs

cannot adequately represent a class of individuals detained at other facilities, in other circuits, with other high risk characteristics.

## CONCLUSION

Plaintiffs have proffered a class that fails to meet any of the requirements of Rule 23(a) or Rule 23(b)(2). Plaintiffs cannot show that Defendants have failed or refused to act in a way that affects the class as a whole, or that a single injunction could benefit every member of the putative class. Plaintiffs' nationwide class necessarily requires the Court to analyze legal standards that vary across the judicial circuits. Furthermore, the Named Plaintiffs are situated dramatically differently – whether because they are in entirely different detention facilities, do not face the same prospect of imminent harm, or because they require an individualized analysis of their medical conditions or disabilities – from other members of the putative class that they cannot adequately represent the interests of those individuals. Moreover, Plaintiffs would require the Court to engage in an individualized inquiry into each claim to determine whether each class member is indeed at a higher risk for contracting the COVID-19 virus, has requested reasonable COVID-19-related accommodations, or has been denied reasonable safety precautions and/or the requested accommodations. Plaintiffs are therefore not entitled to proceed as a class, and the Court should deny their motion.

DATED: April 3, 2020            Respectfully Submitted,

                                JOSEPH H. HUNT
                                Assistant Attorney General

                                WILLIAM C. PEACHEY
                                Director

                                JEFFREY S. ROBINS
                                Deputy Director

                                */s/ Anna L. Dichter*
                                ANNA L. DICHTER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 353-2405
Fax: (202) 305-7000
Email: anna.l.dichter@usdoj.gov

*Counsel for Defendants*