JOSEPH H. HUNT
Assistant Attorney General
U.S. Department of Justice
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
JEFFREY S. ROBINS
Deputy Director
LINDSAY M. VICK (MA 685569)
ANNA L. DICHTER (NJ 304442019)
450 5th Street, N.W., Rm 5223
Washington, D.C. 20530
Telephone: (202) 532-4023
Facsimile: (202) 305-7000
lindsay.vick@usdoj.gov
anna.l.dichter@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., <br><br> *Defendants*. | **Case No. 5:19-CV-01546 JGB (SHKx)** <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** <br><br> **Before The Honorable Jesus G. Bernal** <br> **Hearing Date: April 13, 2020** <br> **Hearing Time: 9:00 a.m.** |

# **TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................5

    A.    ICE COVID-19 Guidance ........................................................5

    B.    Named Plaintiffs' Detention Authority and
        Immigration Proceedings .........................................................7

        1.    Faour Abdullah Fraihat ................................................8

        2.    Alex Hernandez...........................................................9

        3.    Aristoteles Sanchez Martinez ......................................10

        4.    Jimmy Sudney.............................................................10

        5.    Martin Munoz ..............................................................10

III.   ARGUMENT ..................................................................................11

    A.    Standard for Preliminary Injunction.....................................11

    B.    Plaintiffs Have Fallen Short of Proving Any Entitlement to Mandatory
        Preliminary Injunctive Relief ...............................................12

    C.    Plaintiffs Cannot Demonstrate a Likelihood of Success on the
        Merits.....................................................................................13

        1.    PI Based on New Factual Allegations Not in the Complaint is
            Improper..................................................................13

        2.    Plaintiffs Lack Article III Standing ...........................14

        3.    Plaintiffs Fail to Demonstrate that ICE's COVID-19 Guidance
            is Evidence of Objective Deliberate Indifference....................16

        4.    Plaintiffs Fail to Demonstrate that Defendants' COVID-19
            Response Results in Punitive Conditions of Confinement.......24

        5.    Plaintiffs Fail to Demonstrate that Defendants' COVID-19
            Protocols Violate the Rehabilitation Act. ................................26

        6.    Plaintiffs Fail to Demonstrate that Defendants' COVID-19
            Protocols Violate the Rehabilitation Act………………………28

    D.    Plaintiffs Cannot Show a Likelihood of Irreparable Harm.................29

i

E.      The Government's Interests Would Be Harmed, and the Public
        Interest Would Not Be Served By The Grant of Injunctive Relief.....30

F.      Plaintiffs' Request that the Court Appoint a Special Master is
        Premature..........................................................................................32

IV.  CONCLUSION ...........................................................................................33

# TABLE OF AUTHORITIES

## CASES

*Bank Melli v. Pahlavi*,
  58 F. 3d 1406 (9th Cir. 1995)............................................................22

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ...................................................... 16, 26, 27

*Blackie's House of Beef, Inc. v. Castillo*,
  659 F.2d 1211 (D.C. Cir. 1981) ..........................................30

*Bravo Castillo v. Barr*,
  --- F. Supp. 3d ---, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020)......................24

*Burlington N. v. Dep't of Revenue*,
  934 F.2d 1064 (9th Cir. 1991) ...................................... 32, 33

*Colvin v. Caruso*,
  605 F.3d 282 (6th Cir. 2010) ................................................13

*Coronel, et al. v. Decker, et al.*,
  No. 20-CV-2472 (AJN), 2020 WL 2020 WL 1487274 n.1 (S.D.N.Y. Mar. 27, 2020)...........27

*Crawford v. Bell*,
  599 F.2d 890 (9th Cir. 1979)............................................24

*Dahl v. HEM Pharms. Corp.*,
  7 F.3d 1399 (9th Cir. 1993)........................................ 12, 13

*Dawson v. Asher*,
  No. C20-0409 JLR-MAT, 2020 WL 1304557 (W.D. Wash).
  Mar. 19, 2020)............................................... 18, 28, 30

*De Beers Consol. Mines v. United States*,
  325 U.S. 212 (1945) ........................................................13

*Demore v. Kim*,
  538 U.S. 510 (2003) ..........................................................27

*Dep't of Homeland Sec. v. New York*,
  140 S. Ct. 599 (2020) ................................................ passim

*Estelle v. Gamble*,
  429 U.S. 97 (1976) ................................................... 17, 25

*Frost v. Agnos*,
  152 F.3d 1124 (9th Cir. 1998)........................................16

*Gibson v. Cty. of Washoe, Nev.*,
  290 F.3d 1175 (9th Cir. 2002)........................................16

*Gordon v. Cty. of Orange*,
  888 F.3d 1118 (9th Cir. 2018) ........................ 15, 16, 17, 19

iii

*Green v. Baca*,
226 F.R.D. 624 (C.D. Cal. 2005) ............................................................24

*Helling v. McKinney*,
509 U.S. 25 (1993) ..................................................................................17

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ...............................................................30

*Hoptowit v. Ray*,
682 F.2d 1237 (9th Cir. 1982) ........................................................ 25, 26

*Hutchinson v. United States*,
838 F.2d 390 (9th Cir. 1988) ..................................................................17

*Jackson v. Carey*,
353 F.3d 750 (9th Cir. 2003) .......................................................24, 25, 26

*Jackson v. McIntosh*,
90 F.3d 330 (9th Cir.) ..............................................................................17

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ..............................................................................27

*Jett v. Penner*,
439 F.3d 1091 (9th Cir. 2006) ...............................................................17

*Jones v. Blanas*,
393 F.3d 918 (9th Cir. 2004) ..................................................................26

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ...............................................................12

*Kingsley v. Hendrickson*,
135 S. Ct. 2466 (2015) ............................................................................26

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*,
478 U.S. 421 (1986) ................................................................................33

*Lopez v. Brewer*,
680 F.3d 1068 (9th Cir. 2012) ...............................................................11

*Los Angeles Times Communications LLC v. Dept. of the Army*,
442 F. Supp. 2d 880 (C.D. Cal. 2006) ....................................................21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .........................................................................14, 15

*Mark H. v. Hamamoto*,
620 F.3d 1090 (9th Cir. 2010) ...............................................................29

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ..................................................................12

*McGuckin v. Smith*,
974 F.2d 1050 (9th Cir. 1992) .........................................................17, 19

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................30

*Olmstead v. L.C. ex rel Zimring*,
  527 U.S. 581 (1999) ........................................................................29

*Pac. Radiation Oncology, LLC v. Queens Med. Ctr.*,
  810 F.3d 631 (9th Cir. 2015) .................................................. 13, 14

*Padilla v. ICE, et al.*,
  --- F.3d ---, 2020 WL 1482393 (9th Cir. Mar. 27, 2020) ...................12

*Park Village Apartment Tenants Association v. Foster*,
  636 F.3d 1150 (9th Cir. 2011) .......................................................29

*Sacal-Micha v. Longoria*,
  2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) ............................ 18, 30

*Sandin v. Conner*,
  515 U.S. 472 (1995) ........................................................................24

*Self-Insurance Inst. Of America, Inc. v. Software and Information Ind. Ass'n*,
  208 F. Supp. 2d 1058 (C.D. Cal. 2000) ..........................................22

*Spain v. Procunier*,
  600 F.2d 189 (9th Cir. 1979) .........................................................25

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................15

*Torres v. U.S. Dep't of Homeland Sec.*,
  411 F. Supp. 3d 1036 (C.D. Cal. 2019) ..........................................26

*Trop v. Dulles*,
  356 U.S. 86, (1958) ........................................................................25

*United States v. Martinez-Fuerte*,
  428 U.S. 543 (1976) ........................................................................30

*United States v. Suquamish Indian Tribe*,
  901 F.2d 772 (9th Cir. 1990) .........................................................33

*Wang v. Chinese Daily News, Inc.*,
  231 F.R.D. 602 (C.D. Cal. 2005) ...................................................22

*Wells v. Jeffery*,
  No. 03-cv-228, 2006 WL 696057 n.7 (D.D.C. Mar. 20, 2006) ...........23

*Wilson v. Seiter*,
  501 U.S. 294, (1991) ......................................................................25

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ................................................................ 11, 12, 30

*Wright v. Rushen*,
  642 F.2d 1129 (9th Cir. 1981) .................................................. 25, 26

v

*Youngberg v. Romeo,*
  457 U.S. 307 (1982) .................................................................... passim

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ...........................................................................27

**STATUTES**

8 U.S.C. § 1182(d)(5).............................................................................27

8 U.S.C. § 1225(b) ................................................................................27

8 U.S.C. 1231(a) ....................................................................................10

29 U.S.C. § 794(a) .................................................................................28

29 U.S.C. § 794(b)(2)(B)........................................................................28

**RULES**

Fed R. Civ.P. 53(a)(1)(C) ......................................................................32

Fed. R. Civ. P. 53(a)(3)..........................................................................32

Fed. R. Civ. P. 53(b)(1)..........................................................................32

Fed. R. Civ. P. 56 ..................................................................................22

Fed. R. Evid. 601–602 ...........................................................................22

Fed. R. Evid. 701 ...................................................................................22

Fed. R. Evid. 801–802 ...........................................................................22

**REGULATIONS**

8 C.F.R. § 236.1(c)(8) ..................................................................... 27, 32

**OTHER SOURCES**

ICE Guidance on COVID-19
  https://www.ice.gov/coronavirus, (last visited Apr. 3, 2020) ..................3

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-
higherrisk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavir
us%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html (last
visited Apr. 3, 2020) ..............................................................................19

Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in
Correctional and Detention Facilities
https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-
  detention.pdf, (last updated Mar. 23, 2020).................................................

vi

## I.    INTRODUCTION

"This is not normal." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). Justice Gorsuch made this statement in reference to the rampant uptick in universal injunctions, noting that they have little basis in "traditional equitable practice"; but, this statement also accurately describes the circumstances surrounding this litigation. *Id.* Here, Plaintiffs not only seek a nationwide, preliminary injunction, but they seek such an injunction amidst an unprecedented global pandemic, which governments all over the world are working tirelessly to address. Over the past week, hundreds of immigration detainees have filed scores of requests for temporary restraining orders seeking immediate release as a result of U.S. Immigration and Customs Enforcement's COVID-19 protocols and the fear of harm as a result of contracting COVID-19. This has led to emergency hearing after emergency hearing, all on expedited briefing schedules that allow for "little opportunity for the adversarial testing of evidence." *Id.* These are certainly not normal circumstances that serve as the backdrop to the instant motion for preliminary injunction.

Plaintiffs are a putative class of immigration detainees of a certain age or with pre-existing medical conditions that they claim render them at heightened risk of contracting the Coronavirus Disease 2019 ("COVID-19"). The particular Named Plaintiffs are immigration detainees with serious criminal histories as well as medical conditions that they contend render them at risk of COVID-19. These five Named Plaintiffs, three of whom remain detained at only three immigration detention facilities, seek an expansive, nationwide preliminary injunction requiring U.S. Immigration and Customs Enforcement ("ICE") to implement certain measures with respect to detainees who have a heightened risk of contracting COVID-19 as a result of their age or medical conditions. If ICE cannot implement the requested nationwide and class-wide preliminary injunction within 24 hours, Plaintiffs seek prompt release from detention.

Through this motion for a preliminary injunction and emergency motion for class certification, Plaintiffs seek accelerated review of longstanding grievances regarding medical treatment in immigration detention facilities based on a platform of specious allegations that ignore the authority and justification for civil immigration detention mandated by Congress and recognized by the Supreme Court, and which seeks relief that extends far beyond addressing the allegations of the Named Plaintiffs should they prove true. Plaintiffs' emergency filings in this case raise an entirely new set of factual allegations absent from the complaint that would have the Court go beyond the claims in the complaint to find that all immigration detention is punitive and that an unknown number of immigration detainees should be released without consideration of the compelling and Congressionally mandated reasons for their continued detention and without regard to the efforts U.S. Immigration and Customs Enforcement ("ICE") has taken to address the risks of COVID-19 in consideration of the Centers for Disease Control's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities.

Defendants recognize that COVID-19 presents a significant and fast-developing challenge. And Defendants have therefore responded carefully, thoroughly, and expeditiously to that challenge. The circumstances concerning COVID-19 have been fluid and therefore so has the federal response. Throughout the past month, ICE has constantly monitored and reviewed and modified its COVID-19 guidance, in accordance with the Center for Disease Control and Prevention guidelines, with respect to immigration detention centers nationwide, as reflected at its webpage, policy memoranda, and the declarations attached here that reflect the latest in policies and practices at facilities run by ICE Health Service Corps ("IHSC"), and those facilities with ICE detainees held at state and local facilities pursuant to Inter-Governmental Services Agreement and privately

contracted facilities.[123] ICE's COVID-19 guidance demonstrates a unified and thorough response aimed at "reduc[ing detainee and detention center staff] exposure to COVID-19, protect[ing] the detained population, and optimiz[ing] employee health and availability for duty." COVID-19 Action Plan, Revision 1 at 1. In response to COVID-19, and in order to prevent transmission and infection, ICE has implemented policies at its detention facilities related to visitation, screening of detainees and staff, cohorting and isolation depending upon exposure to or symptoms of the virus, and sanitation frequency, supplies and personal protective equipment. *See, e.g.*, Declaration of Dr. Ada Rivera ("Rivera Decl.") ¶¶ 8-17.

Despite the above-described guidance, policies, and procedures implemented by ICE over the past month in response to the COVID-19 pandemic, Plaintiffs seek a nationwide preliminary injunction requiring Defendants to do the following:

1. identify all people in ICE custody with one or more Risk Factors as defined in Plaintiffs' motion;
2. conduct a comprehensive, evidence-based assessment of medically necessary precautions that should be implemented to ensure the health and safety of such persons during the COVID-19 pandemic, including assurance that all such persons have timely access to competent, sufficient, and appropriately qualified staffing, medical care, screening, social distancing measures, sanitation methods, education, equipment, hospitals and all other medically necessary protective measures;
3. promptly (within 48 hours) effectuate the release of individuals with one or more Risk Factors if medically necessary safeguards cannot be immediately (within 24 hours) provided to ensure health and safety, and absent an individualized finding of dangerousness to community;
4. modify its existing COVID-19 protocols to remediate all Protocol Deficiencies;
5. appoint a Special Master to oversee the process.

Plaintiffs' Mot. for a Prelim. Inj. ("PI Mot."), ECF No. 81 at 3. The Court should deny Plaintiffs' PI Motion.

---

[1] *ICE Guidance on COVID-19*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/coronavirus, (last visited Apr. 3, 2020).
[2] Ex. 1, *Memorandum on Coronavirus Disease 2019 (COVID-19) Action Plan, Revision 1*, U.S. Immigration and Customs Enforcement (March 27, 2020) (hereinafter "COVID-19 Action Plan, Revision 1").
[3] *See* "Dedicated and Non Dedicated Facility List" and "Over-72-Hour ICE Detention Facilities," *Facility Inspections*, U.S. Immigration and Customs Enforcement, *available at* https://www.ice.gov/facility-inspections; *see also Detention Management*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/detention

As an initial matter Defendants' Motion to Sever and Dismiss, alternatively Transfer Actions, and to Strike portions of Plaintiffs' Complaint remains pending before this Court. *See* ECF No. 54. Because Defendants' Motion seeks to resolve many important issues in this case, including severing and dismissing several of Plaintiffs' claims, Plaintiffs' Emergency Motions for Preliminary Injunction and Class Certification are premature. The Court's action on those previously pending motions is critical, because Plaintiffs now seek a mandatory injunction for a nationwide class without consideration of the specific conditions in individual facilities and the difference in any steps that have been taken in response to COVID-19 at those facilities in furtherance of ICE guidance if those facilities are staffed and run by contractors or state and local authorities, but also depending on guidance from state and local authorities.

To the extent that the Court retains jurisdiction over any of the Named Plaintiffs and their claims, the Court should deny Plaintiffs' motion for an extraordinary preliminary injunction. First, the Named Plaintiffs lack standing because they do not have a cognizable injury, much less an irreparable one. None of them demonstrate that have been exposed to COVID-19, there are not any confirmed COVID-19 cases in any of the Named Plaintiffs' detention facilities, and there are only 8 detainees presently in ICE custody with confirmed cases of COVID-19, at only 6 of the over 100 72-hour ICE detention facilities nationwide. *See* ICE Guidance on COVID-19, "Confirmed Cases," U.S. Immigration and Customs Enforcement, https://www.ice.gov/coronavirus, (last visited Apr. 3, 2020); see also "Dedicated and Non Dedicated Facility List" and "Over-72-Hour ICE Detention Facilities," Facility Inspections, U.S. Immigration and Customs Enforcement, available at https://www.ice.gov/facility-inspections. Even if the Named Plaintiffs could allege sufficient injuries, this Court lacks the authority to redress such injuries by ordering the release of the Named Plaintiffs and a putative class of what could consist of several thousand detainees. Second, Plaintiffs' constitutional claims lack

merit because they do not show that ICE has been deliberately indifferent to the putative class or that ICE's COVID-19 precautionary measures result in punitive conditions of confinement. Nor have Plaintiffs established a violation of the Rehabilitation Act. Third, Plaintiffs have not demonstrated a likelihood of irreparable harm in light of ICE's COVID-19 guidance, policies, and procedures. Finally, the balance of equities and public interest cut strongly against a preliminary injunction—and certainly against the overbroad and mandatory injunction that Plaintiffs seek. Defendants respectfully request that the Court deny Plaintiff's motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. ICE COVID-19 Guidance

Since the initial reports of COVID-19, ICE epidemiologists have been tracking the outbreak, regularly updating infection prevention and control protocols, and issuing guidance to IHSC staff for the screening and management of potential exposure among detainees. Rivera Decl. ¶ 5. On a nationwide basis, ICE has maintained a pandemic workforce protection plan since February 2014. *Id.* ¶ 6. This plan provides specific guidance for biological threats such as COVID-19, and ICE instituted applicable parts of the plan in January 2020, upon the discovery of the potential threat of COVID-19. *Id.* IHSC has also been in contact with relevant offices within the Department of Homeland Security, and in January 2020, the DHS Workforce Safety and Health Division provided DHS components additional guidance to address assumed risks and interim workplace controls, including the use of N95 masks, available respirators, and additional personal protective equipment. *Id.* ¶ 7. As a precautionary measure, ICE has temporarily suspended social visitation in all detention facilities. *Id.* ¶ 8. In testing for COVID-19, IHSC is also following guidance issued by the Centers for Disease Control and Prevention ("CDC") to safeguard those in its custody and care. *Id.* ¶ 9; see also ICE Guidance on COVID-19. IHSC has shared its guidance and resources with medical leadership at all

contract facilities and has issued recommendations to the field units at detention centers, which it updates and shares on a real-time basis. Rivera Decl. ¶¶ 10-11.

During intake medical screenings, routine comprehensive health assessments, or screenings occasioned by detainee complaints, detainees are assessed for fever and respiratory illness, are asked to confirm if they have had close contact with a person with confirmed COVID-19 in the past 14 days, and are asked whether they have traveled from or through areas with sustained community transmission in the past two weeks. *Id*. ¶ 12. The detainee's responses and the results of these assessments dictate whether to monitor or isolate the detainee. *Id*. ¶ 13. Those detainees that present symptoms compatible with COVID-19 are placed in isolation, where they are tested. *Id*. If testing is positive, they will remain isolated and treated. In case of any worsening symptoms, detainees will be referred to a local hospital. *Id*.

In cases of known exposure to a person with confirmed COVID-19, asymptomatic detainees are placed in cohorts with restricted movement for the duration of the most recent incubation period (14 days after most recent exposure to an ill detainee) and are monitored daily for fever and symptoms of respiratory illness. *Id*. at ¶ 14. Those that show onset of fever and/or respiratory illness are referred to a medical provider for evaluation. Rivera Decl. ¶ 14. Cohorting is discontinued when the 14-day incubation period completes with no new cases. *Id*. In the case of exposure to a person with fever or symptoms being evaluated or under investigation for COVID-19 but not confirmed, the process is the same except that cohorting is discontinued if the index patient receives an alternate diagnosis excluding COVID-19. *Id*. ¶ 15.

Field units have also been instructed to educate detainees to include the importance of hand washing and hand hygiene, covering coughs with the elbow instead of with hands, and requesting sick call if they feel ill. *Id*.

ICE's evolving response also remains able to adapt and implement such guidance if and when necessary. Notably, the CDC's guidance specific to higher risk detainees is focused on where "the number of confirmed cases exceeds the number of individual medical isolation spaces available in the facility," and "the number of quarantined individuals exceeds the number of individual quarantine spaces available in the facility," recommending that facilities then "be especially mindful of cases who are at higher risk of severe illness from COVID-19," and suggesting next steps.[4]  Here, Defendants are aware of no ICE facility that presents either scenario where the CDC recommends special procedures for higher risk detainees.

**B. Named Plaintiffs' Detention Authority and Immigration Proceedings**

The Named Plaintiffs are five immigration detainees: Faour Abdullah Fraihat, Jimmy Sudney, and Martin Munoz were detained at the Adelanto ICE Processing Center ("Adelanto") in Adelanto, California[5]; Aristoteles Sanchez Martinez is detained at the Stewart Detention Center in Lumpkin, GA, and Alex Hernandez is detained at the Etowah County Detention Center in Gadsden, Alabama. The Named Plaintiffs are older individuals or have various pre-existing medical conditions that they argue render them at higher risk of serious illness or death if they contract COVID-19. *See* PI Mot., ECF No. 81-11, Declaration of Homer Venters ("Venters Decl.") ¶ 21; see also Pls.' Class Certification Mot., ECF No. 83-7, Declaration of Alex Hernandez ("Hernandez Decl."); ECF No. 83-8, Declaration of Aristoteles

---

[4] *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf at 16, 20 (last updated Mar. 23, 2020).
[5]  Mr. Fraihat and Mr. Munoz were each ordered released from detention on March 30, 2020 and April 2, 2020, respectively, after the filing of the instant PI Mot. *See Munoz v. Wolf*, No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020); *Fraihat v. Wolf*, EDCV 20-00590 TJH (KSx) (C.D. Cal. Mar. 30, 2020). In each case, the District Court granted Mr. Fraihat's and Mr. Munoz's applications for a temporary restraining order in separate habeas corpus proceedings brought by different counsel also purporting

Sanchez Martinez ("Martinez Decl."); ECF No. 83-9, Declaration of Faour Abdullah Fraihat ("Fraihat Decl."); ECF No. 83-10, Declaration of Jimmy Sudney ("Sudney Decl."); ECF No. 83-11, Declaration of Martin Munoz ("Munoz Decl."). Plaintiffs contend that ICE's COVID-19 precautionary measures fail to identify and provide increased protection for detainees with certain risk factors that render them more susceptible to serious illness or death due to COVID-19, and also fail to address shortages of medical and sanitary supplies, staffing shortages, and education of detained people and staff. PI Mot. 7. Plaintiffs also argue that their evidence demonstrates that ICE's detention facilities are not following ICE's COVID-19 guidance and that ICE's purportedly inadequate healthcare system exacerbates the risk posed by COVID-19. *Id.*

### 1. Faour Abdullah Fraihat

Mr. Fraihat is a 58-year-old citizen of Jordan who was previously detained since December 19, 2016. Declaration of Edgar Duran ("Duran Decl.") ¶ 4. In 1989, he was charged with lewd and lascivious acts with a child under 14, but convicted of simple battery and sentenced to 20 days in jail. Between 1994 and 1997, Mr. Fraihat served time in jail and prison for other criminal offenses. On or about December 6, 1999, he was granted withholding of removal to Jordan. *Id.* ¶¶ 5-6.

In 2001, Mr. Fraihat was convicted under California Health and Safety Code ("CHSC") § 11379.6(a) for manufacturing methamphetamine, § 11366 for maintaining a place for selling or using controlled substances, and § 11378 for possession for sale of methamphetamine. *Id.* ¶ 7. For these offenses, Mr. Fraihat was sentenced to six years and eight months in prison. *Id.* In February 2012, Mr. Fraihat's removal proceedings were reopened. *Id.* at ¶ 8. On April 16, 2013, Petitioner was convicted in violation of CHSC § 11379 for offering to transport a controlled substance for sale and sentenced to two years in prison. *Id.* at ¶ 9. On or about December 19, 2016, ICE apprehended Mr. Fraihat and detained him at Adelanto. *Id.* at ¶ 10. On October 30, 2017, an Immigration Judge ordered Mr. Fraihat removed to

Jordan, and he appealed this decision to the Board of Immigration Appeals. *Id.* at ¶ 12. On April 18, 2018, the Board dismissed the appeal. *Id.* at ¶ 14. Mr. Fraihat has filed four Petitions for Review with the Ninth Circuit. *Id.* at ¶ 15. Three were dismissed and one remains pending, and a temporary stay remains in effect. *Id.*

During the pendency of the instant litigation, Mr. Fraihat filed an individual habeas corpus petition. On March 30, 2020, after filing a temporary restraining order in the habeas proceedings requesting immediate release due to the risk of serious illness posed by COVID-19, Mr. Fraihat was released from detention. *See Fraihat v. Wolf, EDCV* 20-00590 TJH (KSx) (C.D. Cal. Mar. 30, 2020).

### 2. Alex Hernandez

Mr. Hernandez is a 49-year-old citizen of Honduras. *See* Hernandez Decl. ¶ 2. Between March 16, 1989 and October 28, 1997, Mr. Hernandez was convicted, in separate proceedings, of Burglary, Vehicle Theft, Possession of a Controlled Substance, Robbery in the Second Degree, Receiving Stolen Property, and Felon in the Possession of a Firearm. Declaration of Bryan S. Pitman ("Pitman Decl.") ¶¶ 6-12.

On September 29, 2016, Mr. Hernandez was processed as an Administrative Removal under Section 238(b) of the Immigration and Nationality Act for having committed an aggravated felony under Section 237(a)(2)(A)(iii). *Id.* ¶ 13. He is subject to mandatory detention. *Id.* ¶ 14. On June 19, 2017, an immigration judge granted Mr. Hernandez relief from removal and the Department of Homeland Security ("DHS") appealed. *Id.* ¶¶ 15-16. On November 24, 2017, the BIA sustained the appeal of DHS and ordered Mr. Hernandez removed to Honduras. *Id.* ¶ 17.

On December 14, 2017, Mr. Hernandez filed a PFR with the Ninth Circuit Court of Appeals, resulting in a stay of removal. *Id.* ¶ 18. That case is pending. *Id.* He has filed two Petitions for Writ of Habeas Corpus. *Id.* ¶¶ 20-21. One was dismissed and one is still pending. *Id.*

### 3.     Aristoteles Sanchez Martinez

Mr. Sanchez Martinez is a native and citizen of Venezuela detained at Stewart. Declaration of Sebastian Mason ("Mason Decl.") ¶ 3. He is in post-order of removal status and detained under 8 U.S.C. 1231(a). *Id*. An immigration judge denied Mr. Sanchez-Martinez's applications for relief from removal on June 3, 2019, and Mr. Sanchez-Martinez appealed the immigration judge's decision to the BIA. *Id*. at ¶ 4. On November 21, 2019, the BIA dismissed the appeal and affirmed the decision of the Immigration Judge. *Id*. at ¶ 5.

### 4.     Jimmy Sudney

Mr. Sudney is a 29-year-old citizen of Haiti with claimed hypertension. Declaration of Michael Jimeno ("Jimeno Decl.") ¶ 3; Sudney Decl. ¶ 4. He is currently detained at Adelanto. Between September 18, 2013 and February 18, 2015, Mr. Sudney was convicted of driving under the influence of alcohol and two counts of aggravated assault. Jimeno Decl. ¶¶ 4-5. On December 7, 2016, he was taken into ICE custody under mandatory detention and charged as removable. *Id*. ¶ 6. On June 26, 2017, an immigration judge concluded that he was both a danger to the community based on his crimes and a flight risk. *Id*. ¶ 8.

On November 15, 2017, an immigration judge denied Mr. Sudney's relief applications and ordered him removed to Haiti. *Id*. ¶ 10. He filed a petition for review with the Ninth Circuit Court of Appeals and it was dismissed on January 14, 2020. *Id*. ¶ 16.

### 5.     Martin Munoz

Mr. Munoz is a native and citizen of Mexico who became a lawful permanent resident on September 15, 1989. Declaration of Gil O. Montes ("Montes Decl.") ¶ 4. He has been detained at Adelanto since July 17, 2017. *Id*. ¶ 12. During his time as a lawful permanent resident in the United States, Mr. Munoz was convicted of several criminal offenses, including several convictions for driving under the influence and driving with suspended license in violation of California law. *Id*. ¶¶ 5-

11. Most recently, on September 27, 2016, he was convicted of: (1) driving under the influence of alcohol with a prior DUI; (2) felony assault with a deadly weapon; (3) felony hit and run – death or injury; and (4) driving under the influence causing injury. *Id*. ¶ 11. Mr. Munoz was sentenced to three years in state prison for these offenses. *Id*. On July 17, 2017, he was taken into ICE custody and placed in removal proceedings on the same date. *Id*. ¶ 12. On August 30, 2018, an immigration judge ordered Mr. Munoz removed, and he appealed that decision to the Board, which dismissed his appeal. *Id*. ¶ 15. On May 13, 2019, Mr. Munoz filed a petition for review and motion for stay of removal with the Ninth Circuit. Petitioner's removal is stayed pending further order of the Ninth Circuit. *See Munoz v. Barr*, No. 19-71164 (9th Cir.).

During the present litigation, Mr. Munoz filed an individual habeas corpus petition. On April 2, 2020, after filing a temporary restraining order in the habeas proceedings requesting immediate release due to the risk of serious illness posed by COVID-19, Mr. Munoz was ordered released from detention. *See Munoz v. Wolf*, No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020).

## III.   ARGUMENT

### A.   Standard for Preliminary Injunction

A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). *See* also *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

To obtain a preliminary injunction, Plaintiffs must demonstrate: (1) that they are likely to succeed on the merits of their claims; (2) that they are likely to suffer irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in their favor; and (4) that the proposed injunction is in the public interest. *Karnoski v. Trump,* 926 F.3d 1180, 1198 (9th Cir. 2019) (quoting *Winter*, 555 U.S. at 20). "Where the government is a party to a case in which a preliminary injunction

is sought, the balance of the equities and public interest factors merge." *Padilla v. ICE, et al.*, --- F.3d ---, 2020 WL 1482393, *5 (9th Cir. Mar. 27, 2020).

Finally, because the function of a preliminary injunction is to maintain the status quo before the case is adjudicated on the merits, there is "heightened scrutiny" for mandatory preliminary injunctions. *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (Mandatory injunctions are "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party."). "A mandatory injunction orders a responsible party to take action," and thus, "goes well beyond simply maintaining the status quo." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal citations and quotation marks omitted). Accordingly, "mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases . . . ." *Id*. at 879 (quotation marks omitted).

### B.   Plaintiffs Have Fallen Short of Proving Any Entitlement to Mandatory Preliminary Injunctive Relief

Plaintiffs ask this Court to rule on the ultimate factual and legal issue in this case—whether Defendants' policies and practices concerning medical care constitute objective deliberate indifference to a substantial risk of suffering serious harm and result in punitive conditions of confinement as well as a violation of the Rehabilitation Act. Plaintiffs then seek a preliminary injunction that would require Defendants to provide the very same relief that Plaintiffs ultimately seek through their Complaint. PI Mot. 3; Proposed Order, ECF No. 84. Because Plaintiffs are seeking this kind of expansive affirmative relief that would require the implementation of "medically necessary safeguards" "within 24 hours," Proposed Order at 7, and the expenditure of significant sunk costs that cannot be recovered if Defendants ultimately prevail, they must show "the facts and law clearly favor" their position in order to satisfy the heightened scrutiny test for mandatory injunctions. Dahl, 7 F.3d at 1403 (emphasis added). As Defendants discuss below, Plaintiffs have failed to meet their high burden to demonstrate likelihood of success on the merits,

irreparable harm, and that the balance of interests tips in their favor, and their PI Motion should be denied.

### C. Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits.

#### 1. A PI Motion Based on New Factual Allegations Not in the Complaint is Improper.

For injunctive relief to be proper, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queens Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). If a court never finds that the "conduct asserted in the underlying complaint" is likely to be unlawful, then there is no basis to issue an injunction of conduct not challenged in the complaint. *See De Beers Consol. Mines v. United States*, 325 U.S. 212, 219 (1945) (the issuance of preliminary relief "presupposes or assumes . . . that a decree may be entered after a trial on the merits enjoining and restraining the defendants from certain future conduct") (emphasis added). Indeed, such a ruling would be an abuse of discretion. *See Pac. Radiation Oncology, LLC*, 810 F.3d at 637 (movant "could not prove the likelihood of success requirement of the preliminary injunction analysis because the [] violations alleged in the motion were not contained within the actual complaint"); accord *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint").

Plaintiffs' PI request flunks the requirement for "a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC*, 810 F.3d at 636. While Plaintiffs' complaint includes general and overarching allegations regarding Defendants' medical care practices, punitive conditions of confinement, and allegations concerning violation of the Rehabilitation Act. *See, e.g.*, ECF No. 1, Compl. ¶¶ 21-96. But the complaint makes no allegations based on the COVID-19 pandemic, nor does it seek release as a remedy. Yet Plaintiffs' PI Motion asks this

Court to direct ICE to modify its medical policies, guidance, and practices specifically in response to the COVID-19 pandemic. *See* PI Mot. 3. The PI Motion also requests that this Court order Plaintiffs released from detention if ICE cannot modify its medical policies within 24 hours. *See* id. That requested relief is not sufficiently related to the claims pleaded in the complaint. The Court should deny the PI Motion on this ground alone.

### 2.    Plaintiffs Lack Article III Standing

To have standing, a plaintiff must establish three requirements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, a plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. Second, the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the Court." *Id*. Third, it must be "likely," as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." *Id*. at 560-61 (internal citations omitted). Plaintiffs do not demonstrate a cognizable injury because there are no COVID-19 cases in any of the detention facilities where the Named Plaintiffs are detained, nor is the alleged injury redressable by this Court given ICE's COVID-19 response and the absence of COVID-19 in those detention facilities.

Plaintiffs' argue that people "in immigration detention establish a due process violation warranting injunctive relief by showing that Defendants' policies and practices concerning medical care—in their totality—constitute objective deliberate indifference to a substantial risk of suffering serious harm." PI Mot. 9. Specifically, Plaintiffs contend that Defendants' precautionary measures in response to the COVID-19 pandemic, viewed in light of Defendants' purported inadequate healthcare system, is a systemic deficiency and evidence of Defendants' objective deliberate indifference, particularly toward individuals with certain medical conditions that they contend render them at greater risk of serious illness or death

14

due to COVID-19. *See id.* (citing *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018)).

Here, Plaintiffs' alleged risk of harm is speculative. Plaintiffs have not established that COVID-19 cases have been confirmed at any of the Named Plaintiffs' detention facilities. *See* generally Hernandez Decl.; Martinez Decl.; Fraihat Decl.; Sudney Decl.; Munoz Decl; see also Declaration of Captain Jennifer Moon – Adelanto ICE Processing Center ("Moon Decl. – Adelanto") ¶ 13; Declaration of Captain Jennifer Moon – Etowah County Detention Center ("Moon Decl. – Etowah") ¶ 13; Declaration of Captain Jennifer Moon – Stewart Detention Center ("Moon Decl. – Stewart") ¶ 13. While Plaintiff Munoz claims he feels like he has the flu, that statement is not evidence of COVID-19 and remains speculative as to the injury for which Plaintiffs seek relief. *See* Munoz Decl. ¶ 8.

ICE has expended extensive resources and efforts to address the very issues that Plaintiffs have identified, and Plaintiffs' claims of future injury are only hypothetical. *See* Rivera Decl. ¶¶ 5-17. Plaintiffs are not entitled to impose excessive and mandatory obligations on Defendants or obtain immediate release from detention based on a conjectural injury that they have not suffered. *Spokeo v. Robins*,136 S. Ct. 1540 (2016) at 1548. ICE has set up screening procedures to identify and isolate potentially infected individuals, in accordance with CDC guidance, and to avoid the mingling of infected with uninfected inmates. Rivera Decl. ¶¶ 12-15. They have provided staff with increased supplies of and guidance on the use of personal protective equipment. *Id.* ¶ 7; Moon Decl. – Adelanto at ¶ 15; Moon Decl. at ¶ 15; Moon Decl. – Stewart at ¶ 15. These policy and procedure modifications render Plaintiffs' claim speculative rather than imminent. Since the beginning of March 2020, when the COVID-19 pandemic worsened throughout the United States, ICE has monitored CDC guidelines and updated its guidance to address the evolving and uniquely fluid situation presented by the crisis. *Id.* ¶¶ 5, 9; see also ICE Guidance on COVID-19; Ex. 1, COVID-19 Action Plan, Revision 1.

Thus, Plaintiffs do not have standing to obtain preliminary injunctive relief because their injury is speculative.

### 3.  **Plaintiffs Fail to Demonstrate that ICE is Acting With Deliberate Indifference.**

The right to adequate medical care for immigration detainees, comparable to pretrial detainees, stems from an established right to be free from unconstitutional punishment. *See Bell v. Wolfish*, 441 U.S. 520, 534-37 (1979). Unlike the related Eighth Amendment protections afforded to criminal prisoners, for immigration detainees and similar to pretrial detainees, this right stems instead from the Due Process Clause of the Fifth Amendment. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). Thus, detainees are entitled to receive "adequate" medical care as part of their constitutional right to Due Process. *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

However, recently the Ninth Circuit has adopted a slightly different "objective deliberate indifference standard" from that previously applied in the Eighth Amendment context. *See Gordon*, 888 F.3d at 1124-25 & n.4.The elements of a pretrial detainee's deliberate indifference claim with respect to adequate medical care under due process are the following:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 1125. With respect to the third element, "the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" Gordon, 888 F.3d at 1125 (citations omitted). Essentially, a plaintiff must prove more than negligence but less then subjective intent—something akin to reckless disregard." *Id*. (internal citation omitted). Neither general allegations of negligence nor a plaintiff's general

disagreement with treatment received is enough. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Further, a medical need is deemed to be "serious" if the failure to treat the detainee's condition would result in further significant injury or in the unnecessary and wanton infliction of pain contrary to contemporary standards of human decency. *See Helling v. McKinney*, 509 U.S. 25, 32-35 (1993); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Even where individuals have been involuntarily, civilly committed, liability may be imposed "only when the decision by the [medical] professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). In other words, neither a plaintiff's mere allegations of a defendant's negligence nor a plaintiff's general disagreement with the treatment that he or she received would suffice to show eligibility for relief in this context. *See Estelle*, 429 U.S. at 106; *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); see also *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir.), cert. denied, 519 U.S. 1029 (1996).

Here, Defendants are fully satisfying these standards: they are providing adequate medical care and protection in accordance with the measures that ICE has implemented in response to COIVD-19. Gordon, 888 F.3d at 1124-25. Plaintiffs are receiving the benefits of the precautionary measures ICE has implemented to protect all detainees from illness due to COVID-19. *See* Rivera Decl. ¶¶ 8-17 (detailing measures to prevent the spread of COVID-19, including suspending social visitation, assessing detainees for fever and respiratory illness, isolating detainees with COVID-19-compatible symptoms, and instructing detainees on hand washing and hygiene); Moon Decl. – Adelanto ¶¶ 7-12, 15-20; Moon Declaration – Etowah ¶¶ 7-12, 15-21; see, e.g., Hernandez Decl. ¶ 6 (noting that all detainees in the unit were

provided with surgical masks); Munoz Decl. ¶ 5 (explaining how he was moved from a dorm of 72 people to 22 people). Importantly, ICE has gone to great lengths to promptly implement protocols to protect its staff and the detainees in their care, including at Adelanto, Etowah, and Stewart. They have set up screening procedures to identify and isolate potentially infected individuals, in accordance with CDC guidance, and to avoid the mingling of infected with uninfected inmates. Rivera Decl. ¶¶ 12-15. They have provided staff with increased supplies of and guidance on the use of personal protective equipment. *Id.* ¶ 7; Moon Decl. – Adelanto at ¶ 15; Moon Decl. at ¶ 15. The lack of any confirmed COVID-19 cases at Adelanto, Etowah, and Stewart, where the Named Plaintiffs are detained, underscores the effectiveness and care the government has taken to protect vulnerable detainees. ICE's action and policies described above show extensive and thorough action to protect detainees and prevent infection. Thus, ICE's response defeats any deliberate indifference claim.

Moreover, even if COVID-19 were introduced to the facilities in which the Named Plaintiffs are detained, ICE is has taken precautionary measures to protect detainees and prevent infection, as described above. ICE is responding. Plaintiffs fail to provide evidence that Defendants are not taking precautionary measures and are unprepared to respond to that contingency, particularly in light of the known facts concerning ICE's response to the challenges posed by COVID-19. Rivera Decl. ¶¶ 8-17; *see also Dawson v. Asher*, No. C20-0409 JLR-MAT, 2020 WL 1304557 (W.D. Wash. Mar. 19, 2020) (rejecting a request for release by an immigration detainee where there was no evidence of COVID-19 cases or that defendants' precautionary measures for COVID-19 were inadequate); *Sacal-Micha v. Longoria*, --- F. Supp. 3d ---, 2020 WL 1518861, *5 (S.D. Tex. Mar. 27, 2020) (finding no likelihood of success on substantially the same due process claim based on absence of evidence that the detention facility is incapable of protecting the petitioner from COVID-19). Furthermore, the deliberate indifference analysis turns on the facts and

18

circumstances of each case at each facility, particularly where those facilities are staffed and run by contractors or state and local authorities. Given the differences in facilities and the evidence presented above, the Court should not reach any broad holding that there is deliberate indifference. *See Gordon*, 888 F.3d at 1125 (quotations and citations omitted).

Plaintiffs fail to show a likelihood of meeting their burden to show that Defendants have responded with reckless disregard or deliberate indifference, or substantially departed from accepted professional judgment, practice or standards. *Gordon*, 888 F.3d at 1125; *McGuckin*, 974 F.2d at 1059; *Youngberg*, 457 U.S. at 323. First, undergirding Plaintiffs' basis for preliminary relief and the putative subclass definitions is an overbroad definition of "risk factors" that render a person more susceptible to serious illness due to COVID-19. CDC guidelines, which form the basis for ICE's COVID-19 guidance, provide that:

> Based upon available information to date, those at high-risk for severe illness from COVID-19 include:
> - People aged 65 years and older
> - People who live in a nursing home or long-term care facility
> - Other high-risk conditions could include:
>   - People with chronic lung disease or moderate to severe asthma
>   - People who have serious heart conditions
>   - People who are immunocompromised including cancer treatment
>   - People of any age with severe obesity (body mass index [BMI] >40) or certain underlying medical conditions, particularly if not well controlled, such as those with diabetes, renal failure, or liver disease might also be at risk
> - People who are pregnant should be monitored since they are known to be at risk with severe viral illness, however, to date data on COVID-19 has not shown increased risk
>
> Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications.[6]

---

[6]   *People who are at higher risk for severe illness*, Centers for Disease Control and Prevention,https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov

However, based on purported expert declarations, Plaintiffs define "risk factors" for severe illness due to COVID-19 more broadly than the CDC guidelines to include people who are age 55 or older and severe psychiatric illness. PI Mot. 6 & n.9 (emphasis added); see also Venters Decl. ¶ 13, ECF No. 81-11; Franco-Paredes Decl., ECF No. 81-12 at 2-3. While Dr. Venters explains (although without any explanation of his methodology or evidence) that the more broadly defined risk factors are part of his medical opinion, Venters Decl. ¶ 13, Dr. Franco-Paredes states incorrectly and without citation that "[a]ccording to the CDC, groups deemed to be at high risk of developing severe disease and dying from COVID-19 include those above 55 years of age and those with underlying medical conditions (regardless of their age) (*See* Table 1)," Franco-Paredes Decl., ECF No. 81-12 at 2-3. In any case, the more broadly defined risk factors are the medical opinions of Drs. Venters and Franco-Paredes, and Plaintiffs do not demonstrate how ICE's use of the risk factors as defined by the CDC substantially depart from professional judgment. *See Youngberg*, 457 U.S. at 323. ICE's thorough response to COVID-19 in detention facilities defeats a deliberate indifference claim, and Plaintiffs' mere difference of opinion surely does not show deliberate indifference.

Plaintiffs also contend that ICE's protocols contradict CDC guidance for correctional facilities because ICE's guidance does not address "staffing shortages," "basic infection control measures," and does not require social distancing. PI Mot. 10-11. But ICE has addressed these issues. ICE issued a memorandum on March 27, 2020, providing that facilities "are expected to be appropriately staffed to ensure the delivery of detainee medical and mental health care as it relates to the continually evolving impact of COVID-19." COVID-19 Action Plan, Revision 1 at 2. The memorandum also addresses screening staff and detainees, to include cohorting and social distancing measures where possible and appropriate. *See id.* at 4-5 ("Wardens and Facility Administrators should implement modified operations to maximize social distancing in facilities, as much as practicable. For example, Wardens and

20

Facility Administrators should consider staggered mealtimes and recreation times in order to limit congregate gatherings."). Indeed, the CDC guidance for correctional facilities recognizes that social distancing in the correctional setting is not always possible. *See* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf (last updated Mar. 23, 2020) (recognizing that "social distancing is challenging to practice in correctional and detention environments" and that to socially distance, individuals should "ideally" maintain a distance of 6 feet apart). At all events, ICE's response on these points defeat any claims of deliberate indifference.

Plaintiffs seek sweeping nationwide relief, but they have not established nationwide deliberate indifference; thus, Plaintiffs' purported evidence that ICE's protocols are inadequate and that ICE is not applying the protocols that exist system-wide is unconvincing. Dr. Venters' declaration fails to support Plaintiffs' assertion that ICE's COVID-19 protocols are insufficient because he speaks to conditions he witnessed in immigration detention facilities at an unknown place and time; thus, lacking personal knowledge of current conditions in ICE detention. *See* Venters Decl. ¶¶ 1, 9; see also *Los Angeles Times Communications LLC v. Dept. of the Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal. 2006) ("Generally, [Federal Rule of Evidence] Rule 602 requires that a witness' testimony be based on events perceived by the witness through one of the five senses."). In addition, to the extent Dr. Venters' opinion is considered along with that of Plaintiffs' other purported expert, Dr. Franco-Paredes, these merely represent the opinions of two medical professionals and demonstrate a difference of professional opinion concerning COVID-19 protocols rather than any indication of deliberate indifference on Defendants' part. *See Youngberg*, 457 U.S. at 323.

Moreover, Plaintiffs' additional declarations from Mikhail Solomonov (ECF No. 81-3), Linda Corchado (ECF No. 81-5), Laura G. Rivera (ECF No. 81-6), Keren Zwick (ECF No. 81-7), Elissa Steglich (ECF No. 81-10), Anne Rios (ECF No. 81-13), and Andrea Saenz (ECF No. 81-15) that are intended to "paint an alarming picture of ICE's inadequate responses to COVID-19 across the entire country" defy the evidence of ICE's COVID-19 response that defeats any deliberate-indifference claim. And to the extent the Court gives them any weight, the Court must also consider the declarations of Dr. Ada Rivera and Captain Jennifer Moon that discuss the specific policies and practices as implemented at the facilities at which the Named Plaintiffs are detained. *See generally* Rivera Decl. ¶¶ 8-17; compare Moon – Adelanto Decl. ¶¶ 7-20 (noting that Adelanto changed attorney visits to a non-contact setting), with Moon Decl. – Etowah ¶¶ 7-21 (noting that attorney visits have been limited to approval only on a case-by-case basis in an effort to reduce detainee exposure to COVID-19).

Furthermore, these declarations are largely, if not entirely, inadmissible or entitled to no weight because the declarants lack personal knowledge, fail to lay a proper foundation for an assertion, or provide statements based on hearsay.[7]  *See* Fed. R. Civ. P. 56 (c)(4); Fed. R. Evid. 801–802; Fed. R. Evid. 601–602; Fed. R. Evid. 701; *see also Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 615 (C.D. Cal. 2005) (sustaining hearsay objection to declaration statement); *Bank Melli v. Pahlavi*, 58 F. 3d 1406, 1412 (9th Cir. 1995) (a declaration not made on personal knowledge is entitled to no weight); *Self-Insurance Inst. Of America, Inc. v. Software and Information Ind. Ass'n,* 208 F. Supp. 2d 1058, 1063–64 (C.D. Cal. 2000) (affirming defendants' objections over (1) a declarant's statements about third persons being "confused" for lack of personal knowledge and (2) statements about "calls to myself and to my staff" from clients because the statements in these calls

---

[7] *See* Defendants' Evidentiary Objections to the Declarations of Mikhail Solomonov, Linda Corchado, Laura G. Rivera, Keren Zwick, Elissa Steglich, Anne Rios, and Andrea Saenz filed concurrently with the instant Memorandum for specific statements and bases for objection

22

are inadmissible hearsay); *Wells v. Jeffery*, No. 03-cv-228, 2006 WL 696057, at *3 n.7 (D.D.C. Mar. 20, 2006) ("The affidavit or declaration cannot contain hearsay evidence, as such evidence would not be admissible at trial."). Thus, the Court should accord little, if any, weight to Plaintiffs' declarations. And to the extent the Court gives them any weight, the Court must also consider the declarations of Dr. Ada Rivera and Captain Jennifer Moon that discuss the specific policies and practices as implemented at the facilities at which the Named Plaintiffs are detained. *See* generally Rivera Decl. ¶¶ 8-17; compare Moon – Adelanto Decl. ¶¶ 7-20 (noting that Adelanto changed attorney visits to a non-contact setting), with Moon Decl. – Etowah ¶¶ 7-21 (noting that attorney visits have been limited to approval only on a case-by-case basis in an effort to reduce detainee exposure to COVID-19)

Additionally, Plaintiffs contend that ICE's "already broken medical care system" will exacerbate ICE's COVID-19 response, creating a substantial risk of harm to Plaintiffs. Plaintiffs have not submitted any evidence to establish deliberate indifference generally, and Defendants' evidence submitted here defeats a deliberate indifference finding. Plaintiffs cite governmental and non-governmental organization reports as well as a news article, which fail to carry their burden to clearly show likelihood of success on the merits of their present inadequate medical care claim related to COVID-19. Plaintiffs included citations to these reports in their Complaint, and the propositions for which Plaintiffs cite these reports is already under consideration before the Court on Defendants' pending motion to dismiss; thus, any consideration of them here would be premature. *See* Defs.' Mot. to Sever and Dismiss Pls.' Claims, Alternatively Transfer Actions, and Mot. to Strike Portions of the Compl., ECF No. 54. Finally, Plaintiffs citation to a news article should not be given any weight because generally news articles are inadmissible hearsay at this stage of the proceedings when presented for the truth of the matter asserted. *See Green v. Baca*, 226 F.R.D. 624, 638 (C.D. Cal. 2005) (concluding that

news articles concerning "over-detentions" at Los Angeles jail were inadmissible hearsay).

### 4. Release Is Not An Appropriate Remedy For A Conditions of Confinement Claim.

In similar habeas litigation concerning ICE's response to COVID-19 in the Adelanto detention facility, another court in this District ordered the release of numerous immigration detainees. *See Bravo Castillo v. Barr*, --- F. Supp. 3d ---, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); Hernandez v. Wolf, No. 5:20-CV-00617 TJH (KSx) (C.D. Cal. Apr. 1, 2020). However, release is not appropriate in these cases, nor is it appropriate in this Fifth Amendment conditions-of-confinement case.

"Release from confinement" is not the appropriate remedy to address claims "alleg[ing] that the terms and conditions of [petitioner's] incarceration constitute[d] cruel and unusual punishment" and "violated his due process rights." *Crawford v. Bell*, 599 F.2d 890, 891-92 (9th Cir. 1979). Here, petitioners claim a violation of liberty interests protected by the due process guarantees of the Fifth Amendment. *See* PI Mot. 9. The focus for determining the impact upon a protected liberty interest by a condition of detention is upon the nature of the specific deprivation alleged. *See Sandin v. Conner*, 515 U.S. 472, 481-484 (1995). Furthermore, only those deprivations that impose atypical hardships in relation to the ordinary incidents of detention give rise to relief under the due process clause of the Fifth Amendment. *Id.* at 484. *See also Jackson v. Carey,* 353 F.3d 750, 755 (9th Cir. 2003). To determine whether a condition of detention merits relief under the Fifth Amendment, a court may look to Eighth Amendment standards. *See Keller v. Warden*, No. 1:16-cv-00613-EPG-PC, 2016 U.S. Dist. LEXIS 65109, at *10. (E.D. Cal. May 16, 2016).

Accordingly, a Due Process challenge that implicates the Eighth Amendment must be reviewed consistent with case law applying Eighth Amendment, which requires the Court to look at each challenged condition and the reason or cause behind it. *Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981), *citing Trop v.*

*Dulles*, 356 U.S. 86, 101,(1958); *quoted in Estelle v. Gamble*, 429 U.S. 97, 102, (1976); *Spain v. Procunier*, 600 F.2d 189, 196 (9th Cir. 1979); *see also Keller* at *6–8. While each condition of detention does not exist in isolation; the court's principal focus should be on each specific condition. *Id*. Even though "'[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone," they only do so "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise — for example, a low cell temperature at night combined with a failure to issue blankets.'" *Keller* at *7, *quoting Wilson v. Seiter*, 501 U.S. 294, 304, (1991).

Furthermore, a court "may not use the totality of all conditions to justify federal intervention requiring remedies more extensive than are required to correct Eighth Amendment violations." *Wright*, 642 F.2d at 1133. Importantly, "[t]o find an Eighth Amendment violation, courts must identify specific conditions that fail to meet Eighth Amendment requirements." *Hoptowit v. Ray*, 682 F.2d 1237, 1247 (9th Cir. 1982). "[E]qually importantly, in tailoring a proper remedy, [a court] must analyze each claimed violation in light of these requirements." *Id*. Thus, "only the specific conditions that violate the Constitution may be remedied, and the remedy may be only so much as is required to correct the specific violation." *Id*.

Here, Petitioners make a generalized claim that their detention risks causing them irreparable harm during the COVID-19 pandemic. PI Mot. 9. But Plaintiffs' claims raise nothing more than conditions inherent in all congregate detention settings, and as such they do not give rise to the remedy of release from detention. *See Jackson*, 353 F.3d at 755. Additionally, looking at the short list of specific conditions complained of in Petitioners PI Motion, it is clear that the remedy of release is not required to correct the identified conditions—even if the conditions amounted to a deficiency in Defendants' medical protocols. For example, Plaintiffs complain of not being segregated from other detainees during transport and not

having access to basic infection control. PI Mot. 11. Likewise, they complain of not being provided masks and not being able to social distance. *Id*. Even if this Court were to find that the claims concerning conditions at detention facilities were legitimate, release from detention is not necessary to correct them. *Wright*, 642 F.2d at 1133; Hoptowit, 682 F.2d at 1247. Instead, should this Court see a need to intervene, it should only enter such an order as is required to correct the specific violation demanding remedy at the facilities that demonstrate those violations, and not the overly broad remedy of release from detention. *Id*.

### 5.   Plaintiffs Fail to Demonstrate that Defendants' COVID-19 Response Results in Punitive Conditions of Confinement.

To evaluate the constitutionality of a pretrial detention condition or immigration detention condition under the Fifth Amendment, a district court must determine whether those conditions "amount to punishment of the detainee." *Bell*, 441 U.S. at 535; *see also Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2473-74 (2015). Punishment may be shown through express intent or a restriction or condition that is not "reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 539.

Plaintiffs frame their request for a preliminary injunction as though they have already established a presumption of punitiveness in this case. They have not. A rebuttable presumption of punitiveness exists where "the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held," or where those conditions "are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Jones v. Blanas*, 393 F.3d 918, 932, 934 (9th Cir. 2004); *see also Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1064 (C.D. Cal. 2019). What is clear is that the government's legitimate interests stemming from its need to manage its detention facilities may justify imposing some conditions on an individual without rendering the detention unconstitutional. *See Bell*, 441 U.S. at 539-40.

First, Plaintiffs do not show that Defendants have an "express intent" to punish Plaintiffs. Plaintiffs' claims that ICE's response to COVID-19 amounts to an express intent to punish the immigration detainees in the putative class simply defy the facts. ICE has responded carefully, expeditiously, and thoroughly by releasing individuals from detention[8]and taking appropriate precautions by implemented COVID-19 protocols in consideration of CDC guidelines. *See* Rivera Decl. ¶¶ 8-17.

Indeed, ICE's detention scheme is authorized by Congress, affirmed by the Supreme Court, and allows for ICE to exercise discretion on a case-by-case basis in a manner appropriate to the present challenge. The underlying statutory detention authority governing a detainee's custody rebuts the presumption of any punitiveness arising from immigration detention. *See, e.g.*, 8 U.S.C. § 1225(b) (requiring mandatory detention for aliens pending final determination in credible fear proceedings); § 1226(c) (requiring mandatory detention for aliens who have committed certain criminal offenses); § 1231(a)(2) (requiring mandatory detention during the 90-day removal period after a final order of removal is entered). And the Supreme Court has routinely recognized that preventing detained aliens from absconding and ensuring that they appear for removal proceedings is a legitimate governmental objective. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018); *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas v. Davis,* 533 U.S. 678, 690-91 (2001). These authorities and objectives are balanced by discretionary authority that permits ICE to consider whether release is appropriate for certain detainees; see 8 C.F.R. § 236.1(c)(8); 8 U.S.C. § 1182(d)(5); although, as Plaintiffs themselves argue and note in their lay witness declarations, release is a discretionary act that may depend upon whether the detainee is a danger to the community or a flight risk[9].

---

[8]*See, e.g., Coronel, et al. v. Decker, et al.*, No. 20-CV-2472 (AJN), 2020 WL 2020 WL 1487274, *1 n.1 (S.D.N.Y. Mar. 27, 2020) (indicating that ICE released three detainees before the court issued its decision ordering the release of the four additional petitioners).

[9] *See* Defendants' Evidentiary Objections to the Declarations of Mikhail Solomonov, Linda Corchado, Laura G. Rivera, Keren Zwick, Elissa Steglich, Anne Rios, and

Here, the continued detention of the Named Plaintiffs is appropriate and authorized considering their criminal histories. *See* Pitman Decl. ¶¶ 6-12; Duran Decl. ¶¶ 5-9; Montes Decl. ¶¶ 5-11. Moreover, the risks and fears presented by COVID-19 do not transform Plaintiffs' legitimate detention to punitive detention, especially considering the ICE careful, expeditious, and thorough response to COVID-19 and ICE's exercise of its discretionary release authority. Plaintiffs do not cite to authority, and Defendants are aware of none, under which the fact of detention itself becomes an "excessive" condition solely due to the risk of a communicable disease outbreak—even one as serious as COVID-19. *See Dawson*, 2020 WL 1304557, at \*2. Thus, Plaintiffs fail to clearly show a likelihood of succeeding on the merits that they are subject to punitive conditions of confinement in violation of due process.

### 6. Plaintiffs Fail to Demonstrate that Defendants' COVID-19 Protocols Violate the Rehabilitation Act.

The Rehabilitation Act prohibits federal agencies from discriminating against people with disabilities. 29 U.S.C. § 794(b)(2)(B). Section 504 of the Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Plaintiffs have the burden of showing that Defendants violated Section 504 of the Rehabilitation Act and must show that: "(1) [they] needed the accommodation to enjoy meaningful access to benefits, (2) the government was on notice that [they] needed the accommodation but did not provide it, and (3) there was a specific reasonable accommodation available." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (emphasis added).

Here, none of the Named Plaintiffs in their declarations explain what particular COVID-19-related accommodation he needed, much less requested. See

---

Andrea Saenz filed concurrently with the instant Memorandum for specific statements and bases for objection.

generally Hernandez Decl.; Martinez Decl.; Fraihat Decl.; Sudney Decl.; Munoz Decl. Moreover, Plaintiffs fail to show how ICE's COVID-19 precautionary measures are unreasonable in relation to qualifying disabilities under the Rehabilitation Act.

Plaintiffs argument that Defendants' COVID-19 protocols violate a duty under *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581 (1999), is unavailing. First, and as already noted, the Named Plaintiffs do not show what accommodation they needed in relation to a disability affected by the threat of COVID-19, that such accommodation was requested and not provided, and that the accommodation was reasonable. *See Mark H.*, 620 F.3d at 1097. Without demonstrating any of the elements of a Rehabilitation Act claim, Plaintiffs cannot even get to an Olmstead analysis. Second, Plaintiffs have not shown that Defendants have failed to make a disability assessment, that Plaintiffs have requested reassessment by an ADA coordinator and have been refused, or that any treatment professional of a Named Plaintiff has indicated an appropriate placement and that placement has been refused. *See Olmstead*, 527 U.S. at 607. Thus, the Named Plaintiffs are unlikely to succeed on the merits of their Rehabilitation Act claim, and the insufficient claims of five Named Plaintiffs at three immigration detention facilities certainly cannot support the sweeping nationwide and class-wide injunction that they seek here.

### D.    Plaintiffs Cannot Show a Likelihood of Irreparable Harm.

To establish irreparable harm, the movant must first "demonstrate that irreparable injury is likely in the absence of an injunction;" it "will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury." *Park Village Apartment Tenants Association v. Foster,* 636 F.3d 1150 (9th Cir. 2011) (internal citation and quotation marks omitted); *see also Winter v. Natural Res. Def. Council*, 555. U.S. 7, 22 (2008). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with" the Supreme Court's "characterization of injunctive relief as an extraordinary remedy that may

only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Conclusory or speculative allegations are not enough to establish a likelihood of irreparable harm. *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

Plaintiffs have not established that "irreparable injury is likely in the absence of an injunction." Winter, 555 U.S. at 22. The "possibility" of harm is insufficient to warrant the extraordinary relief of a mandatory preliminary injunction. *See id*. There is no evidence of confirmed COVID-19 cases at the detention centers where the Named Plaintiffs are held or that Defendants' precautionary measures are inadequate to contain or properly provide medical care should an outbreak occur. *See Dawson*, 2020 WL 1304557, at *2–3 (denying temporary restraining order and denying release of immigration detainee because irreparable harm from risk of contracting COVID-19 in ICE detention was not likely absent an injunction); *Sacal-Micha*, 2020 WL 1518861, *5 (finding no likelihood of success on substantially the same due process claim based on absence of evidence that the detention facility is incapable of protecting the petitioner from COVID-19). Accordingly, Plaintiffs fail to meet their burden of clearly showing that irreparable harm is likely in the absence of an injunction.

### E.   The Government's Interests Would Be Harmed, and the Public Interest Would Not Be Served By The Grant of Injunctive Relief

It is well settled that the public interest in enforcement of United States immigration laws is significant. *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant."); *See also Nken v. Holder*, 556 U.S. 418, 435 (2009) ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and permit[s]

and prolong[s] a continuing violation of United States law." (internal marks omitted)).

First, the broad injunctive relief—ordering ICE to modify its COVID-19 medical care procedures or, in the alternative, release from detention—that Plaintiffs ask the Court to impose for all individuals in ICE detention with certain risk factors for serious illness or death due to COVID-19 would have a significant impact on the orderly operations of all ICE detention facilities, and therefore on its ability to effectively play its role with regard to immigration enforcement. This potential impact is extremely detrimental to the public interest. The disruptive effect of such an order would long survive the COVID-19 pandemic and would serve to release many criminal aliens slated for removal back into the general public. The public interest is best served by allowing for the implementation of medical procedures and protocols by medical professionals and other staff following the guidance of medical professionals. *See Youngberg*, 457 U.S. at 322-23 (urging judicial deference and finding presumption of validity regarding decisions of medical professionals concerning conditions of confinement). This type of burden and its potential impact on ICE operations nationwide is too great to be permissible at this preliminary stage.

Second, ICE has a legitimate interest in the continued detention of immigration detainees that is authorized by Congress and recognized by the Supreme Court. The fact of COVID-19 does not eviscerate that interest and make the continued detention of Plaintiffs presumptively putative. Rather, ICE's careful, expeditious, and thorough response to COVID-19 and ICE's exercise of its discretionary release authority continue to support that the detention of the Named Plaintiffs and similarly situated immigration detainees is appropriate – and that the government has compelling interests in such detention when considering the factors presented by individual detainees – including their dangerousness and flight risk. *See* 8 C.F.R. § 236.1(c)(8) (an ICE officer "may, in the officer's discretion, release an alien . . . provided that the alien must demonstrate to the satisfaction of the officer

that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Finally, the preliminary injunctive relief Plaintiffs request would require substantial changes to ICE detention facility operations and intergovernmental service agreements with state and local governments. Upon balancing the interests of public safety and immigration enforcement, if the Court orders the release of individuals and/or the class, the Court should order such release only temporarily and on the condition of home confinement after those released individuals provide the Court with information about with whom and where they will shelter in place.

Because Plaintiffs cannot show that the balance of hardships and public interest tips in their favor, the Court should deny Plaintiffs' request for preliminary injunctive relief.

### F.   Plaintiffs' Request that the Court Appoint a Special Master is Premature.

As part of their request for a preliminary injunction, Plaintiffs request that this Court appoint a Special Master. Under Federal Rule of Civil Procedure 53(a)(1)(C), the Court may appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). The Court's decision to appoint a master "must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Fed. R. Civ. P. 53(a)(3). "Before appointing a master, the court must give the parties notice and an opportunity to be heard. Any party may suggest candidates for appointment." Fed. R. Civ. P. 53(b)(1). A court "should appoint a special master only in exceptional circumstances." *Burlington N. v. Dep't of Revenue*, 934 F.2d 1064, 1071 (9th Cir. 1991). Courts have found exceptional circumstances in cases involving complex litigation or where there have been problems with compliance with court orders. *See United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990).

32

Here, Plaintiffs' request that this Court appoint a Special Master is premature because Plaintiffs have not shown, and this Court has not indicated, that it cannot effectively or timely address the issues in this case. Defendants Motion to Sever and Dismiss, alternatively Transfer Actions, and to Strike portions of Plaintiffs' Complaint is pending before this Court and significant issues remain unresolved. *See* ECF No. 54. Additionally, Plaintiffs have failed to show any exceptional circumstances that would warrant the Court's appointment of a Special Master and neither party has a history of noncompliance. *See Burlington* N., 934 F.2d at 1071; *See* also *Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 482 (1986) (appointing a Special Master and noting the parties' "established record of resistance to prior state and federal court orders"). Thus, this Court should deny Plaintiffs' request.

## IV.    CONCLUSION

Because Plaintiffs cannot satisfy any of the requirements for preliminary injunctive relief, Defendants respectfully request the Court deny Plaintiffs' Emergency Motion for a Preliminary Injunction.

Dated: April 3, 2020                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

JEFFREY S. ROBINS
Deputy Director

/s/ Lindsay M. Vick
LINDSAY M. VICK
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
District Court Section