ETHAN P. DAVIS
Acting Assistant Attorney General
U.S. Department of Justice
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
JEFFREY S. ROBINS
Deputy Director
HANS H. CHEN (NY 4278123)
LINDSAY M. VICK (MA 685569)
ANNA L. DICHTER (NJ 304442019)
450 5th Street, N.W., Rm 5223
Washington, D.C. 20530
Telephone: (202) 532-4023
Facsimile: (202) 305-7000
lindsay.vick@usdoj.gov
anna.l.dichter@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, *et al.*,     )<br><br>*Plaintiffs*,    )<br><br>    v.    )<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, )<br><br>*Defendants*.    )<br>_____) | Case No. 5:19-01546-JGB(SHKx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE APRIL 20, 2020 PRELIMINARY INJUNCTION ORDER**<br><br>**Before The Honorable Jesus G. Bernal**<br>**Hearing Date:** July 17, 2020<br>**Hearing Time:** 2:00 p.m. |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................iii

INTRODUCTION ............................................................................................ 1

ARGUMENT ............................................................................................ 2

    I.    Legal Standards ............................................................................. 2

          a.    Enforcement of a Preliminary Injunction ............................. 2

          b.    Modification of a Preliminary Injunction ............................. 4

    II.    The Court Should Give No Weight to Plaintiffs' Hearsay Declarations ........ 5

    III.    Plaintiffs Fail To Show That Defendants Have Violated Any Provision of the PI Order ............................................................................. 6

          a.    Plaintiffs Have Not Shown Clear and Convincing Evidence of a Violation Of The PI Order Concerning Custody Redeterminations..... 6

          b.    Plaintiffs' Contentions Concerning the Revised PRR Are Not Clear And Convincing Evidence Of A Violation Of The PI Order ............. 11

          c.    Plaintiffs' Have Not Shown Clear and Convincing Evidence Of A Violation Of The PI Order Concerning Monitoring Of The PRR ...... 15

    IV.    Plaintiffs' Requests Amount To A Request For A Modification Of The PI Order ............................................................................. 16

          a.    The Court Does Not Have Jurisdiction To Modify The Injunction ... 16

          b.    Even If The Court Finds Jurisdiction, There Have Been No Significant Changes In Law Or Fact To Justify Modifying The Injunction ............................................................... 17

               i.    Modification To Include A Presumption Of Release Is Not Warranted ....................................................... 17

               ii.    Modification To Include Terms Relating To Testing, Transfers, Medical Isolation, and Use of Disinfectants Is Not Warranted..... 20

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V.   There Is No Basis For Appointment Of A Special Master ...........................23

CONCLUSION .......................................................................................................25

# TABLE OF AUTHORITIES

## Federal Cases

*A.S.M. v. Warden*,
  2020 WL 2988307 (M.D. Ga. June 3, 2020)...................................................19

*Bank Melli v. Pahlavi*,
  58 F.3d 1406 (9th Cir. 1995) ............................................................5, 6

*Burlington N. v. Dep't of Revenue*,
  934 F.2d 1064 (9th Cir. 1991) ...........................................................23

*Crawford v. Bell*,
  599 F.2d 890 (9th Cir. 1979) ...........................................................18

*Estelle v. Gamble*,
  429 U.S. 97, (1976) ...................................................................18

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ..........................................................3, 4

*Fraihat v. Wolf*,
  No. 20-00590 (C.D. Cal. Mar. 30, 2020)..................................................19

*Franco-Gonzalez v. Holder*,
  2013 WL 8115423 (C.D. Cal. 2013) ......................................................10

*Gates v. Shinn*,
  98 F.3d 463 (9th Cir. 1996) ...........................................................3, 13

*Gayle v. Meade*,
  2020 WL 2086482 (S.D. Fla. Apr. 30, 2020)...............................................10

*Granny Goose Foods, Inc. v. Bhd. of Teamsters*,
  415 U.S. 423 (1974) ....................................................................3

*Hamilton v. Acosta*,
  No. 1:20-cv-21318, 2020 WL 3035350 (S.D. Fla. June 4, 2020)...............................10

*Hook v. Ariz. Dep't of Corr.*,
  107 F.3d 1397 (9th Cir. 1997) ................................................................. 3

*Hoptowit v. Ray*,
  682 F.2d 1237 (9th Cir. 1982) ............................................................... 18

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) .............................................................. 3, 13

*Keller v. Warden*,
  No. 1:16-cv-00613, 2016 U.S. Dist. LEXIS 65109 (E.D. Cal. May 16, 2016) ............. 18

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*,
  478 U.S. 421 (1986) ............................................................................ 23

*McClatchy Newspapers v. Central Valley Typographical Union No. 46*,
  686 F.2d 731 (9th Cir. 1982) ....................................................... 4, 17, 18

*Munoz v. Wolf*,
  No. 5:20-cv-00625 (C.D. Cal. Apr. 2, 2020) ........................................... 19

*Natural Res. Def. Council Inc. v. San Diego Baykeeper, Inc.*,
  242 F.3d 1163 (9th Cir. 2001) ..................................................... 4, 17, 18

*Roman v. Wolf*,
  No. 5:20-cv-00768 (C.D. Cal. June 19, 2020) ......................................... 19

*Rufo v. Inmates of Suffolk County Jail*,
  502 U.S. 367 (1992) ...................................................................... 4, 17

*Schmidt v. Lessard*,
  414 U.S. 473 (1974) ........................................................................... 4

*Self-Ins. Inst. of Am., Inc. v. Software and Info. Ind. Ass'n*,
  208 F. Supp. 2d 1058 (C.D. Cal. 2000) .................................................... 5

*Sharp v. Weston*,
  233 F.3d 1166 (9th Cir. 2000) .............................................................. 4

iv

*Shillitani v. United States*,
   384 U.S. 364 (1966) ..................................................................................2

*Spain v. Procunier*,
   600 F.2d 189 (9th Cir. 1979) ................................................................18

*Stewart v. San Luis Ambulance, Inc.*,
   No. CV1309458BROSSX, 2015 WL 12681650 (C.D. Cal. Aug. 7, 2015)..............9, 11

*Stone v. City and Cty. of San Francisco*,
   968 F.2d 850 (9th Cir. 1992) ..................................................................3

*Swann v. Charlotte-Mecklenberg Bd. of Ed.*,
   402 U.S. 1 (1971) ...............................................................................4, 5

*Trop v. Dulles*,
   356 U.S. 86, (1958) ..............................................................................18

*United States v. Suquamish Indian Tribe*,
   901 F.2d 772 (9th Cir. 1990) ................................................................23

*Wang v. Chinese Daily News, Inc.*,
   231 F.R.D. 602 (C.D. Cal. 2005).............................................................5

*Wells v. Jeffery*,
   No. 03-cv-228, 2006 WL 696057 n.7 (D.D.C. Mar. 20, 2006) .......................5

*Wright v. Rushen*,
   642 F.2d 1129 (9th Cir. 1981) ..............................................................18

## **Federal Statutes**

8 U.S.C. § 1226(c) ......................................................................................10

## **Rules**

Fed. R. Civ. P. 53(a)(3)...............................................................................23

v

Fed. R. Civ. P. 53(a)(1)(C) ................................................................. 23

Fed. R. Civ. P. 53(b)(1) ...................................................................... 23

Fed. R. Evid. 601 ............................................................................. 5, 6

Fed. R. Evid. 602 ............................................................................. 5, 6

Fed. R. Evid. 701 ............................................................................. 5, 6

Fed. R. Evid. 801 ............................................................................. 5, 6

Fed. R. Evid. 802 ............................................................................. 5, 6

## **Websites**

https://www.ice.gov/coronavirus (last visited July 7, 2020) ............................................. 14

**INTRODUCTION**

Since the beginning of the COVID-19 pandemic, U.S. Immigration and Customs Enforcement ("ICE") has acted and continues to act in response to the pandemic. Every immigration detention facility has made robust efforts to prevent COVID-19 and to slow or stop its transmission. The gravamen of Plaintiffs' Motion to Enforce the Preliminary Injunction is not about noncompliance with, or modification of, the preliminary injunction. Plaintiffs are, instead, concerned about the speed with which ICE updates its COVID-19 Pandemic Response Requirements ("PRR"), and they raise grievances about not receiving confirmation that custody redeterminations have been completed, which is not required by the preliminary injunction or any other authority. To these two core grievances, Plaintiffs attached a long list of new allegations unrelated to the preliminary injunction, including allegations concerning testing, transfers, medical isolation, and the use of disinfectants in facilities.

The bottom line is that ICE has done and is doing everything required of it, and Plaintiffs have no basis to introduce a litany of other issues into this case. Plaintiffs' pursuit of those unrelated issues is matched by their submission of more than 20 declarations that raise issues on which Plaintiffs do not even seek enforcement or modification, such as issues concerning social distancing and cleaning, and the provision of masks and soap. However, ICE is acting in all of these areas to stop or slow the spread of COVID-19. First, ICE has reduced its population nationwide by at least 40% since March 1, 2020, which allows for a greater ability for social distancing among detainees. *See* Declaration of Lindsay M. Vick, Ex. 1, Declaration of Tae D. Johnson at ¶ 11. At some facilities the population is at approximately 50% capacity or below, which allows for detainees at those facilities a greater ability to social distance. *See id.* at Ex. 2, Declaration of Gary Chamberlain (Pine Prairie); Ex. 3, Declaration of Kelley Beckhelm (Otay Mesa); Ex. 4, Declaration of Michael Russo (Bergen County Jail); Ex. 5, Declaration of Scott Spurlock (Pulaski County); Ex. 6, Declaration of Patrick Musante (Irwin County Detention Center); Ex. 7, Declaration of Scot Jackson (Farmville); Ex. 8, Declaration of Stephanie Mros

(Caroline Detention Facility); Ex. 9, Declaration of Greg Davies (Aurora Contract Detention Facility); Ex. 10, Declaration of George Sterling (Folkston). Second, ICE is providing ample masks and soap to detainees and has increased the cleaning procedures at its facilities. *See, e.g.*, Ex. 11, Declaration of Alfaro Ortiz (Essex County Correctional Facility); Ex. 12, Declaration of Ron Edwards (Hudson County Department of Corrections); Ex. 13, Declaration of Juan Acosta (El Paso Field Office Area of Responsibility); Ex. 14, Declaration of Andrew Huron (South Texas Immigration Processing Center); Ex. 15, Declaration of Anthony Louis (IAH Secure Adult Detention Facility); Ex. 16, Declaration of Bryan Pitman (Etowah County Detention Center); Ex. 17, Declaration of Melanie White (Orange County Jail); Ex. 23, Declaration of Gary Chamberlain (South Louisiana); *see also* Ex. 24, Demonstrative Chart (rebutting allegations concerning conditions of detention). Simply put, this is not a forum in which Plaintiffs may raise any and all grievances concerning immigration detention. Because Plaintiffs have done so, the Court should deny Plaintiffs' motion to enforce the preliminary injunction order.

## ARGUMENT

Plaintiffs present myriad allegations and a laundry list of additional new evidence and requests concerning ICE's operations and response to COVID-19, but they fail to show any violation of the terms of the preliminary injunction order ("PI Order"), much less clear and convincing evidence of a violation, such that enforcement of the PI Order in this case is warranted. *See* PI Order, ECF No. 132 at 38-39. Nor can Plaintiffs establish this Court's jurisdiction to modify the PI Order as requested in their motion or demonstrate new facts to warrant any modification.

### I.   Legal Standards

#### a.   Enforcement Of A Preliminary Injunction

Courts have the power to impose compliance with their lawful orders. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have

inherent power to enforce compliance with their lawful orders through civil contempt."). And while the parties agree on this, Plaintiffs' motion is silent on the high burdens they must meet to prevail on their enforcement motion. Such motions are assessed under the clear and convincing standard. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (a "party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence.") (citation omitted); *see also Stone v. City and Cty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." (citations omitted)). The Court has broad discretion to hold a party in contempt. *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997).

Further, a showing of non-compliance is not enough to compel an enforcement action. First, "[s]ubstantial compliance with the court order is a defense to contempt." *In re Dual-Deck*, 10 F.3d at 695 (quotation marks omitted). Second, where a party's failure to comply with a preliminary injunction order was based on a good faith and reasonable interpretation of the court's order, holding a party in contempt is not warranted. *See In re Dual-Deck*, 10 F.3d at 695. Following from that principle, an order by a district court is not enforceable by contempt if the order is not clear and specific. *See Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996) ("If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt."); *see also Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086–87 (9th Cir. 2004) ("[O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.") (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 444 (1974)) (internal citation omitted). "[T]he specificity provisions of Rule 65(d) are not mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to

be understood." *Fortyune*, 364 F.3d at 1087 (citing *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974)).

### b.  Modification Of A Preliminary Injunction

A district court has authority to enforce its own injunction and retains "jurisdiction during the pendency of an appeal to act to preserve the status quo." *Natural Res. Def. Council Inc. v. San Diego Baykeeper, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (where the court found that enforcing an obligation was within the court's jurisdiction while the case was on appeal because, as it was part of the court's orders, doing so would "not materially alter the status of the case."). The Ninth Circuit has cautioned, however, that this rule "does not restore jurisdiction to the district court to adjudicate anew the merits of the case" and that any action taken pursuant to it "may not materially alter the status of the case on appeal." *Id.* (citations and quotation marks omitted); *see also McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 735 (9th Cir. 1982) (after appeal is filed, the district court "may not finally adjudicate substantial rights directly involved in the appeal") (quotations omitted).

A party seeking modification of an injunction may meet its initial burden by showing a significant change either in factual conditions or in law. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992); *see also Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction.") (citation omitted). "If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383. A court's equitable remedial powers are not automatic or unbounded. *See Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) ("Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary."). Courts have held that such power is

4

available only where there is an overwhelming record of prolonged—and often undisputed—noncompliance with a court order. *Id*. Even where noncompliance is clear, the court's power is limited to redressing the proven violation. *Swann*, 402 U.S. at 15 ("[T]he nature of the violation determines the scope of the remedy.").

## II. The Court Should Give No Weight To Plaintiffs' Hearsay Declarations.

Plaintiffs rely on the declarations of 29 detainees, advocates, and purported experts in support of their motion. The Court should accord no weight to the declarations for which declarants lack personal knowledge, fail to lay a proper foundation for an assertion, or provide statements based on hearsay. *See* Fed. R. Civ. P. 56 (c)(4); Fed. R. Evid. 801–802; Fed. R. Evid. 601–602; Fed. R. Evid. 701; *see also Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 615 (C.D. Cal. 2005) (sustaining hearsay objection to declaration statement); *Bank Melli v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (a declaration not made on personal knowledge is entitled to no weight); *Self-Ins. Inst. of Am., Inc. v. Software and Info. Ind. Ass'n*, 208 F. Supp. 2d 1058, 1063–64 (C.D. Cal. 2000) (affirming defendants' objections over (1) a declarant's statements about third persons being "confused" for lack of personal knowledge and (2) statements about "calls to myself and to my staff" from clients because the statements in these calls are inadmissible hearsay); *Wells v. Jeffery*, No. 03-cv-228, 2006 WL 696057, at *3 n.7 (D.D.C. Mar. 20, 2006) ("The affidavit or declaration cannot contain hearsay evidence, as such evidence would not be admissible at trial."). Here, at least 20 out of 29 of the declarations filed by Plaintiffs are based on hearsay and contain only vague and nonspecific references to events and conduct that is impossible to verify. *See* ECF No. 172-4, Declaration of Allyson Page; ECF No. 172-5, Declaration of Anne Rios; ECF No. 172-6, Declaration of William Lienhard; ECF No. 172-7, Declaration of Charlie Flewelling; ECF No. 172-11, Declaration of Jessica Schneider; ECF No. 172-12, Declaration of Jessica Myers Vosburgh; ECF No. 172-13, Declaration of Julie Pasch; ECF No. 174, Declaration of Andrea Saenz; ECF No. 175, Declaration of Katherine Russell; ECF No. 176, Declaration of Keren Zwick; ECF No. 177, Declaration of Kyle

Edgerton; ECF No. 178, Declaration of Laura Lunn; ECF No. 179, Declaration of Laura Rivera; ECF No. 180, Declaration of Linda Corchado; ECF No. 181, Declaration of Lindsay Bailey; ECF No. 182, Declaration of Liza Doubossarskaia; ECF No. 184, Declaration of Maria del Pilar Gonzalez Morales; ECF No. 185, Declaration of Mark Feldman; ECF No. 188, Declaration of Shyrissa Dobbins; and ECF No. 190, Declaration of Wendy King.

While most of Plaintiffs' declarations are based on hearsay, Defendants' declarations are based on the personal knowledge of the declarant who is physically at the detention facility in question. Therefore, Defendants' declarations should be accorded greater weight than Plaintiffs' declarations. *See* Fed. R. Civ. P. 56 (c)(4); Fed. R. Evid. 801–802; Fed. R. Evid. 601–602; Fed. R. Evid. 701; *see also Bank Melli*, 58 F.3d at 1412 (a declaration not made on personal knowledge is entitled to no weight). At the very least, Defendants' declarations demonstrate Defendants' substantial compliance with the PI Order. Therefore, the Court should give no weight to Plaintiffs' declarations.

**III.   Plaintiffs Fail To Show That Defendants Have Violated Any Provision Of The PI Order.**

### a. Plaintiffs Have Not Shown Clear And Convincing Evidence Of A Violation Of The PI Order Concerning Custody Redeterminations

Plaintiffs fail to demonstrate by clear and convincing evidence that Defendants are in violation of the PI Order as it relates to custody redeterminations. They argue that the custody redetermination process lacks meaningful review because they do not receive confirmation of the custody redetermination decision, even though no such confirmation is required. They also argue that Defendants are carrying out the custody redetermination process in violation of the PI Order because more detainees have not been released and because of ICE's position that detainees subject to mandatory detention are not eligible for discretionary release. Ultimately, Plaintiffs contend that Defendants fail to consider risk

factors as a "significant discretionary factor" weighing in favor of release. Such arguments are unavailing. Pls.' Mot. to Enforce at 16-17.

The PI Order requires that ICE:

> make timely custody determinations for detainees with Risk Factors, per the latest Docket Review Guidance. In making their determinations, Defendants should consider the willingness of detainees with Risk Factors to be released, and offer information on post-release planning, which Plaintiffs may assist in providing.

PI Order at 38. ICE's Docket Review Guidance, dated April 4, 2020, which is incorporated into ICE's PRR, revised June 22, 2020, indicates that the presence of a risk factor "should be considered a significant discretionary factor weighing in favor of release." Declaration of Timothy P. Fox, Ex. 14 at 123 ("Revised PRR"). Since the PI Order was issued, ICE has continued to comply with this requirement.[1] Contrary to Plaintiffs' arguments, neither the PI Order nor ICE's guidance contemplate a *Fraihat* release request process wherein a detainee can request a custody redetermination pursuant to *Fraihat* and is entitled to receive a decision—complete with the officer's findings and rationale—within a certain period of time. Pls.' Mot. to Enforce at 16-21. Instead, the PI Order requires that ICE "timely" render custody redeterminations in accordance with the expanded list of risk factors. The Court clarified that "timely" meant that ICE should conduct the custody redeterminations almost

---

[1] *See, e.g.*, Johnson Decl. ¶ 34; Declaration of Ada Rivera ¶ 28; Pitman Decl. at ¶¶ 41-42 (confirming that the facility has complied, and continues to comply, with the custody redetermination requirement for *Fraihat* subclass members); Chamberlain Decl. at ¶¶ 36-37 (same); Beckhelm Decl. at ¶¶ 11, 24 (same); Spurlock Decl. at ¶ 4 (same); Acosta Decl. at ¶¶ 7-8 (same); Musante Decl. at ¶¶ 23-24 (same); Louis Decl. at ¶ 7 (same); Vega Decl. at ¶¶ 5-6 (same); Jackson Decl. at ¶ 6 (same); Mros Decl. at ¶ 9 (same); Declaration of Liana Castano, Ex. 18 at ¶¶ 4-6  (Krome Service Processing Center and Glades County Detention Center) (same); Declaration of Rolney Rodriguez, Ex. 19 at ¶¶ 5-6 (Catahoula and Richwood Correctional Centers); Huron Decl. ¶¶ 7, 18 (same); Declaration of Cardell Smith, Ex. 20 at ¶¶ 5-7 (Baker and Wakulla County Detention Centers); Declaration of Juan Lopez Vega, Ex. 21 at ¶¶ 5-6 (Broward Transitional Center).

immediately after issuance of the PI. *See* ECF No. 150 at 6. ICE has fully complied with the requirement that it conduct a custody redetermination for each detainee with a qualifying risk factor and that it conduct a custody redetermination for new or additional subclass members within five days of coming into ICE custody. *See* Johnson Decl. ¶ 34; Rivera Decl. ¶ 28.

Moreover, Plaintiffs' contention that the custody redetermination process lacks meaningful review is unavailing. Again, nothing in the PI Order requires ICE to provide detainees or their advocates with a decision on, or confirmation of, the custody redetermination, nor does anything require that ICE identify the factors considered or the officer's rationale and analysis. ECF No. 132 at 38-39; ECF No. 150 at 6. That some offices convey the custody redetermination decision quickly or not at all is not evidence, much less clear and convincing evidence, of a violation of the PI Order. *See* Pls.' Mot. to Enforce at 18. Similarly, that different ICE offices permit submission of custody redetermination requests, and that there are variations in these practices, is not evidence that Defendants are in violation of the PI Order. *See* Pls.' Mot. to Enforce at 20. While there may be variances in the way that some offices handle these requests, and potentially issues related to the handling of a particular request, *see* Pls.' Mot. to Enforce at 21, such information is not clear and convincing evidence of a nationwide PI violation.

Furthermore, that a certain number of subclass members have or have not been released is not evidence of a violation of the PI Order. The PI Order requires ICE to conduct timely custody redeterminations, it does not require the outright release of any subclass members or a certain number of subclass members. *See* PI Order at 38. In addition, Plaintiffs' arguments concerning the release lists produced in discovery are off base. ICE is unable to identify detainees who were released solely based on the custody redetermination under the *Fraihat* PI Order. Everyone released after the PI Order was issued in this case would have received a *Fraihat* custody redetermination, regardless of

the mechanism or condition for release, such as parole, order of recognizance, release on bond, or order of supervision, etc. *See* Johnson Decl. ¶ 34; Rivera Decl. ¶ 28.

Plaintiffs' claim that the number of subclass members is likely "much higher" is similarly off base and does not demonstrate noncompliance with the PI Order. Specifically, Plaintiffs argue that the absence of named plaintiffs Jose Baca-Hernandez and Alex Hernandez from the list of current detainees indicates that Defendants are violating the PI Order. Not so. Information pertaining to Mr. Baca-Hernandez and Mr. Hernandez does not appear on the spreadsheets because it is protected by statute and therefore redacted under the terms of the protective order in this case. *See* ECF No. 154 at 3, Stipulated Protective Order ("Defendants also note that disclosure in discovery in this action may involve information covered by various statutory and regulatory confidentiality provisions that may limit or prohibit their disclosure in this action."). Plaintiffs also argue that Defendants have violated the PI Order by failing to include named plaintiff[2] Ruben Mencias Soto on the list of current detainees with risk factors. However, he does not appear on the list of detainees with risk factors because it was determined, after the medical provider reviewed Mr. Mencias Soto's medical file, that he did not have one of the court-identified risk factors.[3]

---

[2] Mr. Mencias Soto is a Named Plaintiff in the Complaint in this case, but he is not listed as a Named Plaintiff for purposes of the PI. *See generally* Compl., ECF No. 1.

[3] During the meet and confer process, Plaintiffs failed to raise the issue of certain named plaintiffs and class members not appearing on the spreadsheets of current detainees, even though they had received that information in discovery. This is an example of one of several issues that Plaintiffs could have raised during the meet and confer process so that the parties could have resolved more issues without unnecessarily occupying the time of the Court. *See Stewart v. San Luis Ambulance, Inc.*, No. CV1309458BROSSX, 2015 WL 12681650, at *1 (C.D. Cal. Aug. 7, 2015) ("The purpose of Local Rule 7-3 is to foster the informal resolution of legal issues without court intervention and to permit the parties to brief whatever issues remain in a thoughtful, concise, and useful manner.") (internal quotation marks omitted).

Plaintiffs further contend that Defendants' position regarding the effect of mandatory detention pursuant to 8 U.S.C. § 1226(c) is a violation of the PI Order concerning custody redeterminations for at risk subclass members. Because the PI Order does not require the release of any particular detainee or group of detainees, ICE's position that detainees subject to mandatory detention may not be released after a *Fraihat* custody redetermination is not a violation of the PI Order. ICE's docket review guidance, issued April 4, 2020, and incorporated into the revised PRR, provides that while the presence of a risk factor should be a "significant discretionary factor" weighing in favor of release, noncitizens detained pursuant to 8 U.S.C. § 1226(c) "may not be released in the exercise of discretion." ECF No. 121-4 at 2. ICE must detain a noncitizen subject to detention under § 1226(c) for having committed or having been convicted of certain criminal offenses, and such noncitizens are not eligible for discretionary release. *See Hamilton v. Acosta*, No. 1:20-cv-21318, 2020 WL 3035350, at *1 (S.D. Fla. June 4, 2020), *adopting report and recommendation* 2020 WL 3036782 (May 8, 2020) ("However, a mandatory detainee would not be eligible for release even if their detainment violated his or her Fifth and Eighth Amendment rights. . . . Therefore, due to his mandatory detainee status, he is not eligible for the relief he seeks."); *see also Gayle v. Meade*, No. 20-21553, 2020 WL 2086482, at *7 (S.D. Fla. Apr. 30, 2020) ("mandatory detainees" are not eligible for transfer even though the court found confinement for detainees with severe medical conditions violated their Fifth and Eighth Amendment rights).

Moreover, Plaintiffs' contention that Defendants violate the PI Order by applying an "unnecessarily stringent" definition of "severe psychiatric illness" to that particular risk factor is unavailing. Pls.' Mot. to Enforce at 22. The PI Order did not set forth a definition of "severe psychiatric illness," nor did it analyze what this may or may not include. *See* PI Order at 21 & n.20, 22 & n.21. Thus, it was reasonable for ICE to adopt the definition borne out of the litigation in *Franco-Gonzalez v. Holder*, 2013 WL 8115423 (C.D. Cal. 2013). Plaintiffs contend that post-traumatic stress disorder, depression, and anxiety should

be included in the definition of "severe psychiatric illness"; however, they fail to establish why such common mental illnesses are sufficiently severe to qualify as "severe psychiatric illnesses." Pls. Mot. to Enforce at 22. Finally, neither Plaintiffs nor their purported expert— the source of Petitioners' proposed list of risk factors—ever sought any greater specificity for "severe psychiatric illness" as a risk factor in their original motion for preliminary injunction. *See* Pls.' Mot. for Prelim. Injunction, ECF No. 81 at 6 & n. 9; Declaration of Dr. Carlos Franco Paredes, ECF No. 81-12 at 2-3.  In the absence of such specificity then, they should not be permitted to seek a contempt order against Defendants now.

### b. Plaintiffs' Contentions Concerning The Revised PRR Are Not Clear And Convincing Evidence Of A Violation Of The PI Order

Plaintiffs have not demonstrated any violation of the PI Order concerning the revised PRR.[4] Plaintiffs submit a wish list of terms they believe the revised PRR should include along with supporting declarations from purported experts. *See* Pls.' Mot. to Enforce at 5, 13-14 (arguing that ICE should have included in the PRR terms addressing, *inter alia*, testing and corresponding protocols, transfers, screening, medical isolation, proper use of disinfectant, and release of all people with risk factors); *see also* ECF No. 172-10, Third Supplemental Declaration of Dr. Homer Venters at ¶¶ 7, 43-47; Declaration of Susi

---

[4] The Court should not consider Plaintiffs' allegations regarding the revised PRR because Plaintiffs never met and conferred regarding the allegedly deficient contents of it—indeed, Plaintiffs' motion was filed two days after publication of the revised PRR. *See* Revised PRR. Further, Plaintiffs' complaint about the timing of issuance of the revised PRR, *see* Pls.' Mot. at 1 (accusing Defendants of deploying an "ambush strategy"), lacks merit. Defendants informed Plaintiffs that the revised PRR was in progress and that the agency was actively working through the revisions, *see* Fox Decl. Ex. 2 at 4, as reflected in Defendants' discovery responses, *see* Vick Decl. at ¶ 2. The purpose of these rules is to aide Defendants by informing them of Plaintiffs' contentions and aide the Court by giving the parties an opportunity to resolve disputes without seeking redress from the Court on every single issue. *See Stewart*, 2015 WL 12681650, at *1 ("The purpose of Local Rule 7-3 is to foster the informal resolution of legal issues without court intervention and to permit the parties to brief whatever issues remain in a thoughtful, concise, and useful manner." (internal quotation marks omitted)).

Vassallo, M.D. at ¶¶ 22-34. That wish list, however, does not establish Defendants' noncompliance with the PI Order.

The PI Order directed Defendants to revise the PRR to "define the minimum acceptable detention conditions for detainees with the Risk Factors." PI Order at 38. By issuing a revised PRR, Defendants satisfied the injunction. The "PRR builds upon previously issued guidance and sets forth specific mandatory requirements to be adopted by all detention facilities, as well as recommended best practices, to ensure that detainees are appropriately housed and that available mitigation measures are implemented during this unprecedented public health crisis." Revised PRR at 108. Further, the "PRR has accordingly been updated to define the 'minimum acceptable detention conditions for detainees with risk factors.'" *Id.* at n.2. ICE's revised PRR includes, *inter alia*, the following revisions in compliance with the PI Order:

> 1) New intakes into ICE custody at dedicated ICE detention facilities will be evaluated within five days to determine if the detainee falls within the populations identified by the CDC as potentially being at higher risk for serious illness from COVID-19 and/or the *Fraihat v. ICE* subclasses.
> 2) Detainees at ICE dedicated facilities who claim to fall within the populations identified by the CDC as potentially being at higher risk for serious illness from COVID-19 should be evaluated within five days, and the ERO Field Officer Director and Field Medical Coordinator notified within 12 hours of determining whether the detainee meets the criteria.
> 3) The ERO PRR identifies additional populations potentially at higher risk for serious illness from COVID-19 (e.g., severe psychiatric illness, pregnancy, autoimmune diseases, and persons of all ages with a physical or mental impairment that substantially limits one or more major life activities).
> 4) If isolating of ill detainees as a group is unavoidable, make all possible accommodations until transfer occurs to prevent transmission of other infectious diseases to the higher-risk individual (e.g., allocate more space for a higher-risk individual within a shared isolation room).
> 5) Compliance measures are added to explain how ICE will ensure ICE detention facilities comply with ERO PRR requirements.

Revised PRR at 106, 124. As with ICE's original PRR, ICE developed this guidance in consultation with the CDC, and ICE will continue to revise and update its procedures as new and additional information becomes available. *See id.* at 108; *see also* Johnson Decl. at ¶¶ 14, 27, 38 ("ICE will continue to update its PRR guidance as additional information and best practices are identified throughout this pandemic."). By issuing the revised PRR, ICE has substantially complied with the PI Order. *See In re Dual-Deck*, 10 F.3d at 695. Thus, Plaintiffs have failed to show by clear and convincing evidence that such revisions are a violation of the PI Order.

Moreover, the PI Order did not require ICE to include in its supplemental PRR provisions concerning any of the particular aspects of detention that Plaintiffs now demand must be addressed therein. *See* PI Order at 38. Instead, the PI Order left the minimum standard and aspects of detention for ICE to create and implement at its own discretion. Without more description of any required conduct, this provision of the PI Order is not enforceable by contempt. *See Gates*, 98 F.3d at 468 ("If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt."). Plaintiffs attempt to treat the revised PRR as a catchall for items not specifically addressed in the PI and as requiring ICE to address any other aspect of detention that they raise during this litigation as a violation of the PI. However, the long list of issues that Plaintiffs complain about in their Motion, to include testing, transfers, medical isolation, and use of disinfectants, are not issues specifically addressed or even mentioned in the PI Order, and therefore, ICE should not be held in contempt of the PI Order for not including those topics in the PRR. *See* Pls.' Mot. to Enforce at 5, 13-14.

Plaintiffs contend throughout their motion that Defendants are in violation of the PI Order to "promptly" issue a supplemental PRR. *See* Pls.' Mot. to Enforce at 1, 4-5. But ICE's issuance of the revised PRR moots that argument, and Defendants are not liable for contempt merely because Plaintiffs' interpretation of the otherwise undefined term "promptly" differs from Defendants'. Plaintiffs further contend that "the exponentially

increasing rate of COVID-19 cases in ICE detention confirms the dire consequences of Defendants' unreasonable delays." Pls. Mot. to Enforce at 4. However, any increase in coronavirus cases is not evidence that ICE has violated the PI Order or that modification of the PI Order is warranted. Indeed, coronavirus cases have spiked in different areas of the country and in other correctional settings, but detention facilities that have had positive cases have also seen rates of infection go down or eliminate COVID-19 in the facility altogether. *See* "ICE Detainee Statistics," U.S. Immigration and Customs Enforcement, https://www.ice.gov/coronavirus (last visited July 7, 2020) (chart showing confirmed cases currently under isolation or monitoring compared with total confirmed case reflecting which facilities have seen a decrease in cases, such as Pulaski County and Prairieland Detention Facility); *see, e.g.*, Edwards Decl. 20 (as of June 29, 2020, there have been no new positive test results in six weeks, and a total of 17 ICE detainees have tested positive for COVID-19).

Plaintiffs also contend that a DHS OIG report confirms the purported dangers posed by Defendants' alleged noncompliance with the PI Order in this case. Pls.' Mot. to Enforce at 5; Fox Decl., Ex. 17. They note some of the OIG's conclusions, Pls.' Mot. to Enforce at 5, but ignore other portions of the report in which the OIG credited the efforts ICE has taken to prevent and mitigate the pandemic's spread in detention facilities, noted that the facilities have contingency plans to ensure continued operations and concluded that "almost all facility personnel stated they were prepared to address COVID-19." Fox Decl., Ex. 17 at 163. The OIG also explained that the "report's limited objective and scope, given it is based on a survey, was not intended to provide an in-depth assessment of ICE's ability to manage the pandemic in its detention facilities." *Id.* at 178. Not only did the OIG indicate that a more in-depth report was forthcoming, but the OIG explained that its office "did not verify the accuracy of survey responses, requested a shorter comment period, and made no

recommendations." *Id.* Accordingly, Plaintiffs have not shown that the revised PRR violates the PI Order.

### c. Plaintiffs' Have Not Shown Clear and Convincing Evidence Of A Violation Of The PI Order Concerning Monitoring Of The PRR

ICE continues to monitor and revise its procedures in response to the evolving coronavirus pandemic, and Plaintiffs have not and cannot demonstrate clear and convincing evidence of a violation of the PI Order in this respect. In the revised PRR, ICE added a section explaining how ICE will conduct bi-weekly spot checks at detention facilities during the COVID-19 pandemic. Specifically, the revised PRR provides:

> To ensure that detention facilities comply with the detention requirements set forth in the ERO PRR, ICE will conduct bi-weekly spot checks at over 72-hour ICE detention facilities during the COVID-19 pandemic. Upon identification of a deficiency, ICE will provide written notice to the facility and allow seven business days for submission of a corrective action plan to ICE for approval. Life/safety issues identified by ICE will be corrected during the COVID-19 spot checks, if possible, or the facility will be required to submit a corrective action plan within three business days.

Indeed, ICE has already begun conducting these spot checks, and, as Plaintiffs' acknowledge, Defendants have produced numerous documents relating to them as part of the discovery into ICE's compliance with the PI Order in this case. *See* Fox Decl. at ¶ 3, Exs. 9-12, 15-16 (attaching as exhibits spot check questionnaires for several facilities); *see also* Johnson Decl. at ¶ 36.

That the questionnaires do not collect information concerning certain topics, such as testing, does not mean that Defendants are in violation of the PI Order. And Plaintiffs' conclusory allegations about ICE's monitoring of the PRR certainly are not clear and convincing evidence of a violation. Defendants have produced over a thousand pages of checklists and questionnaires that ICE completed over the past several weeks for numerous facilities as part of the agency's efforts to comply with the PI Order that it monitor and

15

enforce the PRR. *See* Vick Decl. at ¶ 2. Therefore, Defendants have substantially complied with the PI Order with respect to monitoring and enforcement.

## IV.   Plaintiffs' Requests Amount To A Request For A Modification Of The PI Order

While Plaintiffs include the legal standards for modification in their motion, they never explicitly seek modification in their motion or explain which topic may qualify as a modification. *See generally* Pls. Mot. to Enforce. Any argument not explicitly set forth in Plaintiffs' Motion or subsequent specific request for modification should be deemed waived. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review."); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief"); *Klein v. City of Laguna Beach*, 983 F. Supp. 2d 1162, 1169–70 (C.D. Cal. 2013) ("For the first time in his reply brief, Mr. Klein raises a third basis in support of his request for attorneys' fees: California's catalyst theory. Because this theory was not raised in Mr. Klein's opening brief, the Court declines to consider it"); *Hill v. Opus Corp.*, 464 B.R. 361, 371 n.34 (C.D. Cal. 2011) (refusing to consider an argument raised for the first time in reply). Even if Plaintiffs' request for modification of the PI is not waived, the Court lacks jurisdiction to modify the PI according to Plaintiffs' proposed terms because such modification would alter the status quo concerning issues on appeal. Finally, even if the Court has jurisdiction to modify the PI Order, Plaintiffs fail to justify the need for modification.

### a.  The Court Does Not Have Jurisdiction To Modify The Injunction

Here, the Court issued the PI Order on April 20, 2020, and Defendants timely filed a notice of appeal of the PI Order and class certification order on June 19, 2020. *See* ECF No. 1-1, *Fraihat, et al. v. ICE, et al.*, No. 20-55634 (9th Cir.). Thus, the Court continues to have jurisdiction to enforce the PI Order, but only in a manner that maintains the status

quo. *See Nat. Res. Def. Council,* 242 F.3d at 1166; *McClatchy Newspapers*, 686 F.2d at 734. The ways in which Plaintiffs contend the PI Order must be enforced—to include incorporating a presumption of release and mandates concerning testing, transfers, medical isolation, and use of disinfectants among other topics—are all aspects of ICE detention that are not currently included in the PI Order. To modify the PI Order now, after a notice of appeal has been filed, to include any one of Plaintiffs' new requests would alter the status quo and further delve into two issues on appeal—the propriety of class certification and the merits of ICE's response to COVID-19. ICE has already gone to great lengths to quickly revamp its procedures concerning detainees who are medically vulnerable to COVID-19, custody redeterminations for at risk detainees, and publication of a supplemental PRR to comply with this Court's PI Order. Any new requirements unrelated to the provisions of the PI Order would ultimately alter the status quo.

### b. Even If The Court Finds Jurisdiction, There Have Been No Significant Changes In Law Or Fact To Justify Modifying The Injunction

ICE continues to monitor and revise its response to the evolving coronavirus pandemic, and Plaintiffs have failed to meet their burden of establishing a "significant change in facts or law" that warrants modification or revision of the PI Order. *See Rufo*, 502 U.S. at 383. Notwithstanding the delay in revising the PRR, there is no evidence that Defendants have failed to comply or that compliance is long-lasting or ongoing such that modification is warranted. Defendants' response here shows that Plaintiffs' motion is woefully unsupported.

#### i. Modification To Include A Presumption Of Release Is Not Warranted

By citing to the legal standard for modification in a footnote, Plaintiffs argue that the Court should modify the PI Order to include a presumption of release to achieve the purposes of the original injunction. *See* Pls.' Mot. to Enforce at 24 & n.29. Release is not an appropriate remedy in this case, which primarily involves conditions-of-confinement

claims under the Fifth Amendment. The appropriate remedy, if any, to Plaintiffs' conditions-of-confinement claims is "a judicially mandated change in conditions," not release. *Crawford v. Bell*, 599 F.2d 890, 891-92 (9th Cir. 1979). To determine whether a condition of detention merits relief under the Fifth Amendment, courts look to Eighth Amendment standards. *See Keller v. Warden*, No. 1:16-cv-00613-EPG-PC, 2016 WL 2866434, *4 (E.D. Cal. May 17, 2016). This in turn requires the Court to look at each challenged condition and the reason or cause behind it. *Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981), (citing *Trop v. Dulles*, 356 U.S. 86, 101, (1958), *quoted in Estelle v. Gamble*, 429 U.S. 97, 102, (1976)); *Spain v. Procunier*, 600 F.2d 189, 196 (9th Cir. 1979); *see also Keller* at *3. In identifying a constitutional violation, the Court "must identify specific conditions that fail to meet [the Constitution's] requirements." *Hoptowit v. Ray*, 682 F.2d 1237, 1247 (9th Cir. 1982). "[E]qually importantly, in tailoring a proper remedy, [a court] must analyze each claimed violation in light of these requirements." *Id.* Thus, "only the specific conditions that violate the Constitution may be remedied, and *the remedy may be only so much as is required to correct the specific violation.*" *Id.* (emphasis added).

In this respect, Plaintiffs argue in a conclusory manner that Defendants' purported "slow-walk approach" and "lax enforcement of performance standards" warrants a modification of the PI Order to include a presumption of release for custody redeterminations. Pls.' Mot. to Enforce at 24. The Court should reject that argument. First, such a requirement would fundamentally alter the status quo, and the Court does not have jurisdiction to make such a modification given the pending appeal of the PI Order in this case. *See Nat. Res. Def. Council,* 242 F.3d at 1166; *McClatchy Newspapers*, 686 F.2d at 734. Second, none of Plaintiffs' arguments or evidence submitted in support of their motion supports a modification of the PI Order to include a presumption of release. There has been no significant change in the facts or law concerning this litigation to justify such a fundamental change to the relief granted in the PI Order because ICE has been responding, and continues to respond, to the evolving nature of the pandemic. *See, e.g.*, Chamberlain

18

Decls.; Beckhelm Decl.; Russo Decl.; Spurlock Decl.; Musante Decl.; Jackson Decl.; Mros Decl.; Davies Decl.; Sterling Decl.; Ortiz Decl.; Edwards Decl.; Acosta Decl.; Huron Decl.; Louis Decl.; Pitman Decl.; White Decl.; *see also* Ex. 24, Demonstrative Chart (rebutting allegations concerning conditions of detention). In addition, many *Fraihat* subclass members are already parties to other litigation, including other class actions, seeking their release from immigration detention. *See Munoz v. Wolf*, No. 5:20-CV-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020) (individual habeas case in which *Fraihat* Named Plaintiff Munoz was ordered released); *Fraihat v. Wolf*, EDCV 20-00590 TJH (KSx) (C.D. Cal. Mar. 30, 2020) (individual habeas case in which *Fraihat* named plaintiff Fraihat was ordered released); *see also Roman, et al. v. Wolf*, 5:20-cv-00768 (C.D. Cal. June 19, 2020) (order in habeas class action brought on behalf of immigration detainees, some of whom are *Fraihat* subclass members, at the Adelanto ICE Processing Center allowing for a process for the filing and consideration of individualized bail applications for *Roman* class members); *A.S.M. v. Warden*, --- F. Supp. 3d ---, 2020 WL 2988307 (M.D. Ga. June 3, 2020) (denying release of a group of habeas petitioners, including Named Plaintiff Aristotles Sanchez Martinez).

Plaintiffs have not shown a significant change in the facts or law that would warrant such a fundamental modification to the PI Order in this case. ICE is complying with the mandate that it conduct custody redeterminations for subclass members. *See, e.g.*, Johnson Decl. ¶ 34; Rivera Decl. ¶ 28; Pitman Decl. at ¶¶ 41-42; Chamberlain Decl. at ¶¶ 36-37; Beckhelm Decl. at ¶¶ 11, 24; Spurlock Decl. at ¶ 4; Acosta Decl. at ¶¶ 7-8; Musante Decl. at ¶¶ 23-24; Louis Decl. at ¶ 7; Vega Decl. at ¶¶ 5-6; Jackson Decl. at ¶ 6; Mros Decl. at ¶ 9; Castano Decl. at ¶¶ 4-6 ; Rodriguez Decl. at ¶¶ 5-6; Huron Decl. ¶¶ 7, 18; Smith Decl. at ¶¶ 5-7; Vega Decl. at ¶¶ 5-6. Furthermore, ICE has refuted many of the conditions of confinement allegations in Plaintiffs' declarations, rendering these allegations and declarations, which were already based entirely on hearsay, less credible and entitled to little if any weight. *See, e.g.*, Chamberlain Decls.; Beckhelm Decl.; Russo Decl.; Spurlock

Decl.; Musante Decl.; Jackson Decl.; Mros Decl.; Davies Decl.; Sterling Decl.; Ortiz Decl.; Edwards Decl.; Acosta Decl.; Huron Decl.; Louis Decl.; Pitman Decl.; White Decl.; *see also* Ex. 24, Demonstrative Chart (rebutting allegations concerning conditions of detention). Therefore, Plaintiffs' motion falls woefully short of meeting the standard for such a fundamental modification of the PI Order in this case where relief in the form of release from detention is inappropriate.

### ii.   Modification To Include Terms Relating To Testing, Transfers, Medical Isolation, and Use of Disinfectants Is Not Warranted

In addition to the jurisdictional limitations on modification given the pending appeal, the factual record supporting modification of the injunction by adding provisions regarding testing, transfers, medical isolation, and use of disinfectants—even if permissible—is woefully inadequate. First, the PI Order does not require anything specific to these topics, and therefore any revision of the PI Order to include these topics would impermissibly modify it. Second, ICE is acting and already has procedures in place to address testing, transfers, and medical isolation. In light of what ICE is already doing in these areas, there is no factual basis upon which Plaintiffs have justified the need for modification of the injunction.

With respect to testing, ICE has tested nearly 46% of the ICE detained population—far exceeding the 19% that BOP has tested and the testing of many state institutions. Johnson Decl. at ¶ 21. ICE has recently gained access to additional rapid testing machines and has expanded its lab-based testing capabilities at many facilities. *Id.* at ¶¶ 12, 21. Beginning June 4, 2020, all ICE IHSC-staffed facilities began testing detainees during the intake screening process for COVID-19.  *Id.* at ¶ 16. Detainees are medically isolated using CDC criteria based on symptoms and test results, and detainees are released from isolation to general population only after clearing through either a testing or time-based method. *Id.* ICE adheres to CDC guidance as it adapts to the recommendations for universal testing and ICE has initiated several pilot efforts, in conjunction with its partners, to test larger

groups of detainees at select facilities in order to evaluate the operational factors of expanded testing. *Id.* at ¶ 18. As testing capabilities continue to improve throughout the United States, ICE continues to expand its testing of detainees to include expanded testing of new intakes, saturation testing, and testing at transfer, removal and/or release where possible at various locations and continues to work with service providers to make improvements in this area.  *Id.* at ¶ 20.

With respect to transfers, ICE confirms prior to transfer that the detainee does not pose a threat of illness to others and notifies local health authorities of those detainees who require ongoing monitoring. *Id.* at ¶ 8; Rivera Decl. at ¶ 8. Only those who have been cleared of COVID-19 by either a test or time-based protocol may be transferred. Johnson Decl. at ¶ 9. Most ICE transfers are the result of 1) transferring detainees from short-term under 72-hour holding facilities after arrest, to longer-term detention facilities; 2) transferring to increase social distancing opportunities or because of a lack of new intake capability in a particular geographical location; and 3) to stage individuals prior to their departure from the United States. *Id.* at ¶ 10. ICE continues to update its COVID-19 transfer checklist and PRR guidance as additional information and best practices are identified throughout this pandemic. *Id.* at ¶ 14.

With respect to medical isolation, detainees who are positive for COVID-19 and symptomatic are medically isolated, preferably in single cells, in order to prevent the spread of infectious diseases within the general population. *Id.* at ¶ 22. Facilities have been forced to utilize all their available housing space as needed to accommodate CDC requirements for medical isolation. Rivera Decl. at ¶ 20. A health assessment is provided to detainees prior to placement in medical isolation or cohorting and sick call is offered on a daily basis. Johnson Decl. at ¶ 24. In addition, monitoring is completed once or twice a day to include vital signs and oxygen saturation, for symptomatic COVID-19 positive or exposed cases. *Id.* at ¶ 24. The use of segregated housing units  may be necessary at times, depending on the circumstances at a facility to ensure that detainees are properly isolated, quarantined,

or otherwise protected from contracting or spreading the disease. *Id.* at ¶ 26. ICE continues to update its policies and guidance as additional information and best practices are identified to ensure that use of segregation is used only as a last resort, and when no other options are available. *Id.* at ¶ 27. ICE will explore options for making the segregation unit environment more akin to medical isolation in locations where this is identified as an issue. *Id.* ICE anticipates that future revisions of the PRR will include updates in this area. *Id.* In instances where administrative segregation must be used to medically isolate or quarantine an individual, medical professionals routinely visit and make rounds in the area as they would the medical housing unit and the services for these individuals are to be consistent with those in general population except for safety measures that may be needed to prevent or reduce the spread of the virus. *Id.* at ¶ 28.

Finally, with respect to the use of disinfectants or cleaning chemicals that Plaintiffs allege may be harmful, ICE is investigating those claims, which are a subject of other litigation in this District. *See Moreno, et al. v. U. S. Dep't. of Homeland Security*, No. 5:20-01136-DOC (JDEx) (C.D. Cal.); *Goodwin v. Wolf, et al.*, No. 5:20-01185-TJH (pdx) (C.D. Cal.). However, nowhere in the motion for preliminary injunction, or in the complaint in this case, do Plaintiffs raise any factual allegations, propound legal arguments, or seek remedies regarding the allegedly improper or harmful use of cleaning chemicals. *See generally* PI Motion; Compl. Nor do they allege any injury or punitive conditions of confinement arising from the use of such cleaning chemicals. Where such allegations and claims for relief are wholly absent from the pleadings, Plaintiffs cannot now argue that this case is the appropriate place for allegations regarding the use of cleaning chemicals in ICE detention facilities to be heard—as there is no relationship to these allegations and the underlying complaint or PI Motion. *See*, *e.g.*, *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000); *see also Pac. Radiation Oncology, LLC v. Queens Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) ("there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying

complaint"); *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint"). Further, this claim does not fall within the claims at issue in the PI Order, *see generally* PI Order. Thus, modification of the Court's injunction is not justified by any change in the law or facts.

## V.     There Is No Basis For Appointment Of A Special Master

The Court should deny Plaintiffs' request for the appointment of a Special Master "to monitor Defendants' future compliance and provide real-time reports that will inform the Court's efforts to protect all subclass members from grave harm." Pls.' Mot. to Enforce 3. While Federal Rule of Civil Procedure 53(a)(1)(C) outlines the procedures for appointing a special master, a court "should appoint a special master only in exceptional circumstances." *Burlington N. v. Dep't of Revenue*, 934 F.2d 1064, 1071 (9th Cir. 1991). Courts have found exceptional circumstances in cases involving complex litigation or where there have been problems with compliance with court orders. *See United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990); *see Burlington N.*, 934 F.2d at 1071; *see also Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 482 (1986) (appointing a Special Master and noting the parties' "established record of resistance to prior state and federal court orders"). The Court's decision to appoint a master "must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Fed. R. Civ. P. 53(a)(3). "Before appointing a master, the court must give the parties notice and an opportunity to be heard. Any party may suggest candidates for appointment." Fed. R. Civ. P. 53(b)(1).

Here, Plaintiffs have failed to show that the appointment of a Special Master is necessary due to the complexity of this litigation or a history of noncompliance with the PI Order. *See Suquamish Indian Tribe*, 901 F.2d at 775. Specifically, Plaintiffs have not established that the nature of the factual complexities in this case require special master intervention. While this case is factually complex given the number of detention facilities

23

that vary in certain respects and given the number of class members who vary in medical issues and disabilities, this case does not possess the technical or legal complexities found in multidistrict or patent litigation where special masters have been found to be particularly useful. Thus, Plaintiffs have not shown how a special master here would provide any additional efficiencies that would not be duplicative of a district or magistrate judge.

Nor is there a history of noncompliance in this case. Contrary to Plaintiffs' assertions, Defendants promptly began taking action to comply with the PI Order. Defendants identified, tracked, and made timely custody redeterminations for all ICE detainees with risk factors and issued the revised PRR. *See, e.g.*, Johnson Decl. ¶ 34; Rivera Decl. ¶ 28; Pitman Decl. at ¶¶ 41-42; Chamberlain Decl. at ¶¶ 36-37; Beckhelm Decl. at ¶¶ 11, 24; Spurlock Decl. at ¶ 4; Acosta Decl. at ¶¶ 7-8; Musante Decl. at ¶¶ 23-24; Louis Decl. at ¶ 7; Vega Decl. at ¶¶ 5-6; Jackson Decl. at ¶ 6; Mros Decl. at ¶ 9; Castano Decl. at ¶¶ 4-6 ; Rodriguez Decl. at ¶¶ 5-6; Huron Decl. ¶¶ 7, 18; Smith Decl. at ¶¶ 5-7; Vega Decl. at ¶¶ 5-6. Revised PRR. ICE has also instituted a monitoring and enforcement program whereby Detention Service Managers and Detention Standards Compliance Officers conduct bi-weekly spot checks or inspections at detention facilities to monitor compliance with the revised PRR and CDC guidelines. *See* Revised PRR at 110-111; *see also* Johnson Decl. ¶ 36. As previously discussed, individual facilities, depending upon the specific circumstances impacting a facility—to include court orders—and individual facility resources and physical structure, have implemented numerous measures to protect the health and wellbeing of detainees and to respond to the threat of COVID-19. *See, e.g.*, Chamberlain Decl. (Pine Prairie); Beckhelm Decl.; Russo Decl.; Spurlock Decl.; Musante Decl.; Jackson Decl.; Mros Decl.; Davies Decl.; Sterling Decl.; Ortiz Decl.; Edwards Decl.; Acosta Decl.; Huron Decl.; Louis Decl.; Pitman Decl.; White Decl.; *see also* Ex. 24, Demonstrative Chart (rebutting allegations concerning conditions of detention).. In fact, Defendants have produced to Plaintiffs, and continue to produce, information and

24

documents concerning Defendants' compliance with the PI Order, in accordance with the Court's discovery order. *See* ECF No. 150.

Additionally, neither Plaintiffs nor the Court have indicated that the Court cannot effectively or timely address the issues in this case, thereby saving the parties the added expense of a special master. Fed. R. Civ. P. 53(a)(1)(C). Although Plaintiffs view the publication of the revised PRR as an inappropriate delay, it is undisputed that the revised PRR is published, and Plaintiffs have not demonstrated how a Special Master would assist with the development of ICE's internal guidance. Thus, Plaintiffs have failed to show any exceptional circumstances that would warrant the Court's appointment of a special master and Plaintiffs' request should be denied.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Enforce the PI Order.

DATED: July 8, 2020          Respectfully Submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

JEFFREY S. ROBINS
Deputy Director

HANS H. CHEN
ANNA L. DICHTER
Trial Attorneys

*/s/ Lindsay M. Vick*
LINDSAY M. VICK
Trial Attorney
United States Department of Justice

25

Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 532-4023
Fax: (202) 305-7000
Email: lindsay.vick@usdoj.gov

*Counsel for Defendants*