JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
U.S. Department of Justice
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
JEFFREY S. ROBINS
Deputy Director
NICOLE N. MURLEY
Senior Litigation Counsel
HANS H. CHEN (NY 4278123)
ANNA L. DICHTER (NJ 304442019)
HAYDEN WINDROW (NY 4384749)
LINDSAY M. VICK (MA 685569)
Trial Attorneys
District Court Section
Office of Immigration Litigation
United Stated Department of Justice
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-2405
Facsimile: (202) 305-7000
Anna.l.dichter@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, *et al.*, ) )  ) | Case No. 19-CV-01546-JGB (SHKx) |
| *Plaintiffs*, ) )  ) | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY DISCOVERY PENDING NINTH CIRCUIT RULING ON APPEAL** |
| v. ) )  ) | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, ) )  ) | **Before The Honorable Jesus G. Bernal** |
| *Defendants*. ) )  ) | |

**NOTICE OF MOTION AND MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DEFENDANTS' APPEAL**

PLEASE TAKE NOTICE that on Monday, October 19, 2020, at 9:00am, or as soon thereafter as the matter may be heard before the Honorable Jesus G. Bernal, Defendants will and hereby do move the Court for an order to stay discovery pending the Ninth Circuit's ruling on Defendants' appeal of the Court's order granting provisional class certification and a preliminary injunction, (ECF Nos. 161, 164. *Fraihat v. Barr*, No. 20-55634 (9th Cir. Filed June 19, 2020)). This motion is based on the attached memorandum of points and authorities, attached exhibits, and such other evidence and argument that may be presented before or at the hearing of this motion.

**STATEMENT OF COMPLIANCE WITH LOCAL RULE 7-3**

This motion is made following conference of counsel pursuant to L.R. 7-3, which took place on August 31, 2020.

DATED: September 17, 2020        Respectfully Submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
JEFFREY S. ROBINS
Deputy Director
NICOLE N. MURLEY
HANS H. CHEN
ANNA DICHTER
HAYDEN WINDROW
Trial Attorneys

*/s/ Anna L. Dichter*
ANNA DICHTER
Trial Attorney
United States Department of Justice
Civil Division

i

Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 353-2045
Fax: (202) 305-7000
Email: Anna.l.dichter@usdoj.gov

*Counsel for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 1

SUMMARY OF FACTS AND PROCEDURAL HISTORY ............................ 2

LEGAL STANDARD ....................................................................... 4

ARGUMENT ................................................................................. 5

    I.    The Ninth Circuit's Ruling on Defendants' Appeal Will Likely Impact the Scope of Discovery ................................................... 5

        A.    *Class Certification* ......................................................... 5

        B.    *Adequacy of Healthcare, Conditions of Confinement, and Rehabilitation Act Claims* ........................................... 6

    II.    Defendants Will Suffer Irreparable Harm Without a Stay .............. 8

    III.    A Stay of Discovery Will Not Prejudice or Harm Plaintiffs .......... 10

    IV.    A Stay of Discovery is in the Public Interest because it Will Promote Judicial Economy and Reduce This Court's Burden ................... 11

CONCLUSION ............................................................................. 11

iii

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974) ........................................................................................ 11

*Bd. Of Trustees v. Blue Cross of Michigan*,
  No. 13-cv-10416, 2013 WL 5913986 (E.D. Mich. Nov. 4, 2013) ................. 11

*Bell v. Wolfish*,
  441 U.S. 535 (1979) .......................................................................................... 6

*Britton v. Co-op Banking Group*,
  916 F.2d 1405 (9th Cir. 1990) .......................................................................... 5

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) .......................................................................................... 8

*C.B.S. Employees Fed. Credit Union v. Donaldson Lufkin & Jenrette Sec. Corp.*,
  716 F. Supp. 307 (W.D. Tenn. 1989) ............................................................... 4

*City & Cnty. of San Francisco v. USCIS*,
  944 F.3d 773 (9th Cir. 2019) ............................................................................ 4

*Clinton v. Jones*,
  520 U.S. 681 (1997) .......................................................................................... 4

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ............................................................................ 9

*Doninger v. Pac. Nw. Bell, Inc.*,
  564 F.2d 1304 (9th Cir. 1977) .......................................................................... 9

*E. Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ............................................................................ 5

*Farmer v. Brennan*,
  511 U.S. 825 (1994) .......................................................................................... 6

iv

*Fed. Home Loan Mortg. Corp. v. Karma*,
 2016 WL 922780 (D. Haw. Mar. 9, 2016) ........................................................ 8

*FTC v. Qualcomm Inc.*,
 935 F.3d 752 (9th Cir. 2019) .................................................................*passim*

*Fraihat v. Barr*,
 No. 20-55634 (9th Cir. Filed June 19, 2020) ..............................................i, 1, 3

*Golden Gate Restaurant Ass'n v. City & Cty. of San Francisco*,
 512 F.3d 1115 (9th Cir. 2008) ........................................................................ 5

*Hawai'i v. Trump*,
 233 F. Supp. 3d 850 (D. Haw. 2017) .............................................................. 9

*Helling v. McKinney*,
 509 U.S. 25 (1993) ......................................................................................... 6

*Hilton v. Braunskill*,
 481 U.S. 770 (1987) ................................................................................... 4, 7

*Johnson v. Railway Exp. Agency, Inc.*,
 421 U.S. 454 (1975) ..................................................................................... 11

*Lair v. Bullock*,
 697 F.3d 1200 (9th Cir. 2012) ........................................................................ 5

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936) ....................................................................................... 4

*Marlor v. Madison County*,
 50 Fed. App'x 872 (9th Cir. 2002) ................................................................. 7

*Murphy v. DirecTV, Inc.*,
 No. 2:07-06465-FMC, 2008 WL 8608808 (C.D. Cal. July 1, 2008) .............. 4

*Nickolas v. Fletcher*,
 2007 WL 2316752 (E.D. Ky. 2007) ................................................................ 8

v

*Nissen v. Linquist*,
    No. 16-5093BHS, 2016 WL 2866303 (W.D. Wash. May 17, 2016) ........................... 10

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................................................... 4

*O'Brien v. Avco Corp.*,
    309 F. Supp. 703 (S.D.N.Y. 1969) .............................................................................. 8

*Ortega v. Harmony Homes, Inc.*,
    No. 2:15-cv-00794, 2015 WL 4997319 (D. Nev. Aug. 19, 2015) ................................ 8

*Pinson v. Prieto*,
    No. 10-811-PSG, 2013 WL 12377237 (C.D. Cal. Mar. 12, 2013) .............................. 10

*Rajput v. Synchrony Bank*,
    No. 3:15-cv-1079, 2016 WL 6433134, (M.D. Pa. Oct. 31, 2016) ............................... 11

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1999) ...................................................................................... 9

*Sierra Club v. Trump*,
    929 F.3d 670 (9th Cir. 2019) ...................................................................................... 4

*Umatilla Waterquality Protective Ass'n v. Smith Frozen Foods Inc.*,
    962 F. Supp. 1312 (D. Ore. 1997) .............................................................................. 8

*Updike v. Multnomah Cty.*,
    870 F.3d 939 (9th Cir. 2017) ...................................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................................................... 5

*Washington v. Trump*,
    No. 17-0141, 2017 WL 1050354 (W.D. Wash. 2017) .................................................. 9

1

## STATUTES

29 U.S.C. § 791(g) ...................................................................................... 7

29 U.S.C. § 794 ........................................................................................... 2

## RULES

Fed. R. Civ. P. 1 ......................................................................................... 8

Fed. R. Civ. P. 26(b)(2)(iii) ....................................................................... 8

L.R. 7-3 ........................................................................................................ i

vii

**MEMORANDUM OF POINTS AND AUTHORITIES**

This Court should exercise its inherent authority to stay discovery pending the Ninth Circuit's ruling on Defendants' appeal of the provisional class certification and preliminary injunction orders. ECF Nos. 161, 164; *Fraihat v. Barr*, No. 20-55634 (9th Cir. filed June 19, 2020).

First, Defendants' Appeal involves threshold issues concerning the certification of two nationwide subclasses, as well as the Court's analysis of Plaintiffs' adequacy of healthcare, conditions of confinement, and Rehabilitation Act claims, which will undoubtedly impact the scope of this case and any subsequent discovery. Defendants presented substantial legal questions to the Ninth Circuit and have a "fair prospect of success" on these issues. *FTC v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019) (citation and quotation marks omitted).

Second, without an immediate stay, Defendants will be irreparably harmed because responding to Plaintiffs' overly broad and invasive requests for production, concerning all aspects of this case, will lead to a waste of time, money, and resources, before the Ninth Circuit has acted on the appeal and before a class has even been certified in the case-in-chief.

Third, a stay of discovery in the main case would not cause Plaintiffs prejudice or harm because the Court's preliminary injunction order remains in effect. Defendants are complying with the Court's preliminary injunction, are not seeking a stay of that order, and are providing bi-weekly reports to Plaintiffs to demonstrate compliance with the preliminary-injunction order.

Fourth, a stay furthers the goal of efficiency for the Court and the parties, particularly where the denial of a stay may result in significant, and ultimately unnecessary, discovery costs depending on how the outcome of the appeal affects the scope of future discovery. Proceeding in this case without a resolution of the pending appeal would be inefficient and waste the resources of the Court and the parties.

Accordingly, for these reasons and the reasons that follow, an immediate stay of discovery is justified pending resolution of the appeal

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

In August 2019, well before the COVID-19 pandemic, fifteen immigration detainees—housed at a variety of ICE facilities nationwide and allegedly suffering from a range of health conditions—filed this putative class action alleging that the government has failed to ensure minimum lawful conditions of confinement at immigration detention facilities across the country. *See generally* Complaint. Plaintiffs brought claims under the Due Process Clause of the Fifth Amendment and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Compl. ¶¶ 624-655. Along with these claims, Plaintiffs alleged three nationwide classes of exceptional breadth: "all people currently detained, or who in the future will be detained, in ICE custody who are now, or will in the future be, subjected to the Challenged Practices as a result of Defendants' [alleged] failure to adequately administer, monitor, or oversee conditions at Detention Facilities," Compl. ¶ 600; "all people currently detained, or who in the future will be detained, in ICE custody who are now, or will in the future be, subjected to the Segregation Practices as a result of Defendants' [alleged] failure to adequately administer, monitor, or oversee conditions at Detention Facilities," Compl. ¶608; and "all qualified individuals with a disability . . . who are now, or will in the future be, subjected to the Disability Practices as a result of Defendants' [alleged] failure to adequately administer, monitor, and oversee conditions at Detention Facilities," Compl. ¶ 616. The government moved to dismiss Plaintiffs' claims in November 2019. ECF No. 54.

While the government's motion to dismiss was pending, the COVID-19 pandemic hit the United States. Even before COVID-19 began to spread in the United States, ICE took steps to protect the health and well-being of the many detainees in its facilities located throughout the nation. On March 25, 2020, Plaintiffs filed motions seeking sweeping class-wide preliminary injunctive relief for two new nationwide classes of immigration detainees. Dkts. 81, 83. These motions argued that ICE's response to the pandemic in its

2

detention facilities violated the Due Process Clause of the Fifth Amendment and Section 504 of the Rehabilitation Act. Dkt. 81 at 2. On April 20, 2020, this Court granted both the preliminary injunction motion and the motion for class certification. Op. 1-39; Class-Certification Order. On June 19, 2020, Defendants appealed both orders to the Ninth Circuit, where they remain pending. *See Fraihat v. ICE*, No. 20-55634 (9th Cir. filed June 19, 2020).

On May 15, 2020, this Court issued an order on class notice and discovery related to compliance with the class-certification and preliminary-injunction orders. ECF No. 150. The Court ordered Defendants to provide Plaintiffs' counsel with a large volume of spreadsheets, documents, and miscellaneous records, many to be produced biweekly. ECF No. 150 at 9-11. Since this order, Defendants have produced over 11,000 pages of documents and materials.

On July 20, 2020, Plaintiffs served Defendants with fifteen requests for production ("RFPs") concerning the named Plaintiffs in this case. Defendants responded on August 19, 2020 and produced a first supplemental response on September 16, 2020. On August 10, 2020, Plaintiffs served Defendants with 109 additional RFPs concerning all aspects of this case, particularly materials that might become relevant to the litigation only if the Court certifies Plaintiffs' putative classes. *See* Ex. 1, RFPs 16-125; *see also* Informal Discovery Dispute Order, ECF No. 232. Most of these RFPs are overly broad, largely duplicative, invasive, and disproportionate to the needs of the case because they seek information that is not relevant to the claims and defenses of the case as well as information from every single detention facility concerning thousands of detainees. After a telephonic conference with Magistrate Judge Kewalramani, during which he noted the significant burden the RFPs placed on the government, Magistrate Judge Kewalramani ordered an extended, staggered response to the RFPs. Dkt. 332. Defendants were ordered to provide responses "to at least 27 unique RFPs, of the 109 RFPs propounded by Plaintiff, on September 16, 23, 30, and October 7, 2020." *Id.* Defendants were also ordered to begin producing responsive documents on a rolling basis starting September 30, 2020. *Id.*

**LEGAL STANDARD**

A district court has broad discretion to stay proceedings in its own court. *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton*, 520 U.S. at 706-07. The party moving for a stay "bears the burden of showing that the circumstances justify" the court's exercise of its discretion. *Sierra Club v. Trump*, 929 F.3d 670, 687 (9th Cir. 2019). To determine whether to grant a stay pending an interlocutory appeal, a court must evaluate the following:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *City & Cnty. of San Francisco v. USCIS*, 944 F.3d 773, 789 (9th Cir. 2019). The first two prongs are "'the most critical', and the 'mere possibility' of success or irreparable injury is insufficient to satisfy them." *City & Cnty. of San Francisco*, 944 F.3d at 789 (quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)). The court will reach the last two factors only if the movant satisfies the first two. *Sierra Club*, 929 F.3d at 687 (citation omitted).

Turning to the first factor, the party applying for a stay "need not demonstrate that it is more likely than not they will win on the merits"; they must show only "a reasonable probability or fair prospect of success." *FTC v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019) (citation and quotation marks omitted). A court does not have to conclude that it erred, or that the Court of Appeals will reverse its decision, to find that the movant satisfies this factor. *See Murphy v. DirecTV, Inc.*, No. 2:07-06465-FMC, 2008 WL 8608808, at *2 (C.D. Cal. July 1, 2008); *see also C.B.S. Employees Fed. Credit Union v. Donaldson Lufkin & Jenrette Sec. Corp.*, 716 F. Supp. 307, 309 (W.D. Tenn. 1989)

4

(explaining that the first prong of the test is satisfied when the movant presents a "serious legal question" because "it is unlikely a district court would ever be able to find that defendants will be likely to succeed on the merits of their appeal"). Rather, the Court need only find that the moving party "presents a legitimate, substantial question." *See Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990); *Golden Gate*, 512 F.3d at 1115–16. The second factor requires that "[t]he claimed irreparable injury must be likely to occur; simply showing some possibility of irreparable injury is insufficient." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018). When the moving party is the government, the second and fourth prongs may "closely align[]." *See Lair v. Bullock*, 697 F.3d 1200, 1215 (9th Cir. 2012).

## ARGUMENT

## I.   The Ninth Circuit's Ruling on Defendants' Appeal Will Likely Impact the Scope of Discovery

Defendants' Appeal presents substantial legal questions as to the Court's (1) certification of two nationwide subclasses and (2) analysis of the Plaintiffs' adequacy of healthcare, conditions of confinement, and Rehabilitation Act claims—and Defendants have a "fair prospect of success." *FTC*, 935 F.3d at 755.

### A.   Class Certification

There is a substantial legal question as to whether the district court properly certified two nationwide subclasses and the Ninth Circuit's ruling on this question will likely impact the scope of discovery. *See* Class Certification Order. On appeal, Defendants have a "fair prospect of success," *FTC*, 935 F.3d at 755, because Plaintiffs failed to meet *any* of the elements for class certification. The Court provisionally certified two nationwide classes consisting of widely diverse groups of detainees whose criminal backgrounds and risks of suffering harm vary dramatically. These putative class members neither "possess the same interest" nor will "suffer the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Nevertheless, the Court certified two nationwide classes of ICE detainees covering hundreds of facilities based on five class representatives in only three facilities,

after evaluating only about ten percent of facilities nationwide, many of which the court referred to only in passing. That certification fails to meet Rule 23's commonality, typicality, and adequacy requirements. *See id.* at 350.

B. *Adequacy of Healthcare, Conditions of Confinement, and Rehabilitation Act Claims*

There are also substantial legal questions as to the Court's analysis of Plaintiffs' adequacy of healthcare, conditions of confinement, and Rehabilitation Act claims. Defendants have a "fair prospect of success," *FTC*, 935 F.3d at 755, on all of these issues. First, the Court improperly relied on allegations from about a dozen ICE facilities in a few states to conclude—on a nationwide, class-wide basis—that ICE unlawfully subjected class members to a substantial risk of serious harm at all facilities nationwide. Op. 27-33. To prevail on a substantive-due-process claim of deliberate indifference, Plaintiffs must show both that ICE's response to COVID-19 "poses an unreasonable risk of serious damage to [detainees'] future health," *Helling v. McKinney*, 509 U.S. 25, 35 (1993), and that ICE has been deliberately indifferent to Plaintiffs' wellbeing, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A deliberate-indifference claim also requires a showing that is tantamount to criminal recklessness. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). ICE's nationwide actions show the opposite: it has acted with deliberate and reasonable care to address the risks of COVID-19. ICE's reasonable response defeats any deliberate-indifference claim—particularly the sweeping, indiscriminate nationwide claim that the district court credited here – and ICE's extensive, continuing efforts to address and mitigate the risks that COVID-19 presents at detention facilities nationwide defeat any claim that ICE has been deliberately indifferent under this standard, especially in light of the agency's operating constraints.

Second, Defendants raise substantial legal questions regarding the Court's conditions of confinement analysis. Due process requires only that immigration detention be "reasonably related" to the government's legitimate interest in enforcing the Nation's immigration laws. *Bell v. Wolfish*, 441 U.S. 535, 538-39 (1979). Plaintiffs' confinement

6

satisfies that standard. Plaintiffs are in immigration detention because they have violated
the immigration laws of the United States and are subject to detention under those laws—
in some cases, mandatory detention based on criminal history. Coupled with ICE's careful
nationwide response to COVID-19 at its detention facilities, there was no sound basis for
the district court to deem conditions in ICE facilities nationwide to be unconstitutionally
punitive.

Third, Defendants raise substantial legal questions regarding the Court's analysis of
Plaintiffs' Rehabilitation Act claim. To prevail on their Rehabilitation Act claim, Plaintiffs
must show that they have a qualifying disability and were denied a benefit based "solely
by reason of their disability." *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017).
The district court, however, failed to undertake the robust and fact-specific analysis
required for determining whether a medical condition qualifies as a disability under 29
U.S.C. § 791(g) and erroneously concluded that "the medical conditions defined in" the
class of detainees with alleged disabilities "likely qualify under the Rehabilitation Act."
Op. 3; *see also Id.* at 34-36. In addition, not only have plaintiffs failed to show that they
have been denied access to a "benefit," but they have also failed to establish that any such
denial was based *solely* on their alleged disability. *Marlor v. Madison County*, 50 Fed.
App'x 872, 873 (9th Cir. 2002).

Finally, considerations of harm and the equities should have foreclosed the district
court's injunction. The Executive Branch has a strong interest in being able to respond
flexibly to an evolving crisis, and to do so in a tailored manner at different facilities rather
than under the thumb of an unyielding and indiscriminate nationwide injunction that
applies to every ICE facility. The injunction here undermines that ability and unreasonably
burdens the Executive Branch at a time of already massive operational constraints.

Because Defendants have presented several substantial legal questions on appeal and
have a "fair prospect of success," *FTC*, 935 F.3d at 755, this Court should stay discovery
pending the Ninth Circuit's ruling on the appeal. *Hilton*, 481 U.S. at 776.

## II.    Defendants Will Suffer Irreparable Harm Without a Stay

Allowing discovery in this matter to continue during the pendency of Defendants' appeal will irreparably harm Defendants, costing them significant expenditure of time, money, and manpower. "It needs no citation of authority to recognize that discovery is expensive." *Ortega v. Harmony Homes, Inc.*, No. 2:15-cv-00794-MMD-VCF, 2015 WL 4997319, at *1 (D. Nev. Aug. 19, 2015). "The Supreme Court has long mandated that trial courts should resolve civil matters fairly but without undue cost." *Id.* (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962) ("[The] inexpensive determination of every action [is one of] the touchstones of federal procedure.")). "This directive is echoed by Rule 26, which instructs the court to balance the expense of discovery against its likely benefit." *Id.* (citing Fed. R. Civ. P. 26(b)(2)(iii)). An exercise of the Court's inherent authority to stay discovery is particularly appropriate where denial of a stay may result in significant discovery costs. *See* Fed. R. Civ. P. 1 (the Federal Rules must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceedings.").

District courts routinely stay proceedings where resolution of an appeal may provide guidance to the district court in deciding issues before it. *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. Karma*, 2016 WL 922780, at *8-*9 (D. Haw. Mar. 9, 2016) (granting a stay where Ninth Circuit's resolution of related cases "w[ould] likely involve an analysis of" issues that would "provid[e] further guidance" to the district court); *Umatilla Waterquality Protective Ass'n v. Smith Frozen Foods Inc.*, 962 F. Supp. 1312, 1323 (D. Ore. 1997) ("Given the importance of the issues decided here to the rest of this case, however, I hereby stay these proceedings"); *O'Brien v. Avco Corp.*, 309 F. Supp. 703, 704 (S.D.N.Y. 1969) (stay of all district court proceedings granted--when, as here, the determination of a preliminary question may dispose of the entire suit, applications for discovery may properly be deferred until the determination of such questions); *Nickolas v. Fletcher*, 2007 WL 2316752 at *2 (E.D. Ky. 2007) (granting stay "[b]ecause reversal of the Court's decision on appeal would completely deprive this Court of subject matter jurisdiction and

result in dismissal of this action, the Court will stay the proceedings"); *see also Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("Where the necessary factual issues may be resolved without [pre-certification] discovery, it is not required."). This approach not only "preserve[s] resources for both the parties and the Court," *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 856 (D. Haw. 2017), but also "reduce[s] the risk of inconsistent rulings that the appellate court[] might then need to disentangle," *Washington v. Trump*, No. 17-0141, 2017 WL 1050354, at *5 (W.D. Wash. 2017). This approach is appropriate now. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1999) (explaining that "[i]t is a sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery").

A stay will eliminate "the hardship [and] inequity" Defendants would otherwise suffer "in being required to go forward" without guidance from the Ninth Circuit. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). To date, Plaintiffs have propounded two sets of Requests for Production ("RFPs") upon Defendants, the second of which consists of 109 RFPs. *See* Ex. 1. Plaintiffs claimed in the Rule 26(f) report that these initial rounds of discovery requests would be limited to class certification. ECF No. 213 at 9. However, many, if not most, of these 109 RFPs are not necessary to certify the class and instead are overbroad, outside the scope of this litigation, and disproportionate to the needs of the case because they seek information that is not relevant to the claims and defenses of the case as well as information from every single detention facility concerning thousands of detainees. *See, e.g.*, Ex. 1, RFPs 16-17, 22, 30-52, 78-125. Without the certification of a class, it is not appropriate for Defendants to produce information of such case-specific granularity. *See, e.g.*, Ex. 1, RFPs 25, 53-59, 61, 75; *see Doninger*, (noting that a court may allow class discovery where that discovery is likely to produce substantiation of the class allegations). Moreover, Plaintiffs' requests for a voluminous amount of highly sensitive information, which include identities, qualifications, and complaints concerning employees and healthcare personnel going back many years, for a class that is not yet certified, is

unnecessary and inappropriate. *See, e.g.*, Ex. 1, RFPs 71, 78, 81, 103, 118; *see Nissen v. Linquist*, No. 16-5093BHS, 2016 WL 2866303, at *1 (W.D. Wash. May 17, 2016) ("[T]here is no reason to enter into expensive and intrusive discovery until the bounds of such discovery are more clearly delineated."); *see also Pinson v. Prieto*, No. 10-811-PSG (SP), 2013 WL 12377237, at *3-4 (C.D. Cal. Mar. 12, 2013) (concluding that similar requests for production of documents concerning highly sensitive information to be impermissibly overbroad and unduly burdensome absent a compelling need for the documents).

The Ninth Circuit's ruling on Defendants' appeal of the district court's class certification and preliminary-injunction orders will likely resolve issues and/or provide clarity for any issues that remain. Granting a stay is prudent, efficient, and fair. It would be a waste of resources to proceed with the case before this Court while the appeal is pending. The appeal involves threshold issues concerning the nationwide class certification, as well as this Court's analysis of Plaintiffs' adequacy of healthcare, conditions of confinement, and Rehabilitation Act claims, which will undoubtedly impact the Court's analysis of those issues and any remedies to which Plaintiffs may be entitled for the rest of the case. As explained previously, there is a "fair prospect" that Ninth Circuit will find that Plaintiffs did not meet the Rule 23 commonality, typicality, and adequacy requirements to obtain their preliminary class certification. *See FTC*, 935 F.3d at 755. This ruling inevitably will impede Plaintiffs' ability to argue successfully that the Court should certify other nationwide classes covering hundreds of detention facilities, and made up of diverse individuals with differing experiences, as this litigation proceeds. In this procedural posture, a stay will prevent Defendants from expending substantial time, manpower, and resources responding to discovery that ultimately do not advance the litigation.

## III.   A Stay of Discovery Will Not Prejudice or Harm Plaintiffs

In contrast to the drain on resources that will result if this case proceeds before the appeal is resolved, Plaintiffs will not suffer any harm from a stay. The Court's preliminary injunction remains in place. The parties are already engaging in document production

regarding Defendants' compliance with the COVID-19 preliminary injunction. Plaintiffs have not sought a similar preliminary injunction regarding the non-COVID-19 claims in their underlying complaint. Under these circumstances, the harm Plaintiffs would suffer from a stay would be minimal.

## IV. A Stay of Discovery is in the Public Interest because it Will Promote Judicial Economy and Reduce This Court's Burden

A stay would promote judicial economy and reduce this Court's burden as well. The purpose of litigating aggregate claims through a class action is to create efficiency and conserve scarce judicial resources, but Plaintiffs' RFPs do not serve that purpose. *See Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 466 n.12 (1975) (acknowledging "the purposes of litigatory efficiency served by class actions"); *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974) (characterizing "efficiency and economy of litigation" as "a principal purpose of the [class action] procedure").

If Plaintiffs are permitted to pursue the discovery they indicated they intend to seek, *see* ECF. No. 213, before the Ninth Circuit resolves the interlocutory appeal, it will impose a burden on Defendants. Worse still, that burden may prove entirely unnecessary. Defendants will oppose the discovery sought, which will require briefing by the parties and decision by the Court on, among other things, the scope of discovery and the applicability of various privileges. *Rajput v. Synchrony Bank*, No. 3:15-cv-1079, 2016 WL 6433134, at *5, (M.D. Pa. Oct. 31, 2016) (granting stay where appellate ruling likely would impact "the scope of the issues and discovery needed in th[e] case"); *Bd. Of Trustees v. Blue Cross of Michigan*, No. 13-cv-10416, 2013 WL 5913986, *2 (E.D. Mich. Nov. 4, 2013) (refusing to lift stay where decision in related appeal could render discovery unnecessary).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for a stay of discovery pending the Ninth Circuit's ruling on Defendants' appeal.

DATED: September 17, 2020                    Respectfully Submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
JEFFREY S. ROBINS
Deputy Director
NICOLE N. MURLEY
HANS H. CHEN
ANNA DICHTER
HAYDEN WINDROW
Trial Attorneys

*/s/ Anna L. Dichter*
ANNA DICHTER
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 353-2045
Fax: (202) 305-7000
Email: Anna.l.dichter@usdoj.gov

*Counsel for Defendants*

EXHIBIT 1

Timothy P. Fox (CA Bar 157750)
*tfox@creeclaw.org*
Elizabeth Jordan*
*ejordan@creeclaw.org*
CIVIL RIGHTS EDUCATION
AND ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
Tel:  (303) 757-7901
Fax: (303) 872-9072

Stuart Seaborn (CA Bar 198590)
*sseaborn@dralegal.org*
Melissa Riess (CA Bar 295959)
*mriess@dralegal.org*
Monica Porter (CA Bar 311974)
*mporter@dralegal.org*
Jessica Agatstein (CA Bar 319817)
*jagatstein@dralegal.org*
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor Berkeley,
California 94704
Tel:  (510) 665-8644
Fax: (510) 665-8511

William F. Alderman (CA Bar 47381)
*walderman@orrick.com*
Jake Routhier (CA Bar 324452)
*jrouthier@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel:  (415) 773-5700
Fax: (415) 773-5759

Lisa Graybill*
*lisa.graybill@splcenter.org*
Jared Davidson*
*jared.davidson@splcenter.org*
Jeremy Jong*
*jeremy.jong@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana  70170
Tel: (504) 486-8982
Fax: (504) 486-8947

Elissa Johnson*
*elissa.johnson@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
150 E. Ponce de Leon Ave., Ste. 340
Decatur, GA 30030
Tel:  (404) 521-6700
Fax: (404) 221-5857

Attorneys for Plaintiffs (Continued next page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION – RIVERSIDE**

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, *et al.* <br><br> *Plaintiffs* <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, <br><br> *Defendants*. | **Case No.  5:19-CV-01546 JGB (SHKx)** <br><br> **CLASS ACTION** <br><br> **Plaintiffs' First Set of Requests for Production of Documents** |

Mark Mermelstein (CA Bar 208005)
mmermelstein@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020
Fax: (213) 612-2499

Christina Brandt-Young*
cbrandt-young@dralegal.org
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel:  (212) 644-8644
Fax: (212) 644-8636

Maia Fleischman*
maia.fleischman@splcenter.org
SOUTHERN POVERTY LAW CENTER
4700 Biscayne Blvd., Ste 760
Miami, FL 33137
Tel:  (305) 537-0589
Fax: (786) 237-2949

Attorneys for Plaintiffs (continued from previous page)
*Pro Hac Vice Application Forthcoming

**PROPOUNDING PARTY:**     Plaintiff, Faour Abdallah Fraihat, et al.

**RESPONDING PARTY:**     Defendant, U.S. Immigration and Customs Enforcement

**SET NO.**     One (1)

Pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs hereby request that Defendant U.S. Immigration and Customs Enforcement produce and permit inspection and copying of the following documents or categories of documents in accordance with the Instructions and Definitions below. The production, inspection, and copying shall take place within thirty (30) days after service of this demand and continue so long as reasonably required at the offices of Disability Rights Advocates, 2001 Center Street, 4th Floor, Berkeley, CA 94704, unless otherwise agreed by the parties. Defendants shall also submit a written response, subscribed under oath, within thirty (30) days of service of this demand.

These requests are continuing in nature and require supplemental responses as provided by Rule 26 of the Federal Rules of Civil Procedure, in the event Defendant, counsel for Defendant, or anyone representing the interests of Defendant becomes aware of any additional information, documents or things sought by these requests between the time Defendant's written answers and responses are served, the documents, and things produced and the time of trial.

## DEFINITIONS

The following terms shall have the following meaning and all other terms shall be interpreted according to their plain and ordinary meaning:

1.     As used herein, the term "communications" means all oral conversations, discussions, letters, telegrams, emails, memorandum and any other transmission of information in any form, written, oral, or non-verbal.

2.     As used herein, the term "documents" means "writings," "recordings," and "photographs" as defined under Rule 1001 of the Federal Rules of Evidence, and shall include, without limitation, any written, printed, typed, photographed, recorded, or

graphic matter such as letters, words, numbers, figures, computations, formulae, pictures, sounds or symbols or combinations thereof, however produced or reproduced, of every kind and description, in whatever form, including without limitation tape recordings, film, video, magnetic impulse, disk, e-mail, Internet or web site, CD-ROM, digital, mechanical or other recording, or other equipment used to make, read, reproduce, analyze or manipulate such data, in Defendant's actual or constructive possession or control.  The term also includes all "originals" and "duplicates" as defined by Rule 1001.

3.     As used herein, the term "concerning" shall mean including, mentioning, discussing, summarizing, describing, reflecting, referring to, pertaining to, commenting on, depicting, embodying, evidencing, constituting, relating to, reporting or involving an occurrence, event, transaction or course of dealing.

4.     As used herein, the term "Plaintiffs" means Faour Abdallah Fraihat, Marco Montoya Amaya, Raul Alcocer Chavez, Jose Segovia Benitez, Hamida Ali, Melvin Murillo Hernandez, Jimmy Sudney, José Baca Hernandez, Edilberto García Guerrero, Martin Muñoz, Luis Manuel Rodriguez Delgadillo, Ruben Darío Mencías Soto, Alex Hernandez, Aristoteles Sanchez Martinez, and Sergio Salazar Artaga.

5.      As used herein, the term "Defendant" or "you" shall mean and refer to the Defendant, U.S. Immigration and Customs Enforcement including any department, subsidiary, division, officer, director, partner, employee, independent contractor, agent, board of supervisors, supervisor, representative, or person acting or purporting to act on behalf of that entity.

6.     As used herein, the terms "relating to" shall mean including, mentioning, discussing, summarizing, describing, reflecting, referring to, pertaining to, commenting on, depicting, embodying, evidencing, constituting, concerning, reporting or involving an occurrence, event, transaction or course of dealing.

7.     As used herein, the terms "disability" has the same meaning as defined in applicable federal and state disability laws, including but not limited to the Americans

with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq.; Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794; and California Government Code §12926.

8.     As used herein, the terms "accommodation" and "reasonable accommodation" have the same meaning as defined in applicable federal and state disability laws including but not limited to the ADA and the Rehabilitation Act.

9.     As used herein, the terms "modification" and "reasonable modification" have the same meaning as defined in applicable federal and state disability laws including but not limited to the ADA and the Rehabilitation Act.

10.    As used herein, the term "detention files" refers to all records, documents, communications, and other files for the named Plaintiffs in the Defendants' possession.

## SCOPE

1.     All documents produced in response to this request shall be organized and labeled to correspond with the number of the document request to which the documents are responsive.

2.     Words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  The terms "and" and "or" and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope. The word "including" means "including without limitation." "Any" and "all" shall individually be construed to mean both any and all. "Relating to" is used in its broadest sense to include any connection, relation, or relevance.

3.     These document requests are continuing in nature, up to and during the course of trial.  Documents sought by these requests that you obtain after you serve your responses must be produced to counsel for Plaintiffs by supplementary response.

4.     These requests call for all information that is known or available to Defendant, including all information in the possession, custody, or control of Defendant's employees, attorneys, auditors, agents, investigators, and any other person

or entity acting on Defendant's behalf or under Defendant's direction or control.

## **INSTRUCTIONS**

1. Plaintiffs request that all documents be produced as follows:

    a) For Emails: Portable Document Format ("PDF") format with Optical Character Recognition ("OCR"), with all attachments preserved.

    b) For Email Attachments: To the extent an email has an attachment, it must be maintained in its native format. A Bates-stamped PDF placeholder with a link to the file may be used as part of the production. In addition, Defendants must produce whatever program is normally used to open, view, and manipulate each attachment, unless such program is already in possession of Plaintiffs' counsel. Defendants must consult with Plaintiffs to discuss what file types will be produced, and what programs will be needed to open, view, and manipulate them.

    c) For Excel or other spreadsheets: Native format (a Bates-stamped PDF placeholder with a link to the native file may be used as part of the production).

    d) For Power Point: Native format (a Bates-stamped PDF placeholder with a link to the native file may be used as part of the production).

    e) For Database files or other compilations of data: Native format, along with whatever program is normally used to open, view, and manipulate the file, unless such program is already in possession of Plaintiffs' counsel. Defendants must consult with Plaintiffs to discuss what file types will be produced, and what programs will be needed to open, view, and manipulate them. A Bates-stamped PDF placeholder with a link to the file may be used as part of the production. Any database files produced must be fully searchable and manipulable.

f)      For all other documents, including paper documents: PDF with OCR. All documents produced must be fully searchable and manipulable.

2.      The term "native format" should be read to mean whatever format (for example, .pdf, .jpeg, or .doc) the file existed in originally, prior to production.

3.      All documents shall be produced on CD-ROMs or DVDs.

4.      Documents should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.

5.      Where specialized or proprietary software is required to access or use documents in their native format, please supply such software.

6.      All requests should be read to include a request for all metadata associated with all documents responsive to the request.

7.      If Defendant is unable to comply with the above-listed requests for any reason, Plaintiffs request that Defendant produce responsive documents after a meet and confer discussion with Plaintiffs' counsel about the preferred format for such production. Plaintiffs request that Defendant not unilaterally select an electronic format for production.

## OBJECTIONS

1.      If Defendant objects to part of a document request and refuses to answer that part, Defendant must state their objection and answer the remaining portion of that request.  If Defendant objects to the scope or time period of a request and refuses to answer for that scope or time period, Defendant must state their objection and answer the request for the scope or time period Defendant believes is appropriate.

2.      With respect to any requested document which Defendant refuses to produce in response to the Requests for Production on the basis of an asserted privilege, please state:

a)      The full identity of the document including:

i)   the date of the document;

ii)  its title (if any);

    iii) its authors, addressees, recipients or parties;

    iv) the nature of the document (e.g., letter, memorandum, etc.);

    v) the individual or source from whom or which Defendant obtained it, and

    vi) its present location and identity of its custodian;

  b)  whether Defendant's objection or refusal is directed to the entire document or part thereof;

    i) if Defendant's objection or refusal goes to part of the document, specify the specific part(s) of the document to which Defendant's objection or refusal is directed;

  c)  the specific factual basis that gives rise to the objection or refusal; and

  d)  the specific legal privilege on which the objection or refusal is based.

3. If any of the following requests cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying Defendant's inability to answer the remainder, and stating whatever information Defendant has concerning the unanswered portions. If Defendant's answer is qualified in any way, please set forth the details of such qualification.

4. If, to Defendant's knowledge, documents responsive to one or more requests were never in Defendant's possession, custody, or control but are or have been in the possession, custody, or control of any other person, please identify all such persons.

5. If any responsive document was formerly in Defendant's possession, custody, or control but has been eliminated from Defendant's possession in any way, including, but not limited to, having been lost, destroyed, transmitted, or discarded, please submit a written statement as follows:

  a)  Describe in detail the nature of the document and its contents;

  b)  Identify the person or persons who authored, prepared or edited the document and, if applicable, the person or persons to whom the document was sent;

c)   List all dates when the document was created, copied, or modified;

d)   List all dates when the document was eliminated from your possession in any way;

e)   State any reasons the document was eliminated from your possession in any way; and

f)   List all persons that have had possession of the document or have had knowledge of its contents.

## **REQUESTS**

**REQUEST FOR PRODUCTION NO.1:**

Please produce the complete detention file for Plaintiff Faour Abdallah Fraihat, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce the complete detention file for Plaintiff Marco Montoya Amaya, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce the complete detention file for Plaintiff Raul Alcocer Chavez, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce the complete detention file for Plaintiff Jose Segovia Benitez, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce the complete detention file for Plaintiff Hamida Ali, including but not limited to any records concerning or relating to medical and/or mental healthcare, disability, segregation (administrative and/or disciplinary), disciplinary action taken against her, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce the complete detention file for Plaintiff Melvin Murillo Hernandez, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce the complete detention file for Plaintiff Jimmy Sudney, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce the complete detention file for Plaintiff José Baca Hernandez, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce the complete detention file for Plaintiff Edilberto García Guerrero, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce the complete detention file for Plaintiff Martin Muñoz, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce the complete detention file for Plaintiff Luis Manuel Rodriguez Delgadillo, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce the complete detention file for Plaintiff Ruben Darío Mencías Soto, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce the complete detention file for Plaintiff Alex Hernandez, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce the complete detention file for Plaintiff Aristoteles Sanchez Martinez, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce the complete detention file for Plaintiff Sergio Salazar Artaga, including but not limited to any records concerning or relating to medical and/or mental healthcare, segregation (administrative and/or disciplinary), disciplinary action taken against him, disability, and disability-related accommodations or modifications.

DATED: December 16, 2019          CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
SOUTHERN POVERTY LAW CENTER
DISABILITY RIGHTS ADVOCATES
ORRICK HERRINGTON & SUTCLIFFE LLP

By __/s/ Timothy Fox_____
      Timothy Fox
      Attorney for Plaintiffs

## PROOF OF SERVICE

RE:    Faour Abdallah Fraihat, et al. v. U.S. Immigration and Customs Enforcement, et al.

Case No.: 5:19-CV-01546 JGB (SHKx)

I, Timothy Fox, declare as follows: I am 18 years of age or over and am not a party to this action. My place of business is located at 1245 E. Colfax Avenue, Suite 400, Denver, CO.

On December 16, 2019, I served a copy of the following entitled document(s):

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

on the following interested parties in said cause:

| | |
|---|---|
| Joseph H. Hunt | United States Department of Justice |
| William C. Peachey | Civil Division |
| Jeffrey S. Robins | Office of Immigration Litigation |
| *jeffrey.robins@usdoj.gov* | District Court Section |
| Sergio F. Sarkany | P.O. Box 868, Ben Franklin Station |
| *sergio.f.sarkany@usdoj.gov* | Washington, DC 20044 |
| Lindsay M. Vick | Tel: (202) 532-4023 |
| *lindsay.vick@usdoj.gov* | Fax: (202) 305-7000 |

Attorneys for Defendants U.S. Immigration and Customs Enforcement, Joseph H. Hunt, William C. Peachey, Sergio F. Sarkany, and Lindsay M. Vick

[X]    VIA EMAIL I caused such document to be transmitted via email to the addressee(s) from my email address: tfox@creeclaw.org.

[ ]    VIA FACSIMILE  I caused such document to be transmitted via facsimile to the addressee(s) from my office's facsimile service and fax number 510.665.8511. The transmission by facsimile was reported as complete and without error.

[ ]    VIA MAIL  I placed such envelopes for collection and mailing on this date following ordinary business practices.

I certify and declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on December 16, 2019 at Denver, Colorado.

Timothy Fox

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

11

EXHIBIT 2

Timothy P. Fox (CA Bar 157750)
*tfox@creeclaw.org*
Elizabeth Jordan*
*ejordan@creeclaw.org*
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
1245 E. Colfax Avenue, Suite 400
Denver, CO 80218
Tel:  (303) 757-7901
Fax: (303) 872-9072

Jared Davidson*
*jared.davidson@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, Louisiana 70170
Tel:  (504) 486-8982
Fax: (504) 486-8947

Stuart Seaborn (CA Bar 198590)
*sseaborn@dralegal.org*
Melissa Riess (CA Bar 295959)
*mriess@dralegal.org*
Rosa Lee V. Bichell (CA Bar 331530)
*rbichell@dralegal.org*
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor
Berkeley, California 94704
Tel:  (510) 665-8644
Fax: (510) 665-8511

Attorneys for Plaintiffs (continued on next page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Defendants. | Case No.: 19-cv-01546-JGB(SHKx)<br><br>**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>**August 10, 2020** |

William F. Alderman (CA Bar 47381)
*walderman@orrick.com*
Jake Routhier (CA Bar 324452)
*jrouthier@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
Tel.:  (415) 773-5700
Fax: (415) 773-5759

Michael W. Johnson*
*mjohnson1@willkie.com*
Dania Bardavid*
*dbardavid@willkie.com*
Jessica Blanton*
*jblanton@willkie.com*
Joseph Bretschneider*
*jbretschneider@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel.:  (212) 728-8000
Fax: (212) 728-8111

Veronica Salama*
*veronica.salama@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
P.O. Box 1287 Decatur, GA, 30031
Tel: (404) 221-5825
Fax: (404) 221-5857

Christina Brandt-Young*
*cbrandt-young@dralegal.org*
DISABILITY RIGHTS
ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel.:  (212) 644-8644
Fax: (212) 644-8636

Mark Mermelstein (CA Bar 208005)
*mmermelstein@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
Tel.:  (213) 629-2020
Fax: (213) 612-2499

Leigh Coutoumanos*
*lcoutoumanos@willkie.com*
Timothy Ryan*
*tryan@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
1875 K Street NW, Suite 100
Washington, DC 20006
Tel.:  (202) 303-1000
Fax: (202) 303-2000

Shalini Goel Agarwal
(CA Bar 254540)
*shalini.agarwal@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
106 East College Avenue
Suite 1010
Tallahassee, FL 32301
Tel.:  (850) 521-3024
Fax: (850) 521-3001

Maria del Pilar Gonzalez Morales
(CA Bar 308550)
*pgonzalez@creeclaw.org*
CIVIL RIGHTS EDUCATION
AND ENFORCEMENT CENTER
1825 N. Vermont Avenue, #27916
Los Angeles, CA 90027
Tel.:  (805) 813-8896
Fax: (303) 872-9072

Attorneys for Plaintiffs (continued from previous page)
*Admitted Pro Hac Vice

**PROPOUNDING PARTY:**     Plaintiffs Faour Abdallah Fraihat, et al.

**RESPONDING PARTY:**      All Defendants, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Department of Homeland Security ("DHS"), Kevin McAleenan (or the individual currently serving in the role of Acting Director, ICE), Derek N. Brenner (or the individual currently serving in the role of Deputy Director, ICE), Timothy S. Robbins (or the individual currently serving in the role of Acting Executive Associate Director, Enforcement and Removal Operations ("ERO")), Tae Johnson (or the individual currently serving in the role of Assistant Director of Custody Management, ERO), Dr. Stewart D. Smith (or the individual currently serving in the role of Assistant Director, ICE Health Service Corps ("IHSC")), Jacki Becker Klopp (or the individual currently serving in the role of Assistant Director of Operations Support, ERO), David P. Pekoske (or the individual currently serving in the role of Senior Official Performing Duties of the Deputy Secretary, DHS), and Matthew T. Albence (or the individual currently serving in the role of Acting Director, ICE).

**SET NO.**                Two (2)

Pursuant to Federal Rules of Civil Procedure 34, Plaintiffs hereby request that Defendants ICE and DHS produce and permit inspection and copying of the following documents or categories of documents in accordance with the Instructions and Definitions below.  The production, inspection, and copying shall take place within thirty (30) days after service of this demand and continue so long as reasonably required at the offices of Disability Rights Advocates, 2001 Center Street, 4th Floor, Berkeley, CA 94704, unless otherwise agreed by the parties.  Each of ICE and DHS shall also submit a written response, subscribed under oath, within thirty (30) days of service of this demand.

These requests are continuing in nature and require supplemental responses as provided by Rule 26 of the Federal Rules of Civil Procedure, in the event either

of the responding Defendants, their counsel, or anyone representing their interests becomes aware of any additional information, documents or things sought by these requests between the time the responding Defendants' written answers and responses are served and the conclusion of trial.

## DEFINITIONS

As used herein, unless specified otherwise, the following definitions apply:

1.  "ICE" means U.S. Immigration and Customs Enforcement.

2.  "DHS" means U.S. Department of Homeland Security.

3.  "OIG" means DHS's Office of Inspector General.

4.  "CRCL" means DHS's Office for Civil Rights and Civil Liberties.

5.  "Assessment and Accommodation Directive" means ICE directive 11071.1 entitled "Assessment and Accommodations for Detainees with Disabilities" dated December 15, 2016.

6.  "Auxiliary aids or services" are services or devices that allow persons with disabilities, including vision, hearing, speaking, sensory, and manual dexterity disabilities, access to effective communication. Such aids or services include interpreters, written materials, note-takers, video remote interpreting services, or other effective methods of making aurally delivered materials available to persons with hearing-related disabilities; readers, taped texts, materials or displays in Braille, secondary auditory programs, screenreading and text-to-speech software, or other effective methods of making visually delivered materials available to detainees with vision disabilities.

7.  "Communication" means, without limitation, any manner or means of disclosure, transfer, transmission, conveyance, or exchange of information whether by written, oral, or other means (such as person-to-person, in a group, by telephone, letter, facsimile, electronic or computer mail, voicemail, telex, telecopy, or any other process, electric, electronic, or otherwise).

1      8.     "CMD" means ICE's Custody Management Division.

2      9.     "Covered Facility" and "Detention Facility" (and their plural forms) mean any facility in which adult individuals are detained by ICE (either directly or by private or public contractors) for more than 72 hours.

10.     "Detainee Death Directive" means ICE directive 7-9.0 entitled "Notification and Reporting of Detainee Deaths" effective date October 1, 2009 and review date October 1, 2012.

11.     "Disability" or "disabilities" means a physical or mental impairment that substantially limits one or more of an individual's major life activities; or a record of such a physical or mental impairment. "Major life activities" include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. A major life activity can also include the operation of major bodily functions, like the immune, endocrine, and neurological systems; normal cell growth; digestion, respiration, and circulation; and the operations of the bowel, bladder, and brain.

12.     "DMC" means the Detention Monitoring Council.

13.     "Documents" means "writings," "recordings," and "photographs" as defined under Rule 1001 of the Federal Rules of Evidence, and shall include, without limitation, any written, printed, typed, photographed, recorded, or graphic matter such as letters, words, numbers, figures, computations, formulae, pictures, sounds or symbols or combinations thereof, however produced or reproduced, of every kind and description, in whatever form, including, without limitation, tape recordings, film, video, magnetic impulse, disk, e-mail, Internet or web site, CD-ROM, digital, mechanical or other recording, or other equipment used to make, read, reproduce, analyze or manipulate such data, in the responding Defendants' actual or

1  constructive possession or control.   The term also includes all "originals" and
2  "duplicates" as defined by Rule 1001.

3    14. "EAD" means the ERO Executive Associate Director.

4    15. "Effective communication" means taking the steps necessary to ensure
5  that whatever is written or spoken, or displayed visually or audibly, must be as clear
6  and understandable to people with disabilities as it is for people who do not have
7  disabilities.

8    16. "Electronic Information Systems" means a system that contains
9  computerized records, data or other information, including, without limitation,
10  databases.

11    17. "EDAC" means the ERO Disability Access Coordinator.

12    18. "FODs" means ICE Field Office Directors.

13    19. "Healthcare" means medical and mental health care, including but not
14  limited to routine medical care, chronic care, specialty care, and psychiatric care.

15    20. "IHSC" means the ICE Health Service Corps.

16    21. "Mobility device" means any device used to assist a person with a
17  mobility disability with walking, ambulating or personal transport, including
18  wheelchairs, canes, braces, walkers, crutches and electric scooters.

19    22. "Person" and "individual" mean any natural person or any business,
20  legal or government entity, or association—including, but not limited to, any
21  proprietorship, partnership, firm, company, or corporation.

22    23. "Plaintiffs" means Faour Abdallah Fraihat, Marco Montoya Amaya,
23  Raul Alcocer Chavez, Jose Segovia Benitez, Hamida Ali, Melvin Murillo
24  Hernandez, Jimmy Sudney, José Baca Hernández, Edilberto García Guerrero,
25  Martín Muñoz, Luis Manuel Rodriguez Delgadillo, Ruben Darío Mencías Soto,
26  Alex Hernandez, Aristoteles Sanches Martinez, Sergio Salazar Artaga, Inland

27
28

Coalition for Immigrant Justice, and Al Otro Lado, or any one or combination of the above.

24.    "Reasonable accommodation" or "reasonable modification" means any change or adjustment in the responding Defendants' operations to address a disability-related need, any modification to the responding Defendants' policies, practices, procedures, or requirements to address a disability-related need, or any provision of an aid or service that permits a person with a disability to participate in the responding Defendants' programs, services, or activities.

25.    "Reflect," "reflecting," "concern," "concerning," "mentioning," "related to," "relating to," "relate to," "refer to," or "referring to" and other variations thereof shall be construed in their broadest possible sense, and mean, without limitation, and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical or factual connection whatsoever with the subject addressed, regardless whether the factual connection is favorable to or adverse to you.

26.    "SDAC" means Supporting Disability Access Coordinators.

27.    "Segregation Directive" means ICE directive 11065.1, "Review of the Use of Segregation for ICE Detainees," September 4, 2013.

28.    "Segregation Review Coordinator" has the same meaning as used in the Segregation Directive.

29.    "Special vulnerabilities" has the same meaning as used in the Segregation Directive.

30.    "Disciplinary segregation" has the same meaning as used in the Segregation Directive.

31.    "You," "Your," and "Defendants" means U.S. Immigration Customs and Enforcement; U.S. Department of Homeland Security; and Kevin Mcaleenan, Matthew T. Albence, Derek N. Brenner, Timothy S. Robbins, Tae Johnson, Dr. Stewart D. Smith, Jacki Becker Klopp, and David P. Pekoske in their official capacities; including all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing including any person active under a contract or Intergovernmental Service Agreement ("IGSA") with ICE.

## **SCOPE**

1.    All documents produced in response to this request shall be organized and labeled to correspond with the number of the document request to which the documents are responsive.

2.    Words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires. The terms "and" and "or" and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a discovery request all responses that might otherwise be construed to be outside of its scope. The word "including" means "including without limitation." "Any" and "all" shall individually be construed to mean both any and all. "Relating to" is used in its broadest sense to include any connection, relation, or relevance.

3.    These document requests are continuing in nature, up to and during the course of trial. Documents sought by these requests that you obtain after you serve your responses must be produced to counsel for Plaintiffs by supplementary response.

4.     These requests call for all information that is known or available to the responding Defendants, including all information in the possession, custody, or control of any of their employees, attorneys, auditors, agents, investigators, and any other person or entity acting on their behalf or under their direction or control.

5.     Unless otherwise indicated, these document requests seek all responsive documents created or generated between January 1, 2015 and the present.

## **INSTRUCTIONS**

1.     Plaintiffs request that all relevant, responsive, and non-privileged documents be produced as follows:

a) Non-electronic documents shall be scanned into a static-image format with searchable text as specified herein.

b) Images shall be produced as single-page CCITT Group IV TIFF files in 300 dpi with an IPRO .LFP reference file containing document (D) and child (C) identifiers.  Each TIFF image shall have a unique, sequential identifying number which is the Bates number of the page.

c) A standard Concordance .DAT load file shall be provided containing all metadata fields specified below.

d) Document text shall be provided in a multipage .TXT file for each document, using extracted text for electronic data and OCR for scanned, non-electronic documents.  Each .TXT file shall be named per the ProdBeg value for each document and delivered in a folder named Text.

e) Native files shall be named per the ProdBeg value for each document and delivered in a folder named Natives.

f) The following metadata fields shall be provided as applicable for each document type:

| METADATA FIELDS FOR ALL ELECTRONIC DOCUMENTS | |
|---|---|
| ProdBeg | First bates number of email or document |
| ProdEnd | Last bates number of email or document |
| ProdBegAttach | First bates number of attachment(s) |
| ProdEndAttach | Last bates number of attachment(s) |
| Custodian | |
| All Custodians | Populated with names of all custodians for whom the document was processed whether or not the file was removed upon deduplication |
| Flie_Extension | |
| MD5Hash | |
| FilePath | Staring with container name (PST or NSF) through mailbox folder name - format example: Outlook PST\Inbox\Important |
| Record Type | Populated with Email, Attachment, or Loose File |
| NativePath | Relative path to native file if provided in production |
| TextPath | Relative path to document text/OCR file if provided in production |

| ADDITIONAL METADATA FIELDS FOR EMAIL | |
|---|---|
| SentDate | Format yyyymmdd |
| SentTime | Format hh:mm:ss |
| ReceivedDate | Format yyyymmdd |
| ReceivedTime | Format hh:mm:ss |
| From | |
| To | |
| CC | |
| BCC | |
| Subject | |
| ThreadID | Email thread identification value (ConversationIndex or other identifier) |
| Attachment Names | File names of attached documents |
| Num_Attachments | Number of attached documents |

| ADDITIONAL METADATA FIELDS FOR ALL ELECTRONIC DOCUMENTS OTHER THAN EMAIL | |
|---|---|
| Author | |
| CreateDate | Format yyyymmdd |
| CreateTime | Format hh:mm:ss |
| ModDate | Format yyyymmdd |
| ModTime | Format hh:mm:ss |
| DocTitle | |
| FileName | |
| FileSize | |

| METADATA FIELDS FOR SCANNED PAPER DOCUMENTS | |
|---|---|
| ProdBeg | First bates number of document |
| ProdEnd | Last bates number of document |
| ProdBegAttach | First bates number of attachment(s) |
| ProdEndAttach | Last bates number of attachment(s) |
| Custodian | |

    g) Audio, audiovisual, and video files shall be produced in their native formats. Plaintiffs reserve the right to request native files for any document that is unreadable or has limited accessibility in the Group IV TIFF format (e.g., MS Excel, PowerPoint, color documents, or databases).

2.    The term "native format" should be read to mean whatever format (for example, .pdf, .jpeg, or .doc) the file existed in originally, prior to production.

3.    All documents shall be produced on CD-ROMs or DVDs.

4.    Documents should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.

5.    Where specialized or proprietary software is required to access or use documents in their native format, please supply such software.

1 | 6.     All requests should be read to include a request for all metadata
2 | associated with all documents responsive to the request.

3 | 7.     If a responding Defendant is unable to comply with the above-listed
4 | requests for any reason, Plaintiffs request that it inform Plaintiffs of the reason
5 | compliance is not possible and produce responsive documents after a meet and
6 | confer discussion with Plaintiffs' counsel about the preferred format for such
7 | production.  Plaintiffs request that the responding Defendants not unilaterally select
8 | an electronic format for production.

## OBJECTIONS

10 | 1.     If a responding Defendant objects to part of a document request and
11 | refuses to answer that part, it must state its objection and answer the remaining
12 | portion of that request. If a responding Defendant objects to the scope or time period
13 | of a request and refuses to answer for that scope or time period, it must state its
14 | objection and answer the request for the scope or time period it believes is
15 | appropriate.

16 | 2.     With respect to any requested document which a responding Defendant
17 | refuses to produce in response to the Requests for Production on the basis of an
18 | asserted privilege, please state:

19 | a) The full identity of the document including:

20 | i.  the date of the document;

21 | ii.  its title (if any);

22 | iii. its authors, addresses, recipients or parties;

23 | iv. the nature of the document (*e.g.*, letter, memorandum, etc.);

24 | v.  the individual or source from whom or which Defendant
25 |     obtained it; and

26 | vi. its present location and identity of its custodian;

27 |
28 |

    b) Whether the objection or refusal is directed to the entire document or part thereof;

        i. If the objection or refusal goes to part of the document, specify the specific part(s) of the document to which the objection or refusal is directed;

    c) The specific factual basis that gives rise to the objection or refusal; and

    d) The specific legal privilege on which the objection or refusal is based.

3.    If any of the following requests cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying the responding Defendant's inability to answer the remainder, and stating whatever information the responding Defendant has concerning the unanswered portions. If the responding Defendant's answer is qualified in any way, please set forth the details of such qualification.

4.    If, to a responding Defendant's knowledge, documents responsive to one or more requests were never in its possession, custody, or control but are or have been in the possession, custody, or control of any other person, please identify all such persons.

5.    If any responsive document was formerly in a responding Defendant's possession, custody, or control but has been eliminated from its possession in any way, including, but not limited to, having been lost, destroyed, transmitted, or discarded, please submit a written statement as follows:

    a. Describe in detail the nature of the document and its contents;

    b. Identify the person or persons who authored, prepared or edited the document and, if applicable, the person or persons to whom the document was sent;

c. List all dates when the document was created, copied, or modified;

d. List all dates when the document was eliminated from your possession in any way; and

e. List all persons that have had possession of the document or have had knowledge of its contents.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 16:

Documents sufficient to identify all Electronic Information Systems that contain information, data or documents relating to medical care, mental health care, segregation of detained individuals, and treatment or accommodations requested by or provided to detainees with disabilities in Covered Facilities.

### REQUEST FOR PRODUCTION NO. 17:

All documents relating to instructions on the use of Electronic Information Systems that contain information, data or documents relating to medical care, mental health care, segregation of detained individuals, and treatment or accommodations requested by or provided to detainees with disabilities in Covered Facilities, including, without limitation, training materials, specifications, and/or user manuals.

### REQUEST FOR PRODUCTION NO. 18:

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken regarding ensuring Detention Facilities identify the disability-related needs of detained individuals at intake and during detention.

### REQUEST FOR PRODUCTION NO. 19:

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken regarding ensuring Detention Facilities track the disability-related needs of detained individuals during detention and upon transfer between detention facilities.

**REQUEST FOR PRODUCTION NO. 20:**

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken regarding ensuring Detention Facilities provide reasonable accommodations and/or reasonable modifications to detained individuals with disabilities.

**REQUEST FOR PRODUCTION NO. 21:**

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken regarding ensuring Detention Facilities provide detained individuals with disabilities effective communication, auxiliary aids, and mobility devices when needed.

**REQUEST FOR PRODUCTION NO. 22:**

All documents relating to or generated pursuant to DHS Management Directive 259-01 regarding Detention Facilities, including any delegations or other procedures, practices, guidance, instructions, or training regarding that directive.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to or generated pursuant to DHS Management Directive 065-01 regarding Detention Facilities, including any delegations or other procedures, practices, guidance, instructions, or training regarding that directive.

**REQUEST FOR PRODUCTION NO. 24:**

All documents relating to any complaints received regarding reasonable accommodations or modifications, effective communication, auxiliary aids, or any failures to meet the disability-related needs of persons in Detention Facilities.

**REQUEST FOR PRODUCTION NO. 25:**

All documents generated pursuant to the Assessment and Accommodation Directive, including, without limitation, documents relating to: reports by the EDAC to the DMC (directive at §5.1(2)); communications between the EDAC and SDAC, Field Offices and detention facility personnel concerning monitoring of the care and

treatment of detainees with disabilities (§5.2(3)); notifications and other requirements under section 5.3; review and oversight by FODs or their designees pursuant to section 5.4; reviews and responses by the EDAC and other ERO Headquarters personnel pursuant to section 5.5; ICE determinations on the provision of accommodations pursuant to section 5.6; ICE Headquarters oversight and reporting pursuant to section 5.7, including, without limitation, documents relating to the data system to collect disability accommodation reports and notifications as set forth in section 5.7(1)(a); and documents relating to training pursuant to section 6.

**REQUEST FOR PRODUCTION NO. 26:**

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken regarding ensuring Detention Facilities make detained individuals with disabilities aware of their rights to reasonable accommodations in detention facilities and the process for requesting such accommodations.

**REQUEST FOR PRODUCTION NO. 27:**

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken regarding ensuring Detention Facilities maintain effective processes for detained individuals to request disability-related  accommodations, including policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken to ensure that forms and materials in connection with those processes are provided in formats that are accessible to persons with disabilities.

**REQUEST FOR PRODUCTION NO. 28:**

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken regarding ensuring

Detention Facilities maintain effective grievance and/or complaint procedures for detained individuals with disabilities.

**REQUEST FOR PRODUCTION NO. 29:**

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken regarding ensuring Detention Facilities convene multidisciplinary teams to assess the cases of detained persons with disabilities, including detained persons with disabilities whose initial requests for accommodations have been denied.

**REQUEST FOR PRODUCTION NO. 30:**

All documents relating to any self-evaluation(s) Defendants have prepared to identify modifications to policies and practices or facility improvements at Detention Facilities needed to ensure the programs and services at such facilities are readily accessible to and usable by detained individuals with disabilities.

**REQUEST FOR PRODUCTION NO. 31:**

All documents relating to any transition planning, Disability Access Plans, or Disability Component Plans Defendants have conducted or prepared to identify structural or other changes needed to achieve program accessibility for detained individuals with disabilities at Detention Facilities and any steps Defendants have taken to implement such transition planning, Disability Access Plans or Disability Component Plans.

**REQUEST FOR PRODUCTION NO. 32:**

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken to ensure that the programs, services, activities, or benefits at Detention Facilities are readily accessible to and usable by persons with disabilities, including any policies, procedures, practices, guidance, instructions, training regarding program accessibility.

**REQUEST FOR PRODUCTION NO. 33:**

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken to ensure that selection of sites or locations for Detention Facilities' programs, services, activities or benefits does not deny detained individuals with disabilities meaningful access to those programs, services, activities or benefits.

**REQUEST FOR PRODUCTION NO. 34:**

All documents relating to policies, procedures, practices, guidance, instructions, training regarding disability access coordinators or disability compliance managers and any steps Defendants have taken to ensure that persons with disabilities in Detention Facilities have access to disability access coordinators or disability compliance managers.

**REQUEST FOR PRODUCTION NO. 35:**

Documents sufficient to show the identity and qualifications of each person who has held the position of EDAC from January 1, 2016 to the present.

**REQUEST FOR PRODUCTION NO. 36:**

Documents sufficient to show the identity, qualifications, and assigned Field Office for each SDAC from January 1, 2016 to the present.

**REQUEST FOR PRODUCTION NO. 37:**

All documents relating to policies, procedures, practices, guidance, instructions, training and any other steps Defendants have taken to ensure that Detention Facilities do not improperly place detained individuals with disabilities in segregation or administrative segregation in Detention Facilities.

**REQUEST FOR PRODUCTION NO. 38:**

All documents relating to policies or procedures for determining placement of detained individuals in each of the following units: disciplinary segregation; administrative segregation; medical segregation; and mental health segregation.

**REQUEST FOR PRODUCTION NO. 39:**

All documents relating to the procedures to be followed prior to placing a detained individual in each of the following units: disciplinary segregation; administrative segregation; medical segregation; and mental health segregation.

**REQUEST FOR PRODUCTION NO. 40:**

All documents relating to policies or procedures addressing the amount of time detained persons are allowed outside of their cells each day, including, without limitation, the amount of time each day they are allowed to use of the recreational room and patio/yard, for each of the following units: disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 41:**

All documents relating to policies or procedures addressing detained persons' ability to access confidential and non-confidential phone calls in each of the following units: disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 42:**

All documents relating to policies or procedures addressing remote visits, including, without limitation, those performed through use of video in tablets, in each of the following units: disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 43:**

All documents relating to policies or procedures addressing in-person visitation for each of the following units: disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 44:**

All documents relating to policies or procedures addressing detained persons' access to personal items and books, showering, shaving, law libraries, and

commissary in each of the following units: disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 45:**

All documents relating to policies or procedures addressing the use of restraints on people in each of the following units: disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 46:**

All documents relating to policies or procedures addressing the use of strip searches of people in each of the following units: disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 47:**

All documents relating to policies or procedures addressing the placement of people with special vulnerabilities in disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 48:**

All documents relating to policies or procedures addressing the use of segregation for people exhibiting mental health symptoms or to otherwise address mental health issues, including, without limitation, segregation of people who exhibit suicidal symptoms.

**REQUEST FOR PRODUCTION NO. 49:**

All documents relating to policies or procedures addressing mental healthcare (including, without limitation, access to medications and treatment, such as individual therapy, group therapy, and teletherapy) provided to individuals in disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 50:**

All documents relating to policies or procedures addressing the frequency of welfare checks made on people with special vulnerabilities placed in disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 51:**

All documents relating to policies or procedures addressing the placement of pregnant individuals in disciplinary segregation, administrative segregation, medical segregation, and mental health segregation, including, without limitation, policies or procedures addressing access to prenatal care, specialized care and medical and mental health care.

**REQUEST FOR PRODUCTION NO. 52:**

All studies and reports issued since January 1, 2013 (including, without limitation, studies or reports issued by OIG or CRCL[1]) relating to segregation in Covered Facilities, including the use, prevalence, and impact of segregation on detained individuals.

**REQUEST FOR PRODUCTION NO. 53:**

All complaints relating to segregation in Covered Facilities, including, without limitation, grievances from detained individuals, as well as complaints from advocates and lawsuits.

---

[1] *See* U.S. DEP'T OF HOMELAND SEC., OFF. OF C.R. AND C.L., FISCAL YEAR 2014 ANNUAL REPORT TO CONGRESS 15 (July 28, 2015), https://www.dhs.gov/sites/default/files/publications/crcl-fy-2014-annual-report_0.pdf ("Following issuance of ICE's September 2013 directive 'Review of the Use of Segregation for ICE Detainees,' as well as DOJ and DHS policies providing new protections for unrepresented immigration detainees with serious mental disorders or conditions that may render them mentally incompetent to represent themselves in immigration proceedings, the Immigration Section and Compliance Branch have undertaken regular review of ICE's implementation of the Directive and have worked to develop further policy approaches to recognize and respond to the needs, in particular, of vulnerable populations in segregated housing, including lesbian, gay, bisexual, or transgender (LGBT) detainees and detainees with serious health concerns, mental health conditions, or disabilities.").

**REQUEST FOR PRODUCTION NO. 54:**

All documents relating to Defendants' response, if any, to complaints concerning segregation in Covered Facilities.

**REQUEST FOR PRODUCTION NO. 55:**

All Detainee Death Reviews for detained individuals who died while in segregation at a Covered Facility.

**REQUEST FOR PRODUCTION NO. 56:**

Documents sufficient to show how a person with a special vulnerability for purposes of segregation is identified by facility staff.

**REQUEST FOR PRODUCTION NO. 57:**

Documents sufficient to show policies and procedures addressing how detained people can request placement in segregation.

**REQUEST FOR PRODUCTION NO. 58:**

Documents sufficient to show policies and procedures relating to accommodations for people with disabilities to participate in the placement process, including requests for placement.

**REQUEST FOR PRODUCTION NO. 59:**

Documents sufficient to show policies and procedures relating to accommodations for people with disabilities to participate in the placement review process.

**REQUEST FOR PRODUCTION NO. 60:**

All documents relating to section 5.1 of the Segregation Directive, including, without limitation, policies or procedures relating to section 5.1 and documents relating to notification of, and review by, Field Office Directors of segregation.

**REQUEST FOR PRODUCTION NO. 61:**

All documents relating to section 5.2 of the Segregation Directive, including, without limitation, documents relating to: policies or procedures relevant to section

5.2; identification of detained individuals covered by section 5.2; notification of, and review by, FODs, CMD, IHSC and other members of the DMC subcommittee and Segregation Review Coordinator that detained individuals covered by section 5.2 have been placed in segregation; placement of detained individuals with special vulnerabilities in segregation; efforts to ensure that the placement of detained individuals with special vulnerabilities in segregation is only used as a last resort and when no other viable housing options exist; and any actions taken in connection with that review.

**REQUEST FOR PRODUCTION NO. 62:**

All documents relating to section 5.3 of the Segregation Directive, including, without limitation, documents relating to: policies or procedures relevant to section 5.3; and reports by FODs pursuant to this section.

**REQUEST FOR PRODUCTION NO. 63:**

All documents relating to section 5.4 of the Segregation Directive, including, without limitation, documents relating to policies or procedures relevant to section 5.4, and notification of FODs, CMD, and the DMC subcommittee that a detained individual has been released from segregation.

**REQUEST FOR PRODUCTION NO. 64:**

All documents relating to section 6 of the Segregation Directive, including, without limitation, documents relating to measures taken by FODs to ensure that all detention facilities are aware of the notification requirements and other relevant standards on the appropriate use of segregation.

**REQUEST FOR PRODUCTION NO. 65:**

All documents relating to section 7.2 of the Segregation Directive, including, without limitation, documents relating to: policies or procedures relevant to section 7.2; any systems used by the DMC subcommittee and Segregation Review

1  Coordinator to maintain information about segregation placements; and any lists of
2  "relevant facility resources and capabilities."

3  **REQUEST FOR PRODUCTION NO. 66:**

4       Documents sufficient to show the job description and responsibilities of the
5  Segregation Review Coordinator.

6  **REQUEST FOR PRODUCTION NO. 67:**

7       All documents relating to section 7.3 of the Segregation Directive, including,
8  without limitation, documents relating to: policies or procedures relevant to section
9  7.3; compilations of information about facility medical resources and capabilities;
10 review by IHSC of cases identified by FODs or other ICE personnel as raising
11 disability, medical or mental health concerns in the context of segregation; any
12 resulting feedback from IHSC; and any work by IHSC to determine suitable
13 accommodations for detainees with disabilities and to ensure appropriate treatment
14 for detainees with medical or mental health conditions.

15 **REQUEST FOR PRODUCTION NO. 68:**

16      All documents relating to section 7.4 of the Segregation Directive, including,
17 without limitation, documents relating to policies or procedures relevant to section
18 7.4 and documents relating to work done by the Office of Detention Policy and
19 Planning relevant to segregation in Covered Facilities.

20 **REQUEST FOR PRODUCTION NO. 69:**

21      All documents relating to section 7.5 of the Segregation Directive, including,
22 without limitation, documents relating to: policies or procedures relevant to section
23 7.5; review by the DMC of segregation reports and other available information
24 regarding detainees placed in segregation; designation by the DMC of facilities for
25 heightened review; review by the DMC of oversight inspections regarding the use
26 of segregation; reports by the DMC and the Director; and discussion and

27

28

recommendations by the DMC concerning national trends and information about the use of segregation in detention facilities

**REQUEST FOR PRODUCTION NO. 70:**

All minutes of the meetings of the DMC from Jan. 1, 2010 to present.

**REQUEST FOR PRODUCTION NO. 71:**

Documents sufficient to show the identities of all Segregation Review Coordinators and members of the DMC from Jan. 1, 2010 to present.

**REQUEST FOR PRODUCTION NO. 72:**

All documents relating to section 8 of the Segregation Directive, including, without limitation, all documents relating to policies or procedures relevant to section 8 and all documents relating to training identified in section 8.

**REQUEST FOR PRODUCTION NO. 73:**

Documents sufficient to show, on a monthly basis, the capacity and the average daily population at each Covered Facility for each of the following units: disciplinary segregation, administrative segregation, medical segregation, and mental health segregation.

**REQUEST FOR PRODUCTION NO. 74:**

All documents relating to oversight and monitoring by Defendants of segregation in Covered Facilities, including, without limitation, any surveys or reports or other documents relating to attempts by Defendants to ensure that procedures or protocols governing segregation are being implemented in Covered Facilities, and/or to ensure that segregation practices in each Covered Facility comports with Defendants' expectations.

**REQUEST FOR PRODUCTION NO. 75:**

All documents relating to any steps taken by Defendants in response to information indicating that procedures or protocols governing segregation were not being implemented or followed in one or more Covered Facility, including, without

1  limitation, documents relating to any fines or penalties or other measures taken in
2  response to this information.

3  **REQUEST FOR PRODUCTION NO. 76:**

4       All documents relating to any measures taken by Defendants to train staff at
5  Covered Facilities on policies or procedures relating to segregation, including,
6  without limitation, documents related to training on the Segregation Directive, use
7  of Electronic Information Systems, procedural steps that must be taken before
8  placing a detained individual into segregation, frequency of welfare checks on
9  people in segregation, and provision of mental or medical healthcare to people in
10 segregation.

11 **REQUEST FOR PRODUCTION NO. 77:**

12      All policies, standard operating procedures, and written practices/procedures
13 related to healthcare, both medical and mental health, promulgated by ICE and IHSC
14 applicable to Detention Facilities.

15 **REQUEST FOR PRODUCTION NO. 78:**

16      All documents and communications related to monitoring, oversight, or
17 auditing of healthcare (both medical and mental health) at Detention Facilities by
18 Defendants, ICE, ERO, ICE's Custody Management Division, IHSC, Medical Case
19 Management Unit, Field Medical Coordinators, Office of Detention Oversight, Field
20 Offices, Detention Service Managers, Detention Standards Compliance Officers,
21 OIG, CRCL, Contracting Officer's Technical Representatives, inspectors, agents, or
22 any third-party contractors, including, without limitation, quality improvement,
23 quality assurance, clinical performance reviews, peer reviews, internal or external
24 audits, staffing assessments, staffing reports, accreditation, technical assistance,
25 reports, contract monitoring, metrics concerning delays in service or care, detainee
26 death reviews, morbidity reviews, mortality reviews, ethical complaints, detainee
27
28

grievances, quality of care assessments, incident reports, assessments of care delivery and timeliness.

**REQUEST FOR PRODUCTION NO. 79:**

All documents gathered or generated pursuant to sections 8.1-8.3 of the Detainee Death Directive.

**REQUEST FOR PRODUCTION NO. 80:**

All documents and communications concerning third-party vendors involved in the provision of health care or monitoring of health care at Detention Facilities, including, without limitation, contracts, audits, reviews, investigations, ethical complaints, quality assurance, improvement, and reports from any monitoring or inspections.

**REQUEST FOR PRODUCTION NO. 81:**

Documents sufficient to show the names, positions, lengths of tenure, credentials, licenses and any disciplinary history (including malpractice), and licensing/practice restrictions of all health care staff providing care at Detention Facilities, whether employed directly by Defendants, through a contract with Defendants, or through contracts with third parties.

**REQUEST FOR PRODUCTION NO. 82:**

All documents relating to any staffing at Detention Facilities, including, without limitation, staffing analysis, medical staffing needs, needs-based budgets for health care, peer review, investigations, reports, requests from Detention Facilities, and resulting recommendations for Detention Facilities.

**REQUEST FOR PRODUCTION NO. 83:**

All documents and communications relating to Plaintiffs.

**REQUEST FOR PRODUCTION NO. 84:**

All documents and communications to the Acting Secretary of ICE, the Assistant Secretary of ERO, and the Acting Secretary of DHS relating to healthcare in Detention Facilities.

**REQUEST FOR PRODUCTION NO. 85:**

A blank copy of all forms relating to healthcare at Detention Facilities.

**REQUEST FOR PRODUCTION NO. 86:**

All documents, communications, reports, findings, recommendations, and responses relating to any audits, investigation or review of Detention Facilities' provision of healthcare and any disciplinary or corrective actions relating to such audits, investigation, or review.

**REQUEST FOR PRODUCTION NO. 87:**

All documents and communications relating to potential or actual contract breaches or violations relating to healthcare in Detention Facilities, including, without limitation, all discrepancy reports, quality assurance plans, notices of deficiencies, pre-contract facility/locality assessments, QC reports, QA reports, notices of claims, notices or claims for contract breaches, corrective action plans, and waivers.

**REQUEST FOR PRODUCTION NO. 88:**

All documents and communications relating to grievances or complaints by detained persons in Detention Facilities relating to healthcare, including, without limitation, reports or audits of grievance/complaint processes, reports of the numbers of complaints received in Detention Facilities, meeting minutes concerning grievances/complaints, corrective plans concerning grievances and complaints, or findings reports.

**REQUEST FOR PRODUCTION NO. 89:**

Documents sufficient to show any specialty and chronic care that is available at specific Detention Facilities without needing to travel to an outside provider.

**REQUEST FOR PRODUCTION NO. 90:**

All documents and communications relating to detained individuals being sent to outside providers, chronic and specialty care, emergency rooms and hospitals, including, without limitation, documents concerning scheduling, tracking and approvals to obtain such care, documents related to assessing wait times in medical care, and quality assurance or other quality reports and/or audits created by or sent to ICE or IHSC relating to chronic or specialty care encounter timing, adequacy or wait periods.

**REQUEST FOR PRODUCTION NO. 91:**

All documents and communications relating to healthcare backlogs in Detention Facilities.

**REQUEST FOR PRODUCTION NO. 92:**

All documents and communications relating to local, regional or centralized utilization committee meetings and reviews, including, without limitation, the minutes of meetings, reports and written decisions of meetings or reviews and other written content relating to the review of specialty and other types of care that require centralized approval by ICE.

**REQUEST FOR PRODUCTION NO. 93:**

All documents and communications relating to Detention Facilities' requests to Defendants for any health services, devices, assessments or other care, including, without limitation, any written requests, decisions and reviews (whether individual or in the aggregate), tracking of these requests, and any reviews of these processes or proposals to improve or change, and memos to Detention Facilities regarding updates or changes in requests for any health service or care.

**REQUEST FOR PRODUCTION NO. 94:**

All documents, communications, policies and procedures, relating to sick calls, including emergency sick calls, for people detained at Detention Facilities.

**REQUEST FOR PRODUCTION NO. 95:**

Documents sufficient to show the number and types of surgeries performed on people held at Detention Facilities annually.

**REQUEST FOR PRODUCTION NO. 96:**

All policies, practices, documents and communications relating to pharmacy, prescription drug databases, pharmacy formularies, medication utilization and continuity, and medication compliance at Detention Facilities, including, without limitation, any reports internal or otherwise regarding medication errors, adherence and medication side effects among detainees, audits or reports of the adequacy or timing of pharmacy services provided within Detention Facilities and any memos or other documents sent to or form ICE regarding medication and pharmacy access and services, any reports or documents relating to medication shortages and proposed or implemented responses to shortages of medications, whether sent to or from ICE.

**REQUEST FOR PRODUCTION NO. 97:**

All policies, practices, and documents relating to medication distribution, pill call, and keep on person medications, including, without limitation, training, standing orders, and patient education.

**REQUEST FOR PRODUCTION NO. 98:**

All documents relating to any policies regarding nurses in Detention Facilities, including, without limitation, all rules, regulations, job descriptions, training materials, guidelines, guidance, standing orders, memoranda.

**REQUEST FOR PRODUCTION NO. 99:**

All documents relating to any policies regarding doctors at Detention Facilities, including, without limitation, all rules, regulations, job descriptions, training materials, guidelines, guidance, standing orders, or memoranda.

**REQUEST FOR PRODUCTION NO. 100:**

All documents relating to any policies regarding mental health care professionals at Detention Facilities, including, without limitation, all rules, regulations, job descriptions, training materials, guidelines, guidance, standing orders, or memoranda.

**REQUEST FOR PRODUCTION NO. 101:**

All documents relating to the March 20, 2019 memorandum from Cameron Quinn and Marc Pachon to Ronald Vitiello and Michael Davis,[2] including, without limitation, the complaints referenced in that memo, documents relating to those complaints, communications relating to the memo, and documents relating to any actions in response to the memo.

**REQUEST FOR PRODUCTION NO. 102:**

All clinical guidance for the medical or mental health treatment of detained individuals provided by Defendants and IHSC to all Detention Facilities.

**REQUEST FOR PRODUCTION NO. 103:**

All documents and communications relating to ethical complaints or concerns about malpractice or adequacy of health care at Detention Facilities, including, without limitation, disciplinary infractions, malpractice findings by Boards of Medical Examiners, correspondence between ICE personnel and medical ethics committees or Boards, ombudsmen, patient advocates or health departments, and

---

[2] This document can be found at https://www.documentcloud.org/documents/6575024-ICE-Whistleblower-Report.html.

any findings by ICE or its agents concerning ethical complaints by healthcare providers.

**REQUEST FOR PRODUCTION NO. 104:**

Any documents and communications related to requests for information from the Centers for Disease Control and Prevention regarding the incidence, prevalence, diagnosis or delivery of care at Detention Facilities, including responses by ICE personnel, meeting minutes, reports, reviews by the CDC, or other documents created as a result.

**REQUEST FOR PRODUCTION NO. 105:**

All contracts with third-party healthcare contractors at Detention Facilities.

**REQUEST FOR PRODUCTION NO. 106:**

All contracts with third-party vendors conducting any quality assurance, reviews, or inspections.

**REQUEST FOR PRODUCTION NO. 107:**

All documents relating to audits or assessments of medical care equipment, medical supplies, and medications, including but not limited to inventory reports.

**REQUEST FOR PRODUCTION NO. 108:**

All policies, practices, internal auditing and training relating to medical record keeping and transfer of medical records between Detention Facilities, between prisons and jails and Detention Facilities and between outside providers and Detention Facilities.

**REQUEST FOR PRODUCTION NO. 109:**

All documents and communications relating to electronic medical record keeping.

**REQUEST FOR PRODUCTION NO. 110:**

All policies, practices, documents, reports, standard operating procedures, and auditing assessments relating to the provision of interpreters and translators during medical and mental health care appointments.

**REQUEST FOR PRODUCTION NO. 111:**

All documents and communications related to all individuals detained by Defendants who died of any cause while in Detention Facilities or while receiving outside medical care while in Defendants' custody since January 1, 2010, including, without limitation, death lists, detainee death reviews, third-party assessments of deaths, and reporting to outside agencies.

**REQUEST FOR PRODUCTION NO. 112:**

All policies, practices, documents, communications, memoranda and reports relating to refusals of healthcare, including, without limitation, patient education, refusal forms, and documentation and tracking of refusals.

**REQUEST FOR PRODUCTION NO. 113:**

All documents and communications relating to healthcare budgets of Detention Facilities.

**REQUEST FOR PRODUCTION NO. 114:**

All documents, policies and practices relating to infection control at Detention Facilities.

**REQUEST FOR PRODUCTION NO. 115:**

All documents, policies, and practices relating to special medical diets.

**REQUEST FOR PRODUCTION NO. 116:**

All documents, policies and practices relating to suicide and self-harm, including, without limitation, incident reports, investigation findings, and trainings.

**REQUEST FOR PRODUCTION NO. 117:**

Documents sufficient to show all vacancies for healthcare positions at Detention Facilities between January 1, 2015 and the present.

**REQUEST FOR PRODUCTION NO. 118:**

Documents relating to organizational charts of ICE and IHSC.  This Request includes documents sufficient to identify the individual staff members, their titles, and their qualifications, as well as the organizational structure of ICE and IHSC, including any vacancies.

**REQUEST FOR PRODUCTION NO. 119:**

All documents and communications relating to evaluations and inspections of Detention Facilities related to compliance with portions of the Performance-Based National Detention Standards, National Detention Standards, American Correctional Association or other standard-setting body concerning healthcare, including reports, findings, recommendations, waivers, checklists and questionnaires.

**REQUEST FOR PRODUCTION NO. 120:**

All meeting minutes concerning healthcare delivery at Detention Facilities, including, without limitation, minutes of meetings for mortality reviews, quality assurance and quality improvement reviews, and utilization review meetings.

**REQUEST FOR PRODUCTION NO. 121:**

All corrective action plans or updates, reports, and revisions to corrective action plans relating to healthcare in Detention Facilities.

**REQUEST FOR PRODUCTION NO. 122:**

All documents, communications, policies, practices, training materials, standard operating proceedings or memoranda relating to detoxification from alcohol, opiates or  other substances and treatment of any substance use disorder, including, without limitation, monitoring of people during detoxification and

screening tools or other approaches to monitoring and delivery of care during withdrawal or detoxification periods.

**REQUEST FOR PRODUCTION NO. 123:**

All documents, communications, policies, practices, restrictions, training materials, standard operating procedures or memoranda relating to involvement of security staff in delivery of health services, including, without limitation, blood sugar monitoring, administration of medications, asthma inhalers, involvement in sick call, involvement in approvals for accessing medical care, responding to medical care refusals, and any documentation in medical records of security staff.

**REQUEST FOR PRODUCTION NO. 124:**

All policies, procedures, standard operating procedures, audits, quality assurance and improvement reports relating to medical and mental health care screening and suicide and self-harm screenings.

**REQUEST FOR PRODUCTION NO. 125:**

All documents, communications, reports, audits and findings relating to medical and mental healthcare needs-assessments at Detention Facilities, including but not limited to censuses, and assessments of access to medical and mental health care resources, such as hospitals, specialty care, and providers, located in areas near Detention Facilities.

1  Respectfully submitted,

2  DATED:  August 10, 2020

3  /s/ Jared Davidson                    /s/ Stuart Seaborn

4  Jared Davidson                        Stuart Seaborn
   Shalini Goel Agarwal                  Christina Brandt-Young
5  Veronica Salama                       Melissa Riess
   SOUTHERN POVERTY LAW                  Rosa Lee V. Bichell
6  CENTER                                DISABILITY RIGHTS
                                         ADVOCATES
7  /s/ Timothy P. Fox
                                         /s/ Michael W. Johnson
8  Timothy P. Fox
   Elizabeth Jordan                      Michael W. Johnson
9  Maria del Pilar Gonzalez Morales      Dania Bardavid
   CIVIL RIGHTS EDUCATION AND            Leigh Coutoumanos
10 ENFORCEMENT CENTER                    Jessica Blanton
                                         Joseph Bretschneider
11 /s/ William F. Alderman               Timothy Ryan
                                         WILLKIE FARR &
12 William F. Alderman                   GALLAGHER LLP
   Mark Mermelstein
13 Jake Routhier
   ORRICK, HERRINGTON
14 & SUTCLIFFE LLP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

RE:   Faour Abdallah Fraihat, et al. v. U.S. Immigration and Customs Enforcement, et al.
Case No.: 5:19-CV-01546 JGB (SHKx)

I, Leigh Coutoumanos, declare as follows: I am 18 years of age or over and am not a party to this action. My place of business is 1875 K Street NW, Suite 100, Washington, DC 20006.

On August 10, 2020, I served a copy of the following entitled document(s):

PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

on the following attorneys for defendants in said cause:

William Peachey
*william.peachey@usdoj.gov*
Jeffrey S. Robins
*jeffrey.robins@usdoj.gov*
Hans H. Chen
*Hans.H.Chen@usdoj.gov*
Hayden Windrow
*hwindrow@civ.usdoj.gov*
Anna L. Dichter
*anna.l.dichter@usdoj.gov*
Lindsay M. Vick
*lindsay.vick@usdoj.gov*

United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4023
Fax: (202) 305-7000

[X]   <u>VIA EMAIL</u> I caused such document to be transmitted via email to the addressee(s) from my email address: lcoutoumanos@willkie.com.

[ ]   <u>VIA FACSIMILE</u>  I caused such document to be transmitted via facsimile to the addressee(s) from my office's facsimile service and fax number 202-303-2263. The transmission by facsimile was reported as complete and without error.

[ ]   <u>VIA MAIL</u>  I placed such envelopes for collection and mailing on this date following ordinary business practices.

/s/
Leigh Coutoumanos