Timothy P. Fox (CA Bar 157750)
*tfox@creeclaw.org*
Elizabeth Jordan*
*ejordan@creeclaw.org*
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
1245 E. Colfax Avenue, Suite 400
Denver, CO 80218
Tel.: (303) 757-7901
Fax: (303) 872-9072

Veronica Salama*
*veronica.salama@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
P.O. Box 1287 Decatur, GA, 30031
Tel: (404) 221-5825
Fax: (404) 221-5857

Stuart Seaborn (CA Bar 198590)
*sseaborn@dralegal.org*
Melissa Riess (CA Bar 295959)
*mriess@dralegal.org*
Rosa Lee V. Bichell (CA Bar 331530)
*rbichell@dralegal.org*
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor
Berkeley, California 94704
Tel.: (510) 665-8644
Fax: (510) 665-8511

Attorneys for Plaintiffs (continued on next page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, <br><br> Defendants. | Case No.: 19-cv-01546-JGB(SHKx) <br><br> **JOINT REPORT ON THE APPOINTMENT OF A SPECIAL MASTER** <br><br> Date: March 19, 2021 |

William F. Alderman (CA Bar 47381)
*walderman@orrick.com*
Jake Routhier (CA Bar 324452)
*jrouthier@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
Tel.:  (415) 773-5700
Fax: (415) 773-5759

Michael W. Johnson*
*mjohnson1@willkie.com*
Jessica Blanton*
*jblanton@willkie.com*
Joseph Bretschneider*
*jbretschneider@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel.:  (212) 728-8000
Fax: (212) 728-8111

Christina Brandt-Young*
*cbrandt-young@dralegal.org*
DISABILITY RIGHTS
ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel.: (212) 644-8644
Fax: (212) 644-8636

Benjamin R. Salk*
*benjamin.salk@splcenter.org*
SOUTHERN POVERTY LAW
CENTER
111 E. Capitol Street, Suite 280
Jackson, MS 39201
Tel: 601-948-8882
Fax: 601-948-8885
Maya Rajaratnam*
*maya.rajaratnam@splcenter.org*
400 Washington Ave,
Montgomery, AL 36104
Tel: 334-956-8307
Fax: 334-956-8307

Mark Mermelstein (CA Bar 208005)
*mmermelstein@orrick.com*
ORRICK, HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
Tel.: (213) 629-2020
Fax: (213) 612-2499

Leigh Coutoumanos*
*lcoutoumanos@willkie.com*
Timothy Ryan*
*tryan@willkie.com*
WILLKIE FARR &
GALLAGHER LLP
1875 K Street NW, Suite 100
Washington, DC 20006
Tel.:  (202) 303-1000
Fax: (202) 303-2000

Maria del Pilar Gonzalez Morales
(CA Bar 308550)
*pgonzalez@creeclaw.org*
CIVIL RIGHTS EDUCATION
AND ENFORCEMENT CENTER
1825 N. Vermont Avenue, #27916
Los Angeles, CA 90027
Tel.:  (805) 813-8896
Fax: (303) 872-9072

Lisa Graybill*
*graybill@nilc.org*
NATIONAL IMMIGRATION LAW
CENTER
P.O. Box 40476
Austin, TX 78704

Attorneys for Plaintiffs (continued from previous page)
*Admitted Pro Hac Vice

1   Brian M. Boynton
    Acting Assistant Attorney General
2   U.S. Department of Justice
    Civil Division
3   William C. Peachey
    Director
4   Office of Immigration Litigation
    District Court Section
5   Jeffrey S. Robins
    Deputy Director
6   Nicole N. Murley
    Senior Litigation Counsel
7   Anna L. Dichter (NJ 304442019)
    Lindsay M. Vick (MA 685569)
8   Trial Attorneys
    Civil Division, Office of Immigration Litigation
9   District Court Section
    U.S. Department of Justice
10  P.O. Box 868 Ben Franklin Station
    Washington, DC 20044
11  Telephone: (202) 353-2405
    Facsimile: (202) 305-7000
12  Anna.l.dichter@usdoj.gov

13  Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to the Court's March 10, 2021 order, ECF No. 281, the parties met and conferred on March 17, 2021 with respect to the parameters for appointment of a Special Master, including (1) three candidates to be considered for the appointment as Special Master; (2) a detailed description of the scope of the Special Master's mandate, including proposed duties and responsibilities; (3) a proposed fee arrangement to cover the Special Master's fees and expenses; and (4) a proposed timeline for the Special Master's activities.

## A. Candidates for Special Master

Plaintiffs' Position:

Plaintiffs put forth the following candidates for appointment as Special Master. Plaintiffs have confirmed with these individuals that they are available and willing to serve as Special Master should the Court appoint them.

- **(Ret.) Judge Shira Scheindlin:** Judge Scheindlin is a retired federal judge formerly of the Southern District of New York and is currently of counsel to Stroock & Stroock & Lavan LLP. Her biography is attached as **Exhibit A**.[1]

---

[1] Judge Scheindlin serves on the board of directors of the Lawyers Committee for Civil Rights Under Law, which is co-counsel to Plaintiffs' counsel the Southern Poverty Law Center in an unrelated matter pending in Louisiana state court, *Allen v. Edwards*. Plaintiffs' counsel is not aware of any reason this should disqualify Judge Scheindlin from consideration.

Separately, Plaintiffs wish to respond to Defendants' characterization of an opinion of the Second Circuit regarding Judge Scheindlin. In the opinion Defendants cite, a superseding order of an earlier summary order, the Second Circuit wrote, "We emphasize at the outset that we make no findings of misconduct, actual bias, or actual partiality on the part of Judge Scheindlin," and "clarif[ied] that [it] did not intend to imply in [its] previous order that Judge Scheindlin engaged in misconduct cognizable either under the Code of Conduct or under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 372, *et seq.*" *Ligon v. City of New York*, 736 F.3d 118, 122, 124, 128 (2d Cir. 2013).

**1**

- **(Ret.) Judge Patrick Walsh:** Judge Walsh is a retired federal chief magistrate judge formerly of the Central District of California and is currently affiliated with Signature Resolution and lectures at USC Gould School of Law.  His biography is attached as **Exhibit B**.

- **Ginny Morrison:**  Ms. Morrison is owner of Collaboration Specialists and an attorney with more than twenty years of experience as a special master and monitor, having frequently served in matters involving conditions in carceral settings.  Her biography is attached as **Exhibit C**.[2]

As described below, Defendants object to the appointment of a retired judicial officer. However, Plaintiffs believe that the Special Master's duties will entail substantial ongoing monitoring and oversight, which will likely exceed the available capacity of an acting federal magistrate judge. Additionally, Defendants assert that the duties of the Special Master are inappropriate for a retired judge, and yet propose to appoint a magistrate judge without explaining why such an appointment would be more appropriate.

Defendants' Position:

Defendants do not have additional proposals; however, Defendants raise four overarching objections. First, while the Court has found that appointment of a special master is warranted, Defendants again note that the Court is empowered to appoint a federal magistrate judge for this purpose—and that such appointment is appropriate in consideration of the costs to be passed on to the parties. Second,

---

[2] In response to Defendants' objection that Ms. Morrison's complete list of publications, presentations, and matters is not provided in connection with this Joint Report, Plaintiffs note that, if selected, Ms. Morrison will be required to disclose any potential conflicts prior to her appointment, based on the same standards under which a federal judge would be disqualified from a case. *See* Fed. R. Civ. P. 53(a)(2) (incorporating standards for disqualification under 28 U.S.C. § 455).

**2**

because the nature of the Court's findings regarding appointment of a special master are factual and operational in nature, and not legal, retired judicial officers (who often command high hourly rates) may not be the best candidates. Finally, Defendants specifically object to the appointment of Judge Scheindlin given concerns about her impartiality. *See Ligon v. City of New York*, 736 F.3d 118, 124 (2d Cir. 2013) (holding that because Judge Scheindlin appeared impartial, her disqualification was required under the Code of Conduct for United States Judges). Defendants object to the appointment of Ms. Morrison to the extent that her biography and other publicly available information does not reveal all of her publications, presentations, nor the full range of matters that she has appeared in, which prevents Defendants from determining to nature and extent of any potential conflicts. Other than Defendants' concerns about cost and whether the nature of duties here would benefit from the appointment of a retired judicial officer, Defendants do not otherwise object to the appointment of Judge Walsh.

**B. Scope of the Special Master's Mandate**

Plaintiffs' Position:

The Special Master will be responsible for monitoring and enforcing all aspects of the Court's Preliminary Injunction and Enforcement Orders. While the Court's March 10, 2021 order primarily discusses the identification and custody review of Subclass Members, this does not mean that the scope of the Special Master's authority is restricted to those spheres. Rather, the Court made clear that the discussion did not explicitly address the other obligations because there was already "sufficient evidence of a pattern of noncompliance." *See* ECF No. 281 at 7, n.1. Further, the Court explains how a Special Master is needed to actively monitor "Defendants' compliance with the PI and Enforcement Orders" more broadly. *See* ECF No. 281 at 8. In order to effectively monitor Defendants' compliance with all aspects of the Court's Orders, the Special Master should have

*Fraihat v. ICE,* Case No. 19-cv-01546-JGB(SHKx)
**Joint Report on the Appointment of a Special Master**

broad discretion in their mandate.  Therefore, Plaintiffs propose the following language for the scope of the Special Master's mandate.

**1. Authority of the Special Master.**

The Special Master shall have the authority to perform the following tasks, with broad discretion, subject to the Court's oversight:

a. Monitor and enforce the Defendants' compliance with the Court's Orders, including, but not limited to, monitoring and ensuring the compliance of the process for identifying Subclass members; monitoring the systemic implementation of a timely and individualized custody redetermination review process, including review of individualized determinations as illustrative of systemic compliance; ensuring that Defendants issue a performance standard that defines minimum acceptable detention conditions for Subclass members in compliance with the Courts' orders and the guidance of the Centers for Disease Control; monitoring and enforcing the systemic implementation of that performance standard; and ensuring compliance with any other aspects of the Preliminary Injunction;

b. Meet, remotely or in person, with the Parties and/or their counsel to receive evidence and/or hear arguments relating to compliance with the Court's Orders;[3]

c. Gather information and documents, by interview, by order, or otherwise, relating to compliance with the Court's Orders;[4]

---

[3] *See infra* Section D regarding proposed timelines for the Special Master.

[4] Plaintiffs agree with Defendants' proposal that the Special Master be permitted to review ICE records and data in order to monitor compliance.  *See infra* Section B at 10-12.  However, as the Court noted in its order, Defendants' data—and their interpretation of the data—is often "unclear, if not misleading."  *See* ECF No. 281 at 7.  In order to effectively and actively monitor Defendants' compliance, the

**4**

d. Review evidence and exhibits that have been filed under seal or disclosed during discovery that might be subject to a protective order, confidential or privileged;

e. Share with any party, their counsel, agent, employee or representative, any documents or information provided to, or gathered by, the Special Master, if done in furtherance of the Special Master's duties under this Order and in compliance with any applicable protective order;

f. Make findings of fact and prepare periodic Reports and Recommendations to the Court regarding the status and achievement of the goals of monitoring and substantial compliance with the Court's Orders;

g. Conduct any investigations, interviews, and site visits as the Special Master deems necessary to achieve the goals of monitoring and enforcement, or to aid in their preparation of factual findings or Reports and Recommendations;

h. Hire and retain others, including but not limited to independent experts, specialists, attorneys, law clerks, paralegals, and/or interpreters ["Aides"] to assist the Special Master in the performance of their duties; however, prior to retaining the services of an independent expert, the Special Master shall seek leave of the Court;

i. Resolve any disputes that may arise between the parties regarding the implementation of the Court's Orders and this Order;

j. Preside over and facilitate mediations and/or settlement negotiations between the parties as to any issues pertaining to the implementation of the Court's Orders;

---

Special Master should have broad authority to gather information as they deem necessary.

*Fraihat v. ICE,* Case No. 19-cv-01546-JGB(SHKx)
Joint Report on the Appointment of a Special Master

k. Issue Orders of the Special Master to facilitate the objectives of this Order; and

l. Advise and update the Court and Class Counsel on the status of the Defendants' compliance, or failure to comply, with the Court's Orders.

## 2. Limitation on the Special Master's Powers.

The Special Master may not impose any sanctions, but may recommend to this Court various orders, including any contempt sanction. The Special Master shall have no authority to intervene in or direct Defendants' activities.

## 3. Review of the Special Master's Orders and Factual Findings.

Any party may seek review of an order, factual findings or Report and Recommendation issued by the Special Master pursuant to Fed. R. Civ. P. 53(f), except that an objection must be filed with the Court within seven (7) days after the Special Master issues the order, findings or Report and Recommendation.

## 4. Diligence of Special Master.

The Special Master is directed to proceed with all reasonable diligence to carry out the duties assigned by the Court.

## 5. Accountability of the Special Master.

The Special Master is independent and is accountable only to the Court. The parties shall not supervise the Special Master. However, in the course of their work, the Special Master may consult with the Parties, their agents, counsel, or employees, and any other person the Special Master deems necessary to perform the scope of their duties.

## 6. *Ex Parte* Communications.

The Special Master shall be permitted to engage in *ex parte* communications under the following circumstances:

a. The Court. The Special Master may confer *ex parte* with the Court

*Fraihat v. ICE,* Case No. 19-cv-01546-JGB(SHKx)
Joint Report on the Appointment of a Special Master

regarding any issue arising under or relating to this Order. All such communications shall be privileged and shall not be subject to discovery.

b. The Parties. The Special Master may communicate *ex parte* with any party's counsel. Each party shall designate an attorney to be the Special Master's primary contact for that party and shall provide the Special Master with the attorney's contact information.

c. Subclass Members or their Qualified Representatives. The Special Master may communicate *ex parte* with Subclass Members and their Qualified Representatives.

d. Defendants' Agents, Employees, Representatives or Contractors. The Special Master may communicate *ex parte* with current or former employees, agents, representatives, contractors and subcontractors of the Defendants, including but not limited to, any person responsible for implementing or supervising the implementation of the Court's Orders and any person who might have information regarding the implementation of the Court's Orders.

**7. The Special Master's Access to Contact Information.**

The Defendants shall provide the Special Master with contact information for any employee, agent, representative, contractor or subcontractor of the Defendants that the Special Master deems necessary.

**8. The Parties' Good Faith Cooperation.**

The Parties and their counsel shall cooperate in good faith with the Special Master.

Defendants' Position:

Defendants object to Plaintiffs' proposed language because it goes beyond this Court's stated intent for the special master. Defendants propose the following

**7**

alternative language, which reflects Defendants' position that the special master should not monitor compliance with the PI and Enforcement Orders generally and without limitation. In particular, the Court's reference to its past findings regarding a "pattern of noncompliance," does not reflect the current state of compliance concerns nor the specific issues of potential noncompliance raised in Plaintiffs' motion.  Such relief would open the door to a Special Master process that exceeds the scope of Plaintiffs' allegations and fails to give consideration to the admonition of Fed. R. Civ. P. 53(g)(3).  Instead, the scope of the special master's appointment should be limited to monitoring compliance with the specific provisions of the PI and Enforcement Orders regarding the identification of subclass members and custody determinations for which the Court identified specific concerns in the March 10, 2021 order, ECF No. 281. Defendants propose the following language:

(a) The special master shall have the authority set forth in this Order to monitor compliance with this Court's April 20, 2020 Preliminary Injunction Order ("PI Order"), ECF No. 132, and October 7, 2020 Enforcement Order, ECF No. 240, regarding the specific provisions involving the identification of subclass members and custody determinations for which the Court identified specific concerns in the March 10, 2021 order, ECF No. 281. The special master shall be subject to oversight by the Court.

(b) The special master shall have the duties, powers, and responsibilities detailed in this Order; provided that if to accomplish his or her duties, the special master must undertake necessary measures not specifically referred to herein or seek modifications to this Order due to unforeseen circumstances, the special master is authorized to do so, as long as he or she has informed the Court and the parties of the nature of, and need for, such measures or modifications, and received the Court's written approval. Should the special master determine that such measures or modifications are necessary, the parties shall receive notice and an opportunity to comment (or to submit a stipulation and proposed Order) before the Court approves such measures.

**8**

(c) The special master shall be permitted to engage in *ex parte* communications with the Court and with the parties.

(d) The special master may not issue any orders or impose any sanctions, but may make recommendations to the Court. The special master shall have no authority to intervene in or direct Defendants' activities. The special master does not have the authority to review Defendants' activities, operations, or record outside of those necessary to assess compliance with this Court's PI and Enforcement Orders regarding the specific provisions involving the identification of subclass members and custody determinations for which the Court identified specific concerns in the March 10, 2021 order, ECF No. 281.

(e) On October 7, 2020, the Court granted Plaintiffs' motion to enforce against ICE concerning ICE's compliance with the provisions of the PI Order involving the identification of subclass members with risk factors and completion of timely custody determinations. Specifically, the Court ordered:

- At step one, Defendants must affirmatively identify and track detainees with Risk Factors. However, detainee medical files might be incomplete. To account for this likelihood, a detainee or their counsel may promptly obtain a copy of the medical file and may supplement medical records at any time. Defendants shall streamline and clarify procedures for such requests. Defendants' medical personnel shall review newly submitted records within five days and inform the detainee and his or her counsel of the result.

- At step two, Defendants must complete a "timely" custody determination. Only in rare cases should the determination take longer than a week.

- Defendants shall provide notice of the result of the custody determination to the Subclass member and his or her counsel. The notice shall mention the Risk Factor(s) identified, and in cases of non-release shall reference a basis for continued detention in the Docket Review Guidance.

- In order to increase compliance and reduce detainee and attorney confusion, Defendants shall advertise and implement consistent procedures across field

*Fraihat v. ICE,* Case No. 19-cv-01546-JGB(SHKx)
Joint Report on the Appointment of a Special Master

offices, for both steps outlined above. Defendants shall ensure that the presence of a Risk Factor is given significant weight and that the custody reviews are meaningful.

- Blanket or cursory denials do not comply with the Preliminary Injunction or with the Docket Review Guidance's instruction to make individualized determinations.

- Only in rare cases should a Subclass member not subject to mandatory detention remain detained, and pursuant to the Docket Review Guidance, a justification is required. (*See also* PRR IV at 20 (requiring case-by-case decisions and emphasizing public health).)

- Subclass members subject to mandatory detention shall also receive custody determinations. Defendants shall not apply the Docket Review Guidance rule against release of Section 1226(c) detainees so inflexibly that none of these Subclass members are released. Section 1226(c) Subclass members should only continue to be detained after individualized consideration of the risk of severe illness or death, with due regard to the public health emergency.

The special master therefore will oversee ICE's compliance with this Court's PI and Enforcement Orders, with regard to these specific requirements listed above.

To conduct this oversight, the special master will: (1) review ICE records and data to ensure that ICE is identifying and tracking detainees with risk factors; (2) review ICE records and data to ensure ICE has streamlined and clarified procedures for review of medical records requests within five days and for informing the detainee and their counsel of the result; (3) review ICE records and data to ensure ICE completes custody determinations within a week; (4) review ICE records and data to ensure ICE provides notice of the custody determination result to the detainee and their counsel, which mentions the risk factor(s) identified, and in cases of non-release, reference, a basis for continued detention; (5) review ICE records and data to ensure ICE is advertising and implementing consistent procedures across field offices for identification of subclass members with risk factors and custody

**10**

determinations; (6) review ICE records and data to ensure the presence of risk factors is given significant weight, that custody reviews are meaningful, and that ICE does not make blanket or cursory denials of release; (7) review ICE records and data to ensure that only in rare cases should a Subclass member not subject to mandatory detention remain detained; and (8) review ICE records and data to ensure that subclass members subject to mandatory detention receive custody determinations ICE does not apply the Docket Review Guidance so inflexibly that none of the subclass members subject to mandatory detention are released. The special master will develop a plan for monitoring these provisions of the Court's PI and Enforcement Orders. To assist the special master in developing this monitoring plan, ICE will make available to the special master ICE personnel who can answer any questions the special master may have regarding ICE records and data that can be used for monitoring compliance with these provisions.

(f) Upon the appointment of the independent monitor, ICE will provide to the special master the following materials:

(1) ICE's Pandemic Response Requirements 5.0 and all prior and future versions of that document;

(2) The Docket Review Guidance;

(3) All documents and information produced pursuant to the Court's Order on discovery and information concerning compliance with the PI Order, ECF No. 150.

ICE also will provide the special master with copies of all government forms or other official documents used to comply with the Court's PI and Enforcement Orders.

(g) ICE also will provide the special master with copies of all government forms or other official documents used to comply with the Court's PI and Enforcement Orders. The special master may wish to review ICE records or data relating to individual class members or groups of class members. The special master may request such records or data from ICE, and ICE will provide that information as requested, to the extent the request does not interfere with ICE's biweekly

**11**

productions required by the Court's May 15, 2020 order, ECF No. 150, or will explain why such information cannot be provided in the manner requested.[5]  Prior to receiving any information related to class members, the special master shall agree to a protective order regarding the use, protection, and disclosure of such information, including the return of all material when duties are completed.

(h) During the period this special master order is in place, Plaintiffs will not file any motions to enforce the PI Order.

**C. Fee Arrangement**

<u>Plaintiffs' Position:</u>

Defendants should be responsible for all fees, costs, and expenses of the Special Master.  Defendants' noncompliance with this Court's Orders is the reason this matter has been referred to a master. Plaintiffs are individuals who are detained in Defendants' custody and non-profit organizations who provide services to indigent people, whose resources are dwarfed by those of the federal government.  Defendants should therefore bear costs.  *See* Fed. R. Civ. P. 53(g)(3) (noting that the court should consider the "parties' means[] and the extent to which any party is more responsible than the other parties for the reference to a master").

Regarding the fees themselves, the Special Master shall recover, from the Defendants, their reasonable fees and necessary expenses incurred for their work in this case, as well as the reasonable fees and necessary expenses of their Aides.[6]

---

[5] Defendants' proposal gives the Special Master ample opportunity to request additional documents or information—and Defendants note that Plaintiffs' statement at n.3 is unwarranted.

[6] Plaintiffs object to Defendants' budget-setting proposal and their proposed compensation rate for the Special Master.  The Special Master should be compensated a reasonable fee, as determined by the Special Master and the Court. In other recent cases involving claims of inadequate COVID-19 responses by government defendants, courts have found fees as high as $1,000 per hour to be reasonable.  *See, e.g.*, Order, *Hernandez Roman v. Wolf*, No. 5:20-cv-00768-TJH-PVC (C.D. Cal. Dec. 21, 2020) (ECF No. 881) (setting the Special Master's

**12**

The Special Master shall periodically file with the Court billing statements detailing such fees and costs. If the Defendants do not file an objection to a billing statement within 10 business days of filing, the Court shall deem the fees and costs in the billing statement to be reasonable and acceptable to the Defendants. Thereafter, the Defendants shall pay the fees and costs in a timely manner. If the Defendants object to a billing statement, the Defendants shall file an objection to that billing statement within 10 business days, and the Court will consider the objection.

Defendants' Position:

Defendants' budget-setting proposal stated below will give both the parties and the Court a reasonable opportunity to consider the hourly rates and proposed scope of work before imposing an order on Defendants without due consideration of the requirements of Fed. R. Civ. P. 53(g)(3). Additionally, Defendants reiterate that neither Plaintiffs' motion for appointment of a special master nor the Court's appointment order definitively allege or establish Defendants' noncompliance—and where a Special Master is being appointed to investigate such claims, rather than to remediate specific findings of noncompliance—a cost sharing agreement is more appropriate. Finally, Plaintiffs' reference to the rate for Judge Walsh is not accurate —and the rate paid by the government in that case is $800 per hour following a further reduction to that rate.

(a) Support. The special master may seek assistance from others, including but not limited to independent experts or specialists. The special master shall advise the parties of any person he or she seeks to retain, including a brief description of how the individual will assist the special master, and his or her qualifications and

"reasonably hourly rate . . . at $1,000.00"); Order Appointing Special Master, *Gayle v. Meade* (S.D. Fla. July 17, 2020) (ECF No. 219) (setting the special master's rate at $650 per hour). Plaintiffs anticipate that the customary and reasonable fees of a qualified Special Master should be comparable in this case.

**13**

rate of pay. The parties shall have ten business days to file objections with the Court concerning the retention of any such persons by the special master, with reasons for the objection. In the event such assistance is approved by the Court, the individual chosen will be subject to the same background checks and confidentiality provisions as the special master.

(b) Compensation. All fees, costs, and expenses of the special master, including those with respect to aides, will be borne equally by Plaintiffs and Defendants.

The special master may not request any payment that the parties are otherwise prohibited from paying by any applicable law governing the payment of such fees or costs by the Government or Plaintiffs, and payment of such fees or costs are, as with all uses of appropriated Government funds, subject to the availability of appropriations. Plaintiffs and Defendants will work with the special master to determine an appropriate rate of payment, including an agreed-upon limit on annual fees, and a schedule for billing and payment.

To facilitate this determination, Plaintiffs and Defendants will pay the special master a flat fee not to exceed $10,000 to conduct an initial assessment of the parties' Court-ordered monitoring needs and develop an initial plan for monitoring Defendants' compliance with this Court's PI and Enforcement Orders regarding the specific provisions involving the identification of subclass members and custody determinations for which the Court identified specific concerns in the March 10, 2021 order, ECF No. 281. The special master will include in that initial assessment a proposed budget that includes an estimate of the number of hours the monitor will need to fulfill the monitoring plan, and identifies anticipated fees and costs including those related to administration, and supplies. If Defendants object to the special master's initial assessment, then Defendants shall bring their concerns to the Court within fourteen (14) days of receiving the plan and budget from the special master, and will seek further guidance from the Court.  The appointed special master's fees should reflect a rate acceptable to the government. *See* Fed. R. Civ. P. 53(g)(3)

(providing that courts should consider several factors when allocating payment among the parties, including "the extent to which any party is more responsible than other parties for the reference to a master"). Should the court be inclined to set an hourly rate rather than the budget-setting proposal discussed above, Defendants propose that—in consideration of the specific factual compliance questions to be assessed by the special master—that the special master be compensated at the hourly rate of $250 and that the services of the special master's aides shall be billed at a rate not to exceed $125 per hour.

**D. Proposed Timeline**

Plaintiffs' Position:

Given the urgency of the situation, the Special Master should be appointed expeditiously.  Plaintiffs propose that the Special Master's appointment will become effective upon the Special Master's filing an affidavit disclosing there is no ground for disqualification under 28 U.S.C. § 455 pursuant to Fed. R. Civ. P. 53(a)(2) and (b)(3) and shall continue until further order of the Court.

Within one week of the Special Master's appointment, the Special Master and the Parties will meet to discuss the appointment, Special Master report and any other matters relevant to the enforcement of the Preliminary Injunction. Thereafter, the Special Master and the Parties will meet every 14 days or as often as the Special Master deems necessary. The Special Master will submit a Monthly Report to the Court and may submit additional reports as the Special Master deems necessary.

Defendants' Position:

Defendants specifically object to Plaintiffs' proposal to the extent that it exceeds the scope of the appointment order and prematurely calls for meetings every 14 days and a Monthly Report with no factual basis, and before any special master has read into the case and assessed the state of Defendants' compliance.  Defendants

**15**

are concerned that both the scope of the proposed appointment and the frequency of the requested meetings evidence Plaintiffs' intent to use the appointment of a special master to continue to raise vague and unfounded noncompliance allegations, often exceeding the scope of the Court's orders, that will interfere with Defendants' efforts to comply with the Court's orders.

Defendants propose a term of six months, subject to a request for extension at the end of that term only after briefing and a decision by the Court. Defendants propose the following language:

The Court appoints the special master for a term of six months, commencing 30 days from the date of this Order. At least four weeks before the end of that term, either party or the special master may submit to the Court a request that the term be extended. Such request must state the reasons the extension is being sought, and the length of extension being requested. If any party opposes the request for extension, that party shall have 14 days to respond to the extension request before the Court rules on the extension request.

## E. Defendants' Additional Objections to Plaintiffs' Positions

Defendants provide below objections to several of Plaintiffs' proposals:

***Plaintiffs' Proposal***:

A.     The Special Master shall have the authority to perform the following tasks, with broad discretion, subject to the Court's oversight:

1. Monitor and enforce the Defendants' compliance with the Court's Orders, including, but not limited to, monitoring and ensuring the compliance of the process for identifying Subclass members; monitoring the systemic implementation of a timely and individualized custody redetermination review process, including review of individualized determinations as illustrative of systemic compliance; ensuring that Defendants issue a performance standard that defines minimum acceptable detention conditions for Subclass members in compliance with the Courts' orders and the guidance

*Fraihat v. ICE,* Case No. 19-cv-01546-JGB(SHKx)
**Joint Report on the Appointment of a Special Master**

of the Centers for Disease Control; monitoring and enforcing the systemic implementation of that performance standard; and ensuring compliance with any other aspects of the Preliminary Injunction;

***Defendants' Objection*:**

Defendants object to this language because it is overbroad and not tied to specific provisions of the Court's PI and Enforcement Orders. The scope of appointment should be limited to the specific provisions of the PI and Enforcement Orders where the Court had specific concerns. Therefore, any references to monitoring the Court's PI and Enforcement Orders in the order appointing the special master should be limited to "the specific provisions of the PI and Enforcement Orders regarding the identification of subclass members and custody determinations for which the Court identified specific concerns in the March 10, 2021 order, ECF No. 281." Accordingly, the Court should adopt Defendants' proposed language concerning the scope of the special master's mandate set forth above.

***Plaintiffs' Proposal*:**

6. Make findings of fact and prepare periodic Reports and Recommendations to the Court regarding the status and achievement of the goals of monitoring and substantial compliance with the Court's Orders;

***Defendants' Objection*:**

Defendants object to the proposal for periodic findings of fact and Reports and Recommendations as overbroad and not tied to the specifics of the Court's order for "more active monitoring." ECF No. 281 at 8.

***Plaintiffs' Proposal*:**

7. Conduct any investigations, interviews, and site visits as the Special Master deems necessary to achieve the goals of monitoring and enforcement, or to aid in their preparation of factual findings or Reports and Recommendations;

***Defendants' Objection*:**

Defendants object to Plaintiffs' proposal for site visits because they are unnecessary and go far beyond the high-level, systemwide claims that are the basis of the Court's PI and Enforcement Orders.

***Plaintiffs' Proposal*:**

8.      Hire and retain others, including but not limited to independent experts, specialists, attorneys, law clerks, paralegals, and/or interpreters ["Aides"] to assist the Special Master in the performance of their duties; however, prior to retaining the services of an independent expert, the Special Master shall seek leave of the Court;

***Defendants' Objection*:**

Defendants object to Plaintiffs' proposal that the special master should seek leave of Court only in advance of hiring an independent expert. Given the limited scope of the special master's mandate and in order to contain costs both parties, Defendants contend that any additional staffing request by the special master should require Court approval.

***Plaintiffs' Proposal*:**

9. Resolve any disputes that may arise between the parties regarding the implementation of the Court's Orders and this Order;

***Defendants' Objections*:**

Defendants object to Plaintiffs' proposed language that "any disputes that may arise between the parties regarding the implementation of the Court's Orders" is overbroad and not tied to any justification given for appointment of a special master here. This language also risks inviting disputes brought in bad faith to pass on investigation and discovery costs to one party or both parties.

***Plaintiffs' Proposal*:**

10. Preside over and facilitate mediations and/or settlement negotiations between the parties as to any issues pertaining to the implementation of the Court's Orders;

*Fraihat v. ICE,* Case No. 19-cv-01546-JGB(SHKx)
Joint Report on the Appointment of a Special Master

1

2      ***Defendants' Objections:***

3          Defendants object to Plaintiffs' proposed language that has the special master

4      sitting as both adjudicator and mediator of disputes.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**19**

Respectfully submitted,
DATED: March 19, 2021

/s/ Benjamin Salk
Benjamin Salk
Maya Rajaratnam
Veronica Salama
SOUTHERN POVERTY LAW
CENTER

/s/ Timothy P. Fox
Timothy P. Fox
Elizabeth Jordan
Maria del Pilar Gonzalez Morales
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER

/s/ Stuart Seaborn
Stuart Seaborn
Christina Brandt-Young
Melissa Riess
Rosa Lee V. Bichell
DISABILITY RIGHTS
ADVOCATES

/s/ William F. Alderman
William F. Alderman
Mark Mermelstein
Jake Routhier
ORRICK, HERRINGTON &
SUTCLIFFE LLP

/s/ Michael W. Johnson
Michael W. Johnson
Leigh Coutoumanos
Jessica Blanton
Joseph Bretschneider
Timothy Ryan
WILLKIE FARR & GALLAGHER
LLP

*Attorneys for Plaintiffs*

Brian M. Boynton
William C. Peachey
Jeffrey S. Robins
Nicole N. Murley

/s/ Anna Dichter
Anna L. Dichter
Lindsay M. Vick
UNITED STATES DEPARTMENT
OF JUSTICE
CIVIL DIVISION
OFFICE OF IMMIGRATION
LITIGATION

*Attorneys for Defendants*

**20**