```
 1  Hon. Patrick J. Walsh (Ret.)
    Special Master
 2  Signature Resolution
    633 W. 5th Street, Ste. 1000
 3  Los Angeles, CA 90071
    judgewalsh@signatureresolution.com
 4  (323) 395-4970
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FAOUR ABDALLAH FRAIHAT, et al., | ED CV 19-1546 JGB(SHKx) |
| Plaintiffs, | SPECIAL MASTER'S REPORT AND RECOMMENDATION |
| v. | |
| U.S. IMMIGRATION AND CUSTOMS, et al., | (FIRST REPORT) |
| Defendants. | |

This report and recommendation is submitted to the Honorable Jesús G Bernal. For the reasons set forth below, it is recommended that the Court order Defendant United States Immigration and Customs Enforcement to:

1. Continue its efforts to work with the Special Master and Plaintiffs' counsel to confirm that all subclass members have had a individualized and meaningful review to determine if release is warranted and to conduct redeterminations where necessary;

2. Track the reasons for transfers of subclass members and provide that information to the Special Master and Plaintiffs' counsel biweekly; and

    3.    Make vaccinations available to all subclass members within 30 days of the order accepting and adopting this Report and Recommendation.

## I.

## SUMMARY OF FACTS AND PROCEEDINGS

Plaintiffs commenced this action in August 2019, complaining, among other things, that Defendant U.S. Immigration and Customs Enforcement was not providing constitutionally mandated medical care to detainees at its own facilities and in facilities run by private companies that housed detainees for the government. Six months later, the pandemic struck, sickening people throughout the world. It soon became clear that the source of the illness was an airborne virus identified as SARS-CoV-2 that was highly contagious, particularly for people who were confined to small spaces, like crowded detention facilities. It also soon became clear that people with certain risk factors were more likely to suffer severe illness and even death from the virus.

In response to this rapidly evolving pandemic, in April 2020, the Court certified two subclasses of detainees who exhibited risk factors and/or disabilities that made them more vulnerable to severe illness or death upon contracting the virus. The Court entered a preliminary injunction requiring the government to, among other things, "issue a performance standard or supplement their Pandemic Response Requirements . . . defining the minimal acceptable detention conditions for detainees with Risk Factors . . . to reduce the risk of COVID-19 infection . . . ." (Doc. No. 132, Preliminary Injunction at 38.) In addition, the Court ordered the government to quickly

identify subclass members and determine whether they were suitable for release.

Plaintiffs subsequently complained to the Court that the government was not adhering to the Court's mandates and sought the appointment of a Special Master. The Court agreed that the government had been lax and, in April 2021, appointed a Special Master. Since then, the Special Master has met with counsel every week and worked with them to carry out the Court's orders.

## II

## ANALYSIS

A. <u>The Special Master and Counsel are Working Through Custody Determinations and Redeterminations</u>

In its order granting the preliminary injunction, the Court ordered the government to quickly determine, on a meaningful and individualized case-by-case basis, whether subclass members should be released. For those who had already been denied release, the Court ordered the government to reevaluate their cases and determine if, under the changed circumstances of the pandemic and the Court's order, they were entitled to release. In doing so, the Court directed the government to focus on the subgroup of detainees who were not subject to mandatory detention under the law.

Plaintiffs have maintained throughout that the government has moved too slowly with this process and that it has denied release to detainees who should have been released, specifically those who were not subject to mandatory detention. Plaintiffs have also complained that the review has not been individualized and meaningful. They identified 766 detainees who, based on the information contained in a spreadsheet the government had provided to them, had not received

initial custody reviews. And they compiled a second list of 2800 more detainees who they believe are entitled to a redetermination.

The Special Master directed the government to immediately address the 766 detainees on the list who purportedly had not received initial custody reviews. The government has accomplished that task. Plaintiffs have now turned their attention to 186 subclass members on that list who they believe merit a closer look. The Special Master has directed the government to produce the forms (I-831s) used to record the release decisions for these detainees so that Plaintiffs' counsel can review them to determine whether, in their view, each list was afforded individualized and meaningful review and that detention was warranted. That process is ongoing and it is anticipated that the government will have produced all of the I-831s for these detainees by May 27, 2021. Once production is complete and Plaintiffs' counsel has had an opportunity to review the forms, the Special Master will address any objections Plaintiffs' counsel raises as to the continued detention of these detainees.

Thereafter, the Special Master and counsel will turn to the 2800 other detainees whom Plaintiffs' counsel believes are entitled to a redetermination. The Special Master recommends that the Court order the government to continue to cooperate in this process.

B. <u>Transfers</u>

In its October 2020 Enforcement Order, the Court ordered the government to suspend transfers of subclass members unless they fit within a narrowly defined list of exceptions that were consistent with CDC guidelines. (Doc. No. 240, Enforcement Order at 11.) Plaintiffs note that between April 3 and April 17, 2021, 296 subclass members were transferred. They think this is far too many. They provide

anecdotal evidence that suggests that the transfer restriction is not being honored and suspect that not all being transferred fit within the exceptions.  They point out, for example, that some subclass members are being transferred from one institution to another, to another, and then back to the original institution, suggesting that there was no need to transfer them in the first place and arguing that such transfers needlessly expose detainees to greater risk of contracting COVID.

When questioned about compliance with the order limiting transfers, government counsel explained that decisions to transfer subclass members under one of the exceptions are being made by Field Office Directors or Assistant Field Office Directors for each region. Counsel further explained that these officials are made aware of the Court's orders and are presumably following them, though the government has no mechanism in place to confirm whether that is true.

The fact that the government does not keep track of the reasons for transferring subclass members makes it impossible to determine whether it is complying with the Court's orders.  This is problematic, particularly in light of the fact that the Court has concluded more than once that the government was not following the Court's orders. In order to adequately monitor what the government is doing with regard to the transfers, it is necessary that the government maintain a database that tracks transfers of subclass members.  The Special Master recommends that the Court order the government to begin tracking the reasons for transferring subclass members and provide the Special Master and Plaintiffs' counsel with a list of the transfers and the reasons for them every two weeks.

      C. <u>The Government's Failure to Make the Vaccine Available to All Subclass Members is Inconsistent with the Court's Mandate that the Government Provide them with Minimal Acceptable Conditions to Reduce the Risk of COVID-19 Infection</u>

In the April 2020 Preliminary Injunction and the October 2020 Enforcement Order, the Court ordered the government to supplement its Pandemic Response Requirements to provide the minimum acceptable conditions for detainees with risk factors to reduce the risk of COVID-19 infection.  The government has updated the Pandemic Response Requirements numerous times since April 2020, most recently in March 2021.  This latest iteration, however, like the earlier versions, does not mandate vaccines for subclass members and merely leaves to county officials if and when class members will be vaccinated.  (Pandemic Response Requirements at 24-25.)  As a result--the government candidly admits--it has no idea if and when subclass members will be vaccinated.

There is no dispute that the vaccine reduces the risk of contracting the virus and reduces the severity of symptoms for those who contract the virus after being vaccinated.  For this reason, the U.S. Centers for Disease Control has recommended that everyone 12 and older should be vaccinated.[1]  The government's failure to make the vaccine available to subclass members is inconsistent with this recommendation and consequently falls below the minimal constitutional standards for detainees. *See, e.g., Maney v. Brown*, 20021 WL 354384 (D. Ore. Feb. 2, 2021) (finding COVID-19 vaccine is "serious medical

---

[1] *See* Centers for Disease Control and Prevention ("CDC"), www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html.

6

1  need" and failure to provide it to inmates violates Eighth Amendment
2  prohibition against cruel and unusual punishment); *see also*, *Hernandez*
3  *v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 943 (N.D. Cal. 2015)
4  ("known noncompliance with generally accepted [CDC] guidelines for
5  inmate health strongly indicates deliberate indifference to a
6  substantial risk of serious harm.").  It is also contrary to the
7  Court's order that the government provide minimally adequate
8  performance standards, including preventive measures, to protect the
9  subclass members from sickness and death.

10     The subclass members are not at liberty to obtain the vaccine on
11 their own.  They are confined to institutions where many find it
12 difficult to keep their distance from other detainees and guards.  Due
13 to their risk factors, they are vulnerable to serious complications if
14 they do not get the vaccine and they contract the virus.  This is
15 troubling in light of the fact that the immigration detention
16 facilities are in the midst of an unprecedented surge in cases.
17 According to its own records, in just the first 20 days of May, there
18 were 2,350 new infections.  Since April, the total is 4,572.  In all,
19 there are 15,297 detainees in the system who have tested positive for
20 COVID-19 since March 2020.

21     Vaccinating subclass members would significantly reduce the risk
22 of them becoming sick and/or dying.  The fact that the federal
23 government has not adopted a plan to insure that they are vaccinated
24 runs counter to the science.  Further, it defies common sense given
25 the fact that the United States has a surplus of vaccines and, in
26 fact, plans to export 80 million doses this summer.[2]

---

28     [2] *See* Wall Street Journal, May 18, 2021, "U.S. to Increase Covid-19 Vaccine Exports Amid Global Pressure" (noting United States

7

1    The government does not challenge the efficacy of the vaccines or
2 the CDC's recommendations regarding vaccines.  Nor does it seem to
3 contend that it should not be vaccinating all of the detainees,
4 particularly those in the subclasses who are at great risk of severe
5 complications from COVID-19.  It argues instead that these decisions
6 should be left to the government and not mandated by the Court.  This
7 argument has already been rejected by the Court.  *See* Preliminary
8 Injunction Order, Doc. No. 132 at 28, note 25 (rejecting government's
9 argument that the Court lacks authority to "require a constitutionally
10 adequate response to COVID-19 . . . .").  And it is rejected again.
11   The government argues alternatively that vaccinating subclass
12 members was not specified in the Court's preliminary injunction and
13 should not be injected into this case by the Special Master.  Here,
14 again, the Special Master disagrees.  Though it is true that the Court
15 did not order in April 2020 that the government provide detainees with
16 a then-non-existent vaccine, it did order that the government provide
17 a minimally adequate performance standard.  Further, in its October
18 2020 follow-up order, it made clear that "[a] minimally adequate
19 Performance Standard would include preventive measures . . . ."  (Doc.
20 No. 240 at 9-10.  As the Court explained, the purpose of the
21 preliminary injunction was to compel the government to do what was
22 necessary to reduce the risk of harm to the detainees:
23      The failure to provide a concrete and comprehensive protocol
24      specifically addressed to Subclass members does establish
25      noncompliance.  Although the Preliminary Injunction did not list
26      each area to be addressed in the Performance Standard, a

---

plans to export 80 million vaccines by the end of June 2021).

```
         compliant Standard would mitigate risk by addressing [various
         issues raised by Plaintiffs].
```
(Doc. No. 240 at 10, Enforcement Order.)

    Vaccines are a minimally adequate preventive measure and, therefore, fall within the ambit of the Court's orders. For this reason, it is recommended that the government be required to make vaccines available in the next 30 days to all subclass members who desire to be vaccinated.[3] [4]

## IV

## CONCLUSION

    For these reasons, the Special Master recommends that the Court enter an order accepting and adopting this Report and Recommendation and ordering the government to:

    (1) continue to cooperate with the Special Master to insure that subclass members are given an individualized and meaningful bond determination or redetermination;

    (2) track transfers of all subclass members and provide the Special Master and Plaintiffs' counsel with a list of those transfers and the reasons for those transfers on a biweekly basis; and

---

[3] For those detainees receiving a two-shot regimen, it will be sufficient if they receive the first shot within 30 days.

[4] Plaintiffs' counsel is concerned with the fact that a large number of detainees who have been offered the vaccine have elected not to take it. It is not clear why. One reason may be that the detainees are suspicious of the government. That could be cured, perhaps, by allowing class counsel to communicate directly with class members about the importance of the vaccine.

    (3) make vaccinations available to all subclass members within 30 days of the Court's order.[5]

DATED: May 21, 2021.

*Patrick J. Walsh*

HON. PATRICK J. WALSH (Ret.)
Special Master

C:\Users\judge\OneDrive\Documents\Legal\Signature\Special Master-Referee\Fraihat v. ICE\R&R.wpd

---

[5] Under Federal Rule of Civil Procedure 53(f), the parties have 21 days to file objections to this Report and Recommendation.